**LEVI & KORSINSKY, LLP**
Adam M. Apton
55 Broadway, 4th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Counsel for Shunsei Tazaki and*
*Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER ARBOUR, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:23-cv-03151-ES-MAH |
| Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF SHUNSEI TAZAKI'S MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL** |
| v. | |
| TINGO GROUP, INC., DOZY MMOBUOSI, DARREN MERCER, and KEVIN CHEN, | |
| | **MOTION DATE: September 5, 2023** |
| Defendants. | |
| MARK J. BLOEDORN, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:23-cv-03153-ES-MAH |
| Plaintiff, | |
| v. | |
| TINGO GROUP INC., DARREN MERCER, HAO (KEVIN) CHEN, DOZY MMOBUOSI, | |
| Defendants. | |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   STATEMENT OF FACTS .....................................................................3

III.  PROCEDURAL HISTORY ...................................................................5

IV.   ARGUMENT..........................................................................................6

    A. Consolidation of the Actions Is Appropriate...................................6

    B. The PSLRA Standard for Appointing Lead Plaintiff ......................7

    C. Movant is the "Most Adequate Plaintiff" under the Exchange Act ...............9

        1. Movant is Willing to Serve as Class Representative.................9

        2. Movant has the Largest Financial Interest in the Relief Sought by the Class.................................................................................10

    D. Movant is Qualified Under Rule 23 ..............................................11

        1. Movant's Claims are Typical of the Claims of the Class.........13

        2. Movant Will Fairly and Adequately Represent the Class' Interests .......13

    E. Approving Movant's Choice of Counsel is Appropriate..............15

V.    CONCLUSION....................................................................................16

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ferrari v. Impath, Inc.,*
  2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004)....................................7

*In re Cendant Corp. Litig.,*
  264 F.3d 201 (3d Cir. 2001) ........................................................................ 10, 12

*Johnson v. Celotex Corp.,*
  899 F.2d 1281 (2d Cir. 1990) ....................................................................6, 7

*Lax v. First Merch. Acceptance Corp.,*
  No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ............................10

*Martingano v. Am. Int'l Grp., Inc.,*
  Nos. 06-cv-1625-JG-JMA, 2006 U.S. Dist. LEXIS 47855 (E.D.N.Y. July 11,
  2006) ..............................................................................................................7

*In re Merck & Co., Inc. Securities,*
  No. 05-cv-1151, 2013 U.S. Dist. LEXIS 13511 (D.N.J. Jan. 20, 2013) ............13

*In re Nice Sys. Sec. Litig.,*
  188 F.R.D. 206 (D.N.J. 1999)..........................................................................10

*In re Olsten Corp. Sec. Litig.,*
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ................................................................10

*In re Opnext, Inc.,*
  No. 08cv-0920, 2008 U.S. Dist. LEXIS 60678 (D.N.J. Aug. 6, 2008) ....... 10, 12

*In re PharmaPrint, Inc. Sec. Litig.,*
  No. 00-cv-00061, 2002 U.S. Dist. LEXIS 19845 (D.N.J. April 17, 2002) . 13, 14

*Sklar v. Amarin Corp. PLC,*
  Civil Action No. 13-cv-06663 (FLW)(TJB), 2014 WL 3748248 (D.N.J. July
  29, 2014) ..................................................................................................... 10, 12

*Weltz v. Lee,*
  199 F.R.D. 129 (S.D.N.Y. 2001) ......................................................................6

iii

**Statutes**

15 U.S.C. § 78u-4.......................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23(a)..................................................................................... *passim*

Fed. R. Civ. P. 42(a)........................................................................................6, 7

Shunsei Tazaki ("Movant"), by counsel, respectfully submits this Memorandum of Law pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for entry of an order: (i) consolidating the above-captioned related actions (the "Actions"), (ii) appointing Movant as Lead Plaintiff in the Actions; (iii) approving Movant's selection of the law firm of Levi & Korsinsky, LLP ("L&K") to serve as Lead Counsel under 15 U.S.C. § 78u-4(a)(3)(B)(v); and (iv) granting such other and further relief as the Court may deem just and proper.

## I.    INTRODUCTION

The Actions are brought pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, on behalf of persons and entities that purchased or otherwise acquired Tingo Group, Inc. ("Tingo" or the "Company") securities between December 1, 2022 and June 6, 2023, inclusive (the "Class Period")[1] against: Tingo, Dozy Mmobuosi ("Mmobuosi"), Darren Mercer ("Mercer"), and Kevin Chen ("Chen"), (collectively, "Defendants").

---

[1] The action entitled *Arbour v. Tingo Group, Inc., et. al.,* Case No. 2:23-cv-03151-ES-MAH (the "*Arbour* Action") defines the Class Period as March 31, 2023 through June 6, 2023, inclusive. The action styled *Bloedorn v. Tingo Group, Inc., et al.*, Case

Pursuant to the PSLRA, this Court must appoint the member of the class "most capable of adequately representing the interests of class members" to serve as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). Movant believes he is entitled to appointment as Lead Plaintiff as the movant with the largest financial interest that otherwise meets the applicable requirements of Rule 23 of the Federal Rules of Civil Procedure. During the Class Period, Movant sustained approximately $514,912.52 in losses as a result of purchasing Tingo securities at artificially inflated prices.[2] Movant also respectfully requests that the Court approve L&K as Lead Counsel. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class").

---

No. 2:23-cv-03153-ES-MAH (the "*Bloedorn* Action") defines the Class Period as December 1, 2022 through June 6, 2023, inclusive. Movant adopts the most-inclusive Class Period defined in the *Bloedorn* Action, which is appropriate at this stage of the litigation. *See e.g. Ferreira v. Funko, Inc.,* No. 2:20-cv-02319-VAP-PJWx, 2020 U.S. Dist. LEXIS 106515, at *3 n.2 (C.D. Cal. June 11, 2020); *Hom v. Vale, S.A.,* 2016 U.S. Dist. LEXIS 28863, at *10 (S.D.N.Y. Mar. 7, 2016) ("[T]he Court finds that the use of the longer, more inclusive class period is proper . . . because the longer class period encompasses more potential class members and damages.").

[2] *See* Declaration of Adam A. Apton in Support of Movant's Motion for Consolidation of the Actions, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel, dated August 7, 2023 ("Apton Decl."), Ex. A (Movant's PSLRA certification); Ex. B (Movant's loss charts).

## II.    STATEMENT OF FACTS[3]

Tingo purports to be a holding company that operates in the areas of financial technology and agri-fintech through its subsidiaries and entities, both wholly-owned and controlled through variable interest entity ("VIE") arrangements in Africa, Southeast Asia and the Middle East. ¶ 2. The Company claims it operates in 4 segments: (1) Verticals and Technology, (2) Online Stock Trading, (3) Comprehensive Platform Service, and (4) Tingo Foods. *Id.*

Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. ¶ 7. Specifically, Defendants failed to disclose to investors: (1) that Defendant Mmobuosi fabricated biographical claims about himself; (2) that Tingo had photoshopped its logo onto pictures of airplanes it did not own; (3) that Tingo inflated its food division margins; (4) that Tingo published misleading images of its planned Nigerian food processing facility and overstated its progress on the facility's construction; (5) that Tingo inflated its food inventory; (6) that Tingo did not have relationships with the two farming cooperatives it claimed; (7) that Tingo did not generated $128 million in revenue for

---

[3] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "*Arbour* Complaint") filed in the *Arbour* Action. Unless otherwise defined, capitalized terms shall have the same meaning set forth in the *Arbour* Complaint. The facts set forth in the *Arbour* Complaint are incorporated herein by reference.

3

its handset leasing, call and data segments as it claimed; (8) that Tingo's Mobile operation in Nigeria was delinquent on its tax obligations; (9) that Tingo photoshopped its logo over pictures from a different point of sale system operator's website; (10) that Tingo did not generate $125.3 million in revenue from NWASSA; (11) that Tingo's agricultural export business was not on track to deliver $1.34 billion in exports by Q3 2023; (12) that Tingo lacked effective controls over accounting and financial reporting; and (13) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. *Id.*

On June 6, 2023, Hindenburg Research ("Hindenburg") published a report titled "Tingo Group: Fake Farmers, Phones, and Financials—The Nigerian Empire That Isn't." ¶ 3. Therein, Hindenburg disclosed, among other things, that Tingo "is an exceptionally obvious scam with completely fabricated financials." *Id.* Hindenburg further stated that Defendant Mmobuosi appears to have fabricated his biographical claim, including that he developed the first mobile payment app in Nigeria and that he received a PhD in rural advancement from a Malaysian university in 2007. *Id.*

Hindenburg also revealed that Tingo appears to have made several false representations about its businesses. ¶ 4. For example, Hindenburg points out, among other issues, that "Tingo had photoshopped its logo onto pictures of

4

airplanes" and that "Dozy later admitted to never owning any actual aircraft"; Tingo's food division claimed 24.8% operating margins, which "exceed those of every major comparable food company"; the rendering of Tingo's planned $1.6 billion Nigerian food processing facility, featured in Tingo's investor materials and on a billboard at the ceremony, is actually a rendering of an oil refinery from a stock photo website, and that despite Tingo's representations of "significant progress" on the facility, Hindenburg "visited the site a week later and found zero signs of progress." *Id.*

Hindenburg also revealed that Tingo lacked effective controls over accounting and financial reporting. ¶ 5. For example, Tingo's financial statements include basic errors like incorrect math and leaving zeroes off key metrics. *Id.* Hindenburg also revealed that Tingo's cash flow and balance sheet statements do not reconcile and show major errors, and that its cash flow statements regularly subtract items from cash that should be added and vice versa, and that these errors also seem to apply to Tingo's audited annual financial statements. *Id.*

In response to this news, the Company's stock price declined 48.2%, or $1.23, to close on June 6, 2023 at $1.32 per share. ¶ 6.

## III.    PROCEDURAL HISTORY

Pending before this Court is the above-captioned *Arbour* Action against the Defendants. Plaintiff Christopher Arbour ("Arbour") commenced the first-filed

action on June 8, 2023. On that same day, counsel acting on Arbour's behalf published a notice on *Business Wire* announcing that a securities class action had been initiated against the Defendants. *See* Apton Decl., Ex. C ("Press Release").

Later on June 8, 2023, a substantially similar action was filed against Tingo in this Court, the *Bloedorn* Action. Movant has requested consolidation of the *Arbour* and *Bloedorn* Actions.

## IV.   ARGUMENT

### A.   Consolidation of the Actions Is Appropriate

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter have been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered. 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff for the consolidated actions." *Id.*

Under the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). "[C]ourts have taken the view that considerations of judicial economy favor consolidation." *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)). Consolidation is particularly appropriate in securities class action litigation. *See Martingano v. Am.*

*Int'l Grp., Inc.,* Nos. 06-cv-1625-JG-JMA, 2006 U.S. Dist. LEXIS 47855, at *3-5 (E.D.N.Y. July 11, 2006) (citing *Ferrari v. Impath, Inc.,* 2004 U.S. Dist. LEXIS 13898, at *2 (S.D.N.Y. July 15, 2004)) ("In securities class action cases…courts have deemed consolidation particularly appropriate where the actions are based on the same public statements and reports, if there are common questions of law and fact and [if] the defendant will not be prejudiced…" (citation and quotations omitted)); Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading statements.

The Actions present similar factual and legal issues, as they all involve the same subject matter and are based on the same wrongful course of conduct. The Actions name substantially the same parties as defendants. Because they arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions. Accordingly, consolidation under Rule 42(a) is appropriate. *See Celotex Corp.*, 899 F.2d at 1285.

**B.    The PSLRA Standard for Appointing Lead Plaintiff**

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-

7

4(a)(1); *see* 15 U.S.C. § 78u-4(3)(B). Specifically, within 20 days after the date on which a class action is filed, the plaintiff shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –

    (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and

    (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Further, the PSLRA directs the Court to consider any motions by plaintiff or purported class members to serve as Lead Plaintiff in response to any such notice within 90 days after the date of publication of the notice. 15 U.S.C. § 78u-4(a)(3)(B). Under the Exchange Act, the Court "shall" appoint the "most adequate plaintiff," and is to presume that plaintiff is the person which:

    (aa)    has either filed the complaint or made a motion in response to a notice . . .;

    (bb)    in the determination of the court, has the largest financial interest in the relief  sought by the class; and

    (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### C.    Movant is the "Most Adequate Plaintiff" under the Exchange Act

Movant respectfully submits that he is the "most adequate plaintiff" because he has complied with the PSLRA procedural requirements, has the largest financial interest of any movant, and satisfies Rule 23's typicality and adequacy requirements. Further, Movant has selected and retained counsel experienced in the prosecution of securities class actions to represent the proposed class. *See* Apton Decl., Ex. D (Firm Resumé of L&K). Accordingly, Movant satisfies the PSLRA's filing requirements for seeking appointment as lead plaintiff and, therefore, should be appointed Lead Plaintiff.

### 1.    Movant is Willing to Serve as Class Representative

On June 8, 2023, Plaintiff in the first-filed action caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A) of the Exchange Act, which announced that a securities class action had been filed against Defendants and which advised putative class members that they have until August 7, 2023 to file a motion to seek appointment as a Lead Plaintiff in the Actions.[4] Movant has reviewed the complaint filed in the first-filed action and has timely filed this motion pursuant to the Notice.

---

[4] The *Arbour* Action was filed in this Court on June 8, 2023. That same day, the Notice was published over *Business Wire*, a widely circulated national business-oriented wire service. *See* Apton Decl., Ex. C.

9

### 2. Movant has the Largest Financial Interest in the Relief Sought by the Class

Under the Exchange Act, a rebuttable presumption exists whereby the movant with the largest financial interest in the litigation and who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is presumed to be the most adequate plaintiff to lead the action. 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Sklar v. Amarin Corp. PLC*, Civil Action No. 13-cv-06663 (FLW)(TJB), 2014 WL 3748248, at *4 (D.N.J. July 29, 2014); *see also In re Opnext, Inc.*, No. 08cv-0920, 2008 U.S. Dist. LEXIS 60678 (D.N.J. Aug. 6, 2008). In determining the "largest financial interest" for purposes of lead plaintiff appointment, courts in the Third Circuit consider: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiff during the class period; and (3) the approximate losses suffered by the plaintiff. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) ("[W]e agree with the many district courts that have held that courts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiff during the class period; and (3) the approximate losses suffered by the plaintiff (citing *Lax v. First Merch. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997); *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 217 (D.N.J. 1999); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (same)"); *see also Sklar*, 2014 WL 3748248, at *4.

10

Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the greater of the price they sold the shares or the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period. 15 U.S.C. § 78u-4(e).

During the Class Period, Movant sustained losses in the amount of approximately $514,912.52 as a result of purchasing Tingo securities at artificially inflated prices. *See* Apton Decl., Ex. B. Movant is not aware of any other movant with a larger financial interest and believes he has the largest financial interest of any lead plaintiff movant. Therefore, Movant is presumptively entitled to appointment as the Lead Plaintiff.

### D.    Movant is Qualified Under Rule 23

The PSLRA provides that the lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

1)    the class is so numerous that joinder of all members is impracticable;

2)    there are questions of law or fact common to the class;

3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

For purposes of appointing lead plaintiff, the determination of whether the movants with the largest interest in the case otherwise satisfies Rule 23 "should be confined to determining whether the movant has made prima facie showing of typicality and adequacy." *Sklar*, 2014 WL 3748248, at *5 (citing *In re Cendant Corp. Litig.*, 264 F.3d at 262). The presumption that the movant with the largest financial interest is the most adequate plaintiff to lead the action may be rebutted only upon **proof** that the movant (1) will not fairly and adequately protect the interests of the class, or (2) are subject to unique defenses that render such movant incapable of adequately representing the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II), *In re Opnext, Inc.*, 2008 U.S. Dist. LEXIS 60678, at *7- 10; *see also Sklar*, 2014 WL 3748248, at *4.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit

12

its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until the lead plaintiff moves for class certification.

As detailed below, Movant satisfies the typicality and adequacy requirements of Rule 23(a), thereby justifying his appointment as Lead Plaintiff in this Actions.

### 1.    Movant's Claims are Typical of the Claims of the Class

The typicality requirement of Rule 23(a) is satisfied when (1) the claims of the proposed lead plaintiff arise from the same course of conduct that gives rise to the other purported class members' claims, and (2) the claims are based on the same legal theory. *See In re Merck & Co., Inc. Securities*, No. 05-cv-1151, 2013 U.S. Dist. LEXIS 13511, at *39-40 (D.N.J. Jan. 20, 2013), *In re PharmaPrint, Inc. Sec. Litig.*, No. 00-cv-00061, 2002 U.S. Dist. LEXIS 19845, at *16 (D.N.J. April 17, 2002).

The claims asserted by Movant are based on the same legal theory and arise out of the same course of events as the other purported class members' claims. Movant purchased Tingo securities, as did each member of the proposed class, at prices artificially inflated by Defendants' false and misleading statements and was damaged thereby. Thus, Movant satisfies the typicality requirement of Rule 23(a).

### 2.    Movant Will Fairly and Adequately Represent the Class' Interests

Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). A movant can demonstrate adequacy by showing that "(a)

the [movant's] attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the [movant] must not have interests antagonistic to those of the class." *In re PharmaPrint, Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 19845, at *16-17. Here, Movant's interests are clearly aligned with the members of the proposed class. Not only is there no evidence of any antagonism between Movant's interests and those of the class, but Movant has a significant and compelling interest in prosecuting the Actions based on the large financial losses he has suffered as a result of the wrongful conduct alleged in the Actions. This motivation, combined with Movant's identical interest with the members of the Class, demonstrates that Movant will vigorously pursue the interests of the Class. As detailed above, Movant's claims raise similar questions of law and fact as claims of the members of the class, and Movant's claims are typical of the members of the class. Further, Movant has demonstrated his adequacy and willingness to serve as and assume the responsibilities of a lead plaintiff, as reflected in the Movant's signed certification. *See* Apton Decl., Ex. A. Having suffered substantial losses, Movant will be a zealous advocate on behalf of the class.

Moreover, Movant considers himself to be an experienced investor, having been investing in the U.S. stock market for eight years, has experience investing in the Hong Kong and Japan exchange markets, and has invested in real estate and land transactions. Movant resides in Nagayo-Chou, Japan, and possesses a bachelor's

14

degree in mechanical engineering, along with certificates related to architecture, civil engineering, and construction management. He is currently retired, but prior to that, was employed as an architect and engineer. Indeed, his experience has already benefited the class. Movant adequately performed due diligence with respect to interviewing various law firms and negotiating a competitive fee agreement on behalf of the class before selecting Levi & Korsinsky as his attorneys.

In addition, Movant has selected L&K– counsel highly experienced in prosecuting securities class actions – to represent him. *See* Apton Decl., Ex. D. Thus, the close alignment of interests between Movant and other class members, and Movant's strong desire to prosecute the Actions on behalf of the class, provide ample reason to grant Movant's motion for appointment as Lead Plaintiff in the Actions.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfy 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, he is, therefore, the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-4(3)(B)(iii)(I), and should be appointed as such to lead the Actions.

### E.   Approving Movant's Choice of Counsel is Appropriate

The Exchange Act vests authority in the lead plaintiff to select and retain lead counsel, subject only to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Movant

has retained L&K to file moving papers on his behalf seeking appointment as Lead Plaintiff, and to serve as Lead Counsel to pursue this litigation on behalf of Movant and the Class. L&K attorneys have extensive experience in the area of securities litigation and have successfully prosecuted numerous securities class actions on behalf of injured investors, both separately, and together. *See* Apton Decl., Ex. D.

## V. CONCLUSION

Movant has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. As such, Movant respectfully requests that the Court consolidate the Actions, appoint him as Lead Plaintiff, approve his selection of counsel, and grant such other relief as the Court may deem just and proper.

Dated: August 7, 2023                     Respectfully submitted,

                                          **LEVI & KORSINSKY, LLP**

                                          */s/ Adam M. Apton*
                                          Adam M. Apton
                                          55 Broadway, 4th Floor
                                          New York, New York 10006
                                          Tel.: (212) 363-7500
                                          Fax: (212) 363-7171
                                          Email: aapton@zlk.com

                                          *Counsel for Shunsei Tazaki and*
                                          *Proposed Lead Counsel for the Class*

16

## CERTIFICATE OF SERVICE

I, Adam M. Apton, hereby certify that on August 7, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

                                                    /s/Adam M. Apton
                                                    Adam M. Apton