POMERANTZ LLP
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

*Counsel for Movants Mohammad*
*Ashraful Hannan and Eli Lowry and*
*Proposed Lead Counsel for the Class*

[Additional counsel on signature page.]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER ARBOUR, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TINGO GROUP, INC., DOZY MMOBUOSI, DARREN MERCER, and KEVIN CHEN,<br><br>Defendants. | Case No. 2:23-cv-03151-ES-MAH<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF MOHAMMAD ASHRAFUL HANNAN AND ELI LOWRY FOR CONSOLIDATION, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND APPROVAL OF CO-LEAD PLAINTIFFS' SELECTION OF LEAD COUNSEL<br><br>Motion Date: September 5, 2023 |

|  |  |
|---|---|
| MARK J. BLOEDORN, INDIVIDUALLY and ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>                    Plaintiff,<br><br>        v.<br><br>TINGO GROUP INC., DARREN MERCER, HAO (KEVIN) CHEN, DOZY MMOBUOSI,<br><br>                    Defendants. | Case No. 2:23-cv-03153-ES-MAH |

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................2

STATEMENT OF FACTS ....................................................................................4

ARGUMENT .......................................................................................................7

    A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED
           FOR ALL PURPOSES.......................................................................7

    B.    HANNAN AND LOWRY SHOULD BE APPOINTED
           CO-LEAD PLAINTIFFS .................................................................9

         1.    Hannan and Lowry Are Willing to Serve as
               Class Representatives...............................................................10

         2.    Hannan and Lowry Have the "Largest Financial Interest".......11

         3.    Hannan and Lowry Otherwise Satisfy the Requirements
               of Rule 23 of the Federal Rules of Civil Procedure..................12

         4.    Hannan and Lowry Will Fairly and Adequately
               Represent the Interests of the Class and Are Not Subject
               to Unique Defenses ..................................................................17

    C.    CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL
           SHOULD BE APPROVED ............................................................18

CONCLUSION...................................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Vitamin Shoppe, Inc.*,
No. 2:17-cv-6454-KM-MAH, 2018 U.S. Dist. LEXIS 69968
(D.N.J. Apr. 25, 2018) ...................................................................................16

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)........................................................................................15

*Arbour v. Tingo Group, Inc. et al.*,
No. 2:23-cv-03151 (D.N.J.)......................................................................*passim*

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) ...............................................................................14

*Bassin v. Decode Genetics, Inc.*,
230 F.R.D. 313 (S.D.N.Y. 2005) .......................................................................9

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006) .....................................................................13, 15

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) .......................................................................8

*Bloedorn v. Tingo Group, Inc. et al.*,
No. 2:23-cv-03153 (D.N.J.) ..........................................................................1, 2

*Fischler v. Amsouth Bancorp.*,
No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875
(M.D. Fla. Feb. 6, 1997) .................................................................................13

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .............................................................12, 15, 16

*In re Comverse Technology, Inc. Securities Litigation*,
No. 1:06-cv-01825 (E.D.N.Y.) ........................................................................19

*In re Enzymotec Ltd. Sec. Litig.*,
No. 14-5556, 2015 U.S. Dist. LEXIS 25720 (D.N.J. Mar. 3, 2015).................16

*In re GE Sec. Litig.*,
   No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133
   (S.D.N.Y. July 29, 2009) ........................................................................8, 9

*In re Lucent Techs. Sec. Litig.*,
   194 F.R.D. 137 (D.N.J. 2000)........................................................................13

*In re Molson Coors Brewing Co. Sec. Litig.*,
   233 F.R.D. 147 (D. Del. 2005) .....................................................................18

*In re Petrobras Securities Litigation*,
   No. 14-cv-09662 (S.D.N.Y.)..........................................................................18

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) .....................................................................8

*In re Vonage Initial Pub. Offering Secs. Litig.*,
   No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258
   (D.N.J. Sept. 6, 2007) ....................................................................................15

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990) ..........................................................................8

*Klein v. Altria Group, Inc. et al*,
   No. 3:20-cv-00075 (E.D. Va.) ........................................................................19

*Lax v. First Merchants Acceptance Corp.*,
   Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866
   (N.D. Ill. Aug. 6, 1997)..................................................................................11

*Malcolm v. Nat'l Gypsum Co.*,
   995 F.2d 346 (2d Cir. 1993) ............................................................................8

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
   63 F. Supp. 3d 394 (D. Del. 2014)..................................................................16

*Patel v. Zoompass Holdings, Inc.*,
   No. 17-3831 (JLL), 2017 U.S. Dist. LEXIS 153765
   (D.N.J. Sept. 20, 2017) ..................................................................................12

*Rubenstahl v. Philip Morris Int'l, Inc.*,
   No. 17-13504 (ES) (MAH), 2019 U.S. Dist. LEXIS 23309
   (D.N.J. Feb. 13, 2019) ....................................................................................12

*Sklar v. Amarin Corp. PLC*,
   Nos. 13-cv-06663 (FLW) (TJB) *et al.*, 2014 U.S. Dist. LEXIS
   103051 (D.N.J. July 29, 2014) ..............................................................................13

*Smith v. Antares Pharma, Inc.*,
   No. 17-8945 (MAS) (DEA), 2018 U.S. Dist. LEXIS 126964
   (D.N.J. July 27, 2018) ..........................................................................................12

**Statutes**

15 U.S.C. § 77z-1 ..................................................................................................15

15 U.S.C. § 78u-4 ...........................................................................................*passim*

Private Securities Litigation Reform Act of 1995 ...........................................*passim*

Securities Exchange Act of 1934 .....................................................................*passim*

**Rules**

Fed. R. Civ. P. 23 .............................................................................................*passim*

Fed. R. Civ. P. 42 .............................................................................................*passim*

iv

Movants Mohammad Ashraful Hannan and Eli Lowry (together "Hannan and Lowry") respectfully submit this Memorandum of Law in support of their motion, pursuant to Federal Rule of Civil Procedure 42 ("Rule 42") and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Hannan and Lowry as Co-Lead Plaintiffs on behalf of a class (the "Class") consisting of all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired Tingo Group, Inc. ("Tingo" or the "Company") securities between December 1, 2022 and June 6, 2023, both dates inclusive (the "Class Period"); and (3) approving proposed Co-Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.[1]

---

[1] On June 8, 2023, the first-filed of the Related Actions was filed in this Court, styled *Arbour v. Tingo Group, Inc. et al.*, No. 2:23-cv-03151 (D.N.J.) (the "*Arbour* Action"), alleging a class including all persons and entities other than Defendants that purchased or otherwise acquired Tingo securities between March 31, 2023 and June 6, 2023, both dates inclusive. *See Arbour* Action, Dkt. No. 1 ¶ 1. That same day, a second action alleging substantially the same wrongdoing as the *Arbour* Action against overlapping defendants was filed in this Court, styled *Bloedorn v. Tingo Group, Inc. et al.*, No. 2:23-cv-03153 (D.N.J.) (the "*Bloedorn* Action"), alleging a class including all persons and entities other than Defendants that purchased or otherwise acquired Tingo common stock between December 1, 2022 and June 6, 2023, both dates inclusive. *See Bloedorn* Action, Dkt. No. 1 ¶ 1. Therefore, to avoid excluding any potential class members, this motion has adopted

## PRELIMINARY STATEMENT

The Complaints in the Related Actions allege that Defendants defrauded investors in violation of the Exchange Act. Tingo investors, including Hannan and Lowry, incurred significant losses following the disclosure of the alleged fraud, which caused the prices of Tingo securities to fall sharply, damaging Hannan and Lowry and other Tingo investors.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact. Here, the Related Actions are putative class actions alleging violations of the federal securities laws by an overlapping group of defendants arising from substantially the same alleged wrongful misconduct. As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the Related Actions and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Hannan and Lowry together: (i) purchased 140,410 shares of Tingo stock; (ii) expended $367,447 on their purchases of Tingo stock; (iii) retained 90,806 of their shares of Tingo stock;

---

the larger class definition alleged in the *Arbour* Action and the larger class period alleged in the *Bloedorn* Action.

2

and (iv) as a result of the disclosures of the fraud, incurred losses of approximately $68,613 in connection with their Class Period purchases of Tingo stock. *See* Declaration of Thomas H. Przybylowski in Support of Motion ("Przybylowski Decl."), Exhibit ("Ex.") A. Accordingly, Hannan and Lowry believe that they have the largest financial interest in the relief sought in the Related Actions.

Beyond their considerable financial interest, Hannan and Lowry also meet the applicable requirements of Rule 23 because their claims are typical of absent Class members and because they will fairly and adequately represent the interests of the Class.

In order to fulfill their responsibilities as Co-Lead Plaintiffs and vigorously prosecute the Related Actions on behalf of the Class, Hannan and Lowry have selected Pomerantz as Lead Counsel for the Class. Pomerantz is a nationally-recognized securities class action firm that has recovered billions of dollars on behalf of defrauded investors, as detailed in the firm's resume, and is well qualified to serve as Lead Counsel in the Related Actions.

Accordingly, Hannan and Lowry respectfully request that the Court enter an order consolidating the Related Actions, appointing them as Co-Lead Plaintiffs for the Class, and approving their selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaint in the *Arbour* Action (*see Arbour* Action, Dkt. No. 1) (the "*Arbour* Complaint"), Tingo purports to be a holding company that operates in the areas of financial technology and agri-fintech through its subsidiaries and entities, both wholly-owned and controlled through variable interest entity arrangements in Africa, Southeast Asia and the Middle East. *Arbour* Complaint, ¶ 2. Tingo claims it operates in 4 segments: (1) Verticals and Technology, (2) Online Stock Trading, (3) Comprehensive Platform Service, and (4) Tingo Foods. *Id.*

On June 6, 2023, Hindenburg Research ("Hindenburg") published a report titled "Tingo Group: Fake Farmers, Phones, and Financials—The Nigerian Empire That Isn't." *Arbour* Complaint, ¶ 3. Therein, Hindenburg disclosed, among other things, that Tingo "is an exceptionally obvious scam with completely fabricated financials." *Id.* Hindenburg further stated that Defendant Dozy Mmobuosi ("Mmobuosi") appears to have fabricated his biographical claim, including that he developed the first mobile payment app in Nigeria and that he received a PhD in rural advancement from a Malaysian university in 2007. *Id.*

Hindenburg also revealed that Tingo appears to have made several false representations about its businesses. *Arbour* Complaint, ¶ 4. For example, Hindenburg points out, among other issues, that "Tingo had photoshopped its logo

4

onto pictures of airplanes" and that "Dozy later admitted to never owning any actual aircraft"; Tingo's food division claimed 24.8% operating margins, which "exceed those of every major comparable food company"; the rendering of Tingo's planned $1.6 billion Nigerian food processing facility, featured in Tingo's investor materials and on a billboard at the ceremony, is actually a rendering of an oil refinery from a stock photo website, and that despite Tingo's representations of "significant progress" on the facility, Hindenburg "visited the site a week later and found zero signs of progress." *Id.* Hindenburg also revealed that Tingo's food inventory completely vanished from Tingo's Q1 2023 accounts without explanation; two unnamed farming cooperatives that allegedly supplied the majority of Tingo's 9.3 million userbase said they had never heard of Tingo; the type of license Tingo claims generated $128 million in revenue for its handset leasing, call and data segments last quarter did not exist until June, 2023; Tingo Mobile's office in Nigeria had a sign posted on its door by federal tax authorities stating that the company is delinquent on its tax obligations; Tingo's pictures of Tingo's claimed point of sale system were taken from a different operator's website, with a Tingo logo photoshopped over them; despite Tingo's claims that its online marketplace called NWASSA generated $125.3 million in revenue, the website has been "under maintenance" and inoperable for months; despite Tingo's claims that its brand-new agricultural export business was on track to deliver over

5

$1.34 billion in exports by Q3 2023, Hindenburg found no import/export records from Tingo at all through searches of Nigerian customs and trading databases. *Id.*

Hindenburg also revealed that Tingo lacked effective controls over accounting and financial reporting. *Arbour* Complaint, ¶ 5. For example, Tingo's financial statements include basic errors like incorrect math and leaving zeroes off key metrics. *Id.* Hindenburg also revealed that Tingo's cash flow and balance sheet statements do not reconcile and show major errors, and that its cash flow statements regularly subtract items from cash that should be added and vice versa, and that these errors also seem to apply to Tingo's audited annual financial statements. *Id.*

On this news, the Company's stock price fell $1.23, or 48.2%, to close at $1.32 per share on June 6, 2023. *Arbour* Complaint, ¶ 6.

Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. *Arbour* Complaint, ¶ 7. Specifically, Defendants failed to disclose to investors: (1) that Defendant Mmobuosi fabricated biographical claims about himself; (2) that Tingo had photoshopped its logo onto pictures of airplanes it did not own; (3) that Tingo inflated its food division margins; (4) that Tingo published misleading images of its planned Nigerian food processing facility and overstated its progress on the

6

facility's construction; (5) that Tingo inflated its food inventory; (6) that Tingo did not have relationships with the two farming cooperatives it claimed; (7) that Tingo did not generate $128 million in revenue for its handset leasing, call and data segments as it claimed; (8) that Tingo's Mobile operation in Nigeria was delinquent on its tax obligations; (9) that Tingo photoshopped its logo over pictures from a different point of sale system operator's website; (10) that Tingo did not generate $125.3 million in revenue from NWASSA; (11) that Tingo's agricultural export business was not on track to deliver $1.34 billion in exports by Q3 2023; (12) that Tingo lacked effective controls over accounting and financial reporting; and (13) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.  *Id.*

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Hannan and Lowry and other Class members have suffered significant losses and damages.

## **ARGUMENT**

### A.    **THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES**

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court

7

involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4-*8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact. Each action was brought against Tingo, as well as certain officers of the Company, in connection with violations of the Exchange Act. Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants

issued materially false and misleading statements and omissions that artificially inflated the price of Tingo's securities and subsequently damaged the Class when the Company's share price crashed as the truth emerged.  Consolidation of the Related Actions is therefore appropriate.  *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *GE*, 2009 U.S. Dist. LEXIS 69133, at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

### B.     HANNAN AND LOWRY SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

Hannan and Lowry should be appointed Co-Lead Plaintiffs because they have timely filed a motion for appointment as Co-Lead Plaintiffs, have the largest financial interest in the Related Actions to their knowledge, and otherwise satisfy the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (i) the pendency of the action; and (ii) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class

9

members in response to the Notice and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Hannan and Lowry satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

### 1. Hannan and Lowry Are Willing to Serve as Class Representatives

On June 8, 2023, counsel for the plaintiff in the first-filed of the Related Actions (*i.e.*, the *Arbour* Action) caused the statutorily required Notice of that action to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the

PSLRA, which announced that the *Arbour* Action had been filed against Tingo and other Defendants, and which advised investors in Tingo securities that they had until August 7, 2023—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Przybylowski Decl., Ex. B.

Hannan and Lowry have filed the instant motion pursuant to the Notice, and have attached sworn Certifications attesting that they are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Hannan and Lowry satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

## 2.    Hannan and Lowry Have the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

To the best of his knowledge, Hannan and Lowry has the largest financial interest of any Tingo investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses

11

suffered.  Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866, at *17-*18 (N.D. Ill. Aug. 6, 1997).  These *Lax* factors have been adopted by courts nationwide, including this Judicial District.  *See, e.g.*, *Rubenstahl v. Philip Morris Int'l, Inc.*, No. 17-13504 (ES) (MAH), 2019 U.S. Dist. LEXIS 23309, at *5 (D.N.J. Feb. 13, 2019) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001)); *Smith v. Antares Pharma, Inc.*, No. 17-8945 (MAS) (DEA), 2018 U.S. Dist. LEXIS 126964, at *4-*5 (D.N.J. July 27, 2018); *Patel v. Zoompass Holdings, Inc.*, No. 17-3831 (JLL), 2017 U.S. Dist. LEXIS 153765, at *2-*3 (D.N.J. Sept. 20, 2017).

During the Class Period, Hannan and Lowry together: (i) purchased 140,410 shares of Tingo stock; (ii) expended $367,447 on their purchases of Tingo stock; (iii) retained 90,806 of their shares of Tingo stock; and (iv) as a result of the disclosures of the fraud, incurred losses of approximately $68,613 in connection with their Class Period purchases of Tingo stock.  *See* Przybylowski Decl., Ex. A. To the extent that Hannan and Lowry possess the largest financial interest in the outcome of this litigation, they are the presumptive "most adequate" plaintiffs.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

> **3.    Hannan and Lowry Otherwise Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal

Rules of Civil Procedure."  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining that the Lead Plaintiff satisfies the requirements of Rule 23, "[a] wide-ranging analysis under Rule 23 is not appropriate [at this stage of the litigation] and should be left for consideration of a motion for class certification." *In re Lucent Techs. Sec. Litig.*, 194 F.R.D. 137, 149 (D.N.J. 2000) (quoting *Fischler v. Amsouth Bancorp.*, No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-*8 (M.D. Fla. Feb. 6, 1997)); *see also Sklar v. Amarin Corp. PLC*, Nos. 13-cv-06663 (FLW) (TJB) *et al.*, 2014 U.S. Dist. LEXIS 103051, at *20 (D.N.J. July 29, 2014) (finding "only a preliminary showing of both typicality and adequacy is necessary"). Moreover, "[t]he Rule 23 inquiry focuses [only] on the 'typicality' and 'adequacy' requirements at this stage of the litigation." *Amarin*, 2014 U.S. Dist. LEXIS 103051, at *20.

The typicality requirement of Rule 23(a)(3) is satisfied where "the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v.*

13

*Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory")).

Hannan and Lowry's claims are typical of those of the Class. Hannan and Lowry, like all Class members, allege that Defendants violated the Exchange Act by making false or misleading statements of material facts concerning Tingo, and/or by omitting to state material facts necessary in order to make the statements they did make not misleading. Hannan and Lowry, like all Class members, allege damages based on purchases and/or acquisitions in the Company's securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions, with such damages realized upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

"In making the *prima facie* determination of adequacy, a court should consider whether the movant 'has the ability and incentive to represent the claims of the class vigorously, [whether the movant] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on

14

behalf of the class.'" *In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258, at *19 (D.N.J. Sept. 6, 2007) (quoting *Cendant*, 264 F.3d at 265); *see also Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent'" (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997))).

Hannan and Lowry are adequate representatives for the Class. As set forth in greater detail below, Hannan and Lowry have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submit their choice of Pomerantz to the Court for approval as Lead Counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). There is no evidence of antagonism or conflict between Hannan and Lowry's interests and the interests of the Class. Hannan and Lowry have submitted signed Certifications declaring their commitment to protect the interests of the Class (*see* Przybylowski Decl., Ex. C), and Hannan and Lowry's significant financial interest in the Related Actions demonstrates that they have a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Additionally, Hannan and Lowry constitute an appropriate Lead Plaintiff duo. The appointment of more than one class member seeking joint appointment as Lead Plaintiffs is expressly permitted by the PSLRA, 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)

and 78u-4(a)(3)(B)(iii)(I), the Third Circuit, and district courts within the Third Circuit, including this Judicial District, which have repeatedly recognized the propriety of appointing multiple movants as Lead Plaintiff that are capable of "fairly and adequately protect[ing] the interests of the class." *Cendant*, 264 F.3d at 266 ("The statute contains no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class.'"); *In re Enzymotec Ltd. Sec. Litig.*, No. 14-5556, 2015 U.S. Dist. LEXIS 25720, at *1-*4, *12 (D.N.J. Mar. 3, 2015) (appointing as Lead Plaintiff a group of three investors); *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 411 (D. Del. 2014) (appointing as Lead Plaintiff a group of investors consisting of two investors through their asset manager and a third investor).

Further demonstrating their adequacy, Hannan and Lowry have submitted a Joint Declaration attesting to, *inter alia*, their background, investing experience, understanding of the responsibilities of Co-Lead Plaintiffs pursuant to the PSLRA, their decision to seek appointment jointly as Co-Lead Plaintiffs, and the steps that they are prepared to take to prosecute this litigation on behalf of the Class. *See* Przybylowski Decl., Ex. D. Courts routinely appoint more than one investor as Lead Plaintiffs under such circumstances. *See, e.g.*, *Aguilar v. Vitamin Shoppe, Inc.*, No. 2:17-cv-6454-KM-MAH, 2018 U.S. Dist. LEXIS 69968, at *28-*34 (D.N.J. Apr.

16

25, 2018) (finding adequacy of group of three investors for lead plaintiff appointment under the PSLRA supported by, *inter alia*, their limited size and their submission of a joint declaration, and collecting cases in the Third Circuit and throughout the country that found similar declarations supporting joint lead plaintiff appointment).

**4. Hannan and Lowry Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses**

The presumption in favor of appointing Hannan and Lowry as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)   will not fairly and adequately protect the interest of the class; or

(bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Hannan and Lowry's ability and desire to fairly and adequately represent the Class has been discussed above.  Hannan and Lowry are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class.  Accordingly, Hannan and Lowry should be appointed Co-Lead Plaintiffs for the Class.

17

## C.    CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel."). The Court should not interfere with Lead Plaintiff's selection unless it is necessary to do so to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Hannan and Lowry have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Przybylowski Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the United Kingdom, and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting

18

recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.) in June 2010, and the $90 million settlement in *Klein v. Altria Group, Inc. et al*, No. 3:20-cv-00075 (E.D. Va.) in March 2022. *See id.*

As a result of their extensive experience in litigation involving issues similar to those raised in the Related Actions, Hannan and Lowry's choice of counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute these Related Actions effectively and expeditiously. Thus, the Court may be assured that by approving Hannan and Lowry's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Hannan and Lowry respectfully request that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Hannan and Lowry as Co-Lead Plaintiffs for the Class; and (3) approving Hannan and Lowry's selection of Pomerantz as Lead Counsel for the Class.

Dated: August 7, 2023                    Respectfully submitted,

                                         POMERANTZ LLP

                                         */s/ Thomas H. Przybylowski*
                                         Thomas H. Przybylowski
                                         Jeremy A. Lieberman
                                         (*pro hac vice* application forthcoming)

19

J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Movants Mohammad
Ashraful Hannan and Eli Lowry and
Proposed Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
(*pro hac vice* application forthcoming)
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Movants
Mohammad Ashraful Hannan and Eli
Lowry*

20