**LEVI & KORSINSKY, LLP**
Adam M. Apton
55 Broadway, 4th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Counsel for Shunsei Tazaki and*
*Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER ARBOUR, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TINGO GROUP, INC., DOZY MMOBUOSI, DARREN MERCER, and KEVIN CHEN,<br><br>Defendants. | Case No. 2:23-cv-03151-ES-MAH<br><br>**SHUNSEI TAZAKI'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF**<br><br>**MOTION DATE: September 5, 2023** |
| MARK J. BLOEDORN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TINGO GROUP INC., DARREN MERCER, HAO (KEVIN) CHEN, DOZY MMOBUOSI,<br><br>Defendants. | Case No. 2:23-cv-03153-ES-MAH |

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT........................................................................................................3

   A. The Private Securities Litigation Reform Act Requires the Court to Appoint a Lead Plaintiff and Lead Counsel. ................................................................3

   B. Shunsei Tazaki is the "Most Adequate Plaintiff".............................................5

      1. Mr. Tazaki Has the Largest Financial Interest. .........................................5

      2. Mr. Tazaki Satisfies the Typicality and Adequacy Requirements of Rule 23.........................................................................................................9

   C. The Krykhtin/Kanda Group Is Not Adequate under *Cendant* and Risks Exposing the Class to Unique Defenses........................................................11

      1. The Krykhtin/Kanda Group Is Inadequate. .............................................12

      2. Mr. Krykhtin Will Subject the Class to Unique Defenses Based on His Atypical Trading Activity.........................................................................17

   D. No Proof Exists to Rebut the Strong Presumption in Favor of Appointing Mr. Tazaki.......................................................................................................23

III. CONCLUSION..................................................................................................24

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applestein v. Medivation, Inc.,*
  C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sept. 20, 2010) ..20

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)..................................................................................21

*In re Bausch & Lomb Inc. Sec. Litig.*,
  244 F.R.D. 169 (W.D.N.Y. 2007) ...........................................................22

*Beck v. Maximus, Inc.,*
  457 F.3d 291 (3d Cir. 2006) ................................................... 4, 17, 23

*Bensley v. FalconStor Software, Inc.*,
  277 F.R.D. 231 (E.D.N.Y. 2011)..............................................................19

*In re Cendant Corp. Litigation*,
  264 F.3d 201 (3d Cir. 2001) ...................................................... passim

*Chao Sun v. Han,*
  2015 U.S. Dist. LEXIS 64060 (D.N.J. May 14, 2015)......................... 13, 14, 16

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)...................................................................................22

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878E.D.N.Y.
  Mar. 2, 2007)..........................................................................................9

*Dang v. Amarin Corp. PLC*,
  2022 U.S. Dist. LEXIS 196034 (D.N.J. Oct. 27, 2022) .....................................7

*Eichenholtz v. Verifone Holdings, Inc.,*
  No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22,
  2008) .......................................................................................................20

*Foster v. Maxwell Techs.,*
  2013 U.S. Dist. LEXIS 154538 (S.D. Cal. Oct. 24, 2013)..................................9

iii

*Galmi v. Teva Pharms. Indus.,*
  302 F. Supp. 3d 485 (D. Conn. 2017)...................................................................21

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus.,*
  529 F. Supp. 3d 385 (E.D. Pa. 2021) ..................................................................4

*Ins. Brokerage Antitrust Litig.,*
  297 F.R.D. 136 (D.N.J. Aug. 1, 2013)................................................................11

*Lax v. First Merch. Acceptance Corp.,*
  No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 11, 1997) ...........5

*Maliarov v. Eros Int'l PLC,*
  No. 15-CV-8956 (AJN), 2016 U.S. Dist. LEXIS 46082 (S.D.N.Y. Apr. 5,
  2016) ...................................................................................................................8

*Micholle v. Ophthotech Corp.,*
  2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018)..................................13

*Milliron v. T-Mobile USA, Inc.,*
  No. 08-4149, 2009 U.S. Dist. LEXIS 101201 (D.N.J. Sept. 10, 2009).............10

*Nakamura v. BRF S.A.,*
  2018 U.S. Dist. LEXIS 110187 (S.D.N.Y. July 2, 2018)...................................13

*In re Nice Sys. Sec. Litig.,*
  188 F.R.D. 206 (D.N.J. 1999).............................................................................5

*In re Olsten Corp. Sec. Litig.,*
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ....................................................................5

*In re Opnext, Inc. Sec. Litig.,*
  2008 U.S. Dist. LEXIS 60678 (D.N.J. Aug. 7, 2008) ................................. 13, 20

*Patel v. Zoompass Holdings, Inc.,*
  No. 17-3831, 2017 U.S. Dist. LEXIS 153765 (D.N.J. Sept. 20, 2017)...............5

*In re PharmaPrint, Inc. Sec. Litig.,*
  No. 00-cv-00061, 2002 U.S. Dist. LEXIS 19845 (D.N.J. April 17, 2002) ... 9, 10

*Porzio v. Overseas Shipholding Grp.,*
  2013 U.S. Dist. LEXIS 14463 (S.D.N.Y. Feb. 1, 2013) ...................................19

iv

*Roby v. Ocean Power Techs.,*
No. 14-cv-3799 (FLW) (LHG), 2015 U.S. Dist. LEXIS 42388 (D.N.J. Mar. 17, 2015) ..................................................................................................5

*Rodriguez v. Draftkings Inc.* 2021 U.S. Dist. LEXIS 219489 (S.D.N.Y. Nov. 12, 2021) ..................................................................................................21

*Roofers' Pension Fund v. Papa*,
No. 16-cv-2805, 2017 U.S. Dist. LEXIS 64264 (D.N.J. Apr. 27, 2017) .............4

*Rubenstahl v. Philip Morris Int'l, Inc.,*
Civil Action No. 17-13504 (ES) (MAH), 2019 U.S. Dist. LEXIS 23309 (D.N.J. Feb. 13, 2019) ..........................................................................................6

*In re Safeguard Scientifics*,
216 F.R.D. 577 (E.D. Pa. 2003)..........................................................................20

*Sallustro v. CannaVest*,
93 F. Supp. 3d 265 (S.D.N.Y. 2015) ....................................................................8

*In re Schering-Plough Corp. ENHANCE ERISA Litig.*,
No. 08-1432 (DMC) (JAD), 2012 U.S. Dist. LEXIS 75213 (D.N.J. May 31, 2012) ..................................................................................................................11

*Smith v. Antares Pharma, Inc.,*
Civil Action No. 17-8945 (MAS) (DEA), 2018 U.S. Dist. LEXIS 126964 (D.N.J. July 27, 2018)................................................................................ 5, 14

*Smith v. Suprema Specialties, Inc.,*
206 F. Supp. 2d 627 (D.N.J. 2002)......................................................................13

*In re Snap Inc. Sec. Litig.*,
2:17-cv-03679-SVW-AGR, 2019 U.S. Dist. LEXIS 88379 (C.D. Cal. Apr. 1, 2019) ..................................................................................................................20

*Stires v. Eco Science Solutions, Inc.,*
Civil Nos. 17-3707, 17-3760, 17-5161, 2018 U.S. Dist. LEXIS 25088 (D.N.J. Feb. 13, 2018) ................................................................................ 6, 13

*In re Stitch Fix, Inc. Sec. Litig.*,
393 F. Supp. 3d 833 (N.D. Cal. 2019)..................................................................15

*Takata v. Riot Blockchain, Inc.*,
    2018 U.S. Dist. LEXIS 189585 (D.N.J. Nov. 6, 2018) ............................... 12, 13

*Tan v. NIO Inc.*,
    2020 U.S. Dist. LEXIS 36623 (E.D.N.Y. Mar. 3, 2020)....................................15

*In re Telxon Corp. Sec. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999) .................................................................16

*The Ezra Charitable Tr. v. Rent-Way, Inc.*,
    136 F. Supp. 2d 435 (W.D. Pa. 2001)..................................................................13

*Tomaszewski v. Trevena, Inc.*,
    383 F. Supp. 3d 409 (E.D. Pa. 2019)...................................................................15

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    95 F. Supp. 3d 607 (S.D.N.Y. 2015) .....................................................................8

*Tsirekidze v. Syntax-Brillian Corp.*,
    No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562 (D. Ariz. Apr.
    4, 2008) ................................................................................................................16

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008) .................................................................13

*In re Veeco Instruments, Inc.*,
    233 F.R.D. 330 (S.D.N.Y. 2005) .........................................................................19

**Statutes**

15 U.S.C. § 78u-4............................................................................................. *passim*

## I.   INTRODUCTION

Movant Shunsei Tazaki should be appointed as the lead plaintiff in this class action securities fraud lawsuit. With over $500,000 in losses from the alleged fraud, he possesses the "largest financial interest" in the outcome of the action and is committed to ensuring that this important matter is litigated effectively and efficiently to obtain the best result possible for himself and the class. His actions to date demonstrate his commitment to the lawsuit, having personally interviewed no less than five law firms before making his ultimate selection and negotiating a competitive fee agreement with his attorneys at Levi & Korsinsky, LLP. Pursuant to the Third Circuit's decision in *In re Cendant Corp. Litigation*, 264 F.3d 201 (3d Cir. 2001), Mr. Tazaki's actions unquestionably qualify him as the "most adequate plaintiff" to serve as the lead plaintiff in this lawsuit.

Only one other opposes Mr. Tazaki's motion. This movant is a group of unrelated investors consisting of Pavel Krykhtin and Perdeep Kanda (who includes by assignment several of his family members). Between Mr. Krykhtin, Mr. Kanda, and his family members, the group consists of five individuals and no less than 11 individual brokerage trading accounts. Aside from Mr. Kanda's family, there is no pre-existing relationship between any of the group members and their motion papers fail to explain why they are seeking appointment together or why they need two law firms (three firms including liaison counsel) to represent them. As the Third Circuit

1

described in *Cendant*, the group appears to have been "created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel" and therefore cannot "be counted on to monitor counsel in a sufficient manner." *Cendant*, 264 F.3d at 267.

In addition to being "inadequate" under *Cendant*, one of the group members, Mr. Krykhtin, would subject the class to deeply prejudicial "reliance" arguments at class certification if allowed to serve as lead plaintiff. Mr. Krykhtin's trading history demonstrates an atypical "in-and-out" trading strategy that, as Defendants will argue, rebuts the "fraud-on-the-market" presumption of reliance. Moreover, given the nature of Mr. Krykhtin's trading strategy, he will not be able to recover the losses he claims to have sustained in connection with sales made on ***before*** the end of the Class Period. Once the losses on these sales are properly removed from his "financial interest" in the action, Mr. Krykhtin becomes a "net gainer" having not sustained any losses from the alleged fraud.

Mr. Tazaki presents none of these issues. To the contrary, he is an educated and experienced investor who has already expended a great deal of effort in this lawsuit by making sure he selected the best possible counsel to litigate it. He interviewed multiple firms and negotiated a competitive retainer agreement, all of which makes him the ideal candidate for lead plaintiff under *Cendant*. Aside from having the "largest financial interest" in the action, he is by far the most committed

movant to overseeing this action and thus the "most adequate plaintiff" to serve as lead plaintiff.

## II.   ARGUMENT

### A.   The Private Securities Litigation Reform Act Requires the Court to Appoint a Lead Plaintiff and Lead Counsel.

The Securities Exchange Act of 1934, as modified by the Private Securities Litigation Reform Act ("PSLRA"), governs all securities fraud class action lawsuits. Importantly, the statute requires the appointment of a lead plaintiff and lead counsel at the outset of the case. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (" . . . the court shall consider any motion made by a purported class member . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . . ").

By statute, the appointment process is conducted in two steps with a "presumption" of lead plaintiff belonging to the movant with the "largest financial interest" in the case that also meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Once the Court identifies the movant entitled to the "presumption" of lead plaintiff, it must then determine whether competing movants can rebut that presumption with evidence of inadequacy, atypicality, or otherwise showing that the movant is subject to a "unique defense." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the presumptive lead

3

plaintiff is subject to a unique defense, then the movant with the next largest financial interest in the case that also meets the Rule 23 requirements should be appointed as the lead plaintiff. *See Cendant*, 264 F.3d at 268 ("If the presumption has been rebutted, the court must begin the process anew (i.e., identifying which of the remaining movants has the highest financial interest in the class's recovery, assessing whether that movant satisfies the threshold typicality and adequacy requirements, and determining whether the presumption has been rebutted) until a lead plaintiff is selected.").

The "presumption" of lead plaintiff can be "rebutted" if it appears that a movant will likely face "unique defenses" concerning reliance, standing, or loss causation. *See Beck v. Maximus, Inc.,* 457 F.3d 291, 301 (3d Cir. 2006) ("A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation."); *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus.*, 529 F. Supp. 3d 385, 407 (E.D. Pa. 2021) (severing pension fund from investor group because if faced "unique defense" concerning standing); *cf. Roofers' Pension Fund v. Papa*, No. 16-cv-2805, 2017 U.S. Dist. LEXIS 64264, at *10-11 (D.N.J. Apr. 27, 2017) (explaining that movants seeking to rebut the presumption "do[] not have to prove the defense, but [t]he[y] must provide enough evidence to show that it is not speculative or meritless").

4

**B.      Shunsei Tazaki is the "Most Adequate Plaintiff".**

**1.      *Mr. Tazaki Has the Largest Financial Interest.***

Courts around the country consider a number of different factors when determining the issue of "financial interest." The Third Circuit "agree[s] with the many district courts that have held that courts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *Cendant,* 264 F.3d at 262  (citing *Lax v. First Merch. Acceptance Corp.,* No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 11, 1997), *In re Nice Sys. Sec. Litig.,* 188 F.R.D. 206, 217 (D.N.J. 1999), and *In re Olsten Corp. Sec. Litig*., 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)). Courts typically agree that that most important and outcome-determinative factor is the "approximate losses suffered." *Roby v. Ocean Power Techs.,* No. 14-cv-3799 (FLW) (LHG), 2015 U.S. Dist. LEXIS 42388, at *14 (D.N.J. Mar. 17, 2015) ("Indeed, courts in this circuit have accorded the third element, the largest financial loss, the greatest weight.") (collecting cases); *see also Smith v. Antares Pharma, Inc.,* Civil Action No. 17-8945 (MAS) (DEA), 2018 U.S. Dist. LEXIS 126964, at *5 (D.N.J. July 27, 2018) ("The most critical among these factors is the approximate loss suffered.") (*quoting Patel v. Zoompass Holdings, Inc.,* No. 17-3831, 2017 U.S. Dist. LEXIS 153765, at *3 (D.N.J. Sept. 20, 2017)).

The following table provides the "financial interest" for each remaining movant pursuant to the *Lax/Olsten* factors described above:

| Movant[1] | Net Shares Purchased | Net Funds Expended | Approximate Loss |
|---|---|---|---|
| Shunsei Tazaki | 160,015 | $750,826 | $514,913 |
| Pavel Krykhtin and Perdeep Kanda | 61,924 | $1,346,508 | ($346,789) (Gain) |

*See* ECF No. 3-4 (Tazaki Loss Chart); and Exhibit A to the Supplemental Declaration of Adam M. Apton, filed herewith. ("Apton Supp. Decl.") As the above table makes clear, Mr. Tazaki has a greater recoverable loss than any other movant. Mr. Tazaki also expended more net funds and purchased more net shares than nearly every other movant. Thus, pursuant to the *Lax/Olsten* factors, Mr. Tazaki has the "largest financial interest" in the action. *Rubenstahl v. Philip Morris Int'l, Inc.,* Civil Action No. 17-13504 (ES) (MAH), 2019 U.S. Dist. LEXIS 23309, at **8-9 (D.N.J. Feb. 13, 2019) (applying *Lax/Olsten* factors); *Stires v. Eco Science Solutions, Inc.,* Civil Nos. 17-3707, 17-3760, 17-5161, 2018 U.S. Dist. LEXIS 25088, at *9 (D.N.J. Feb. 13, 2018) ("The third factor, 'approximate losses suffered,' is often considered the most important.").

---

[1] On August 22, 2023, movants Mohammad Hannan and Eli Lowry, and movant Gregory Thorpe withdrew their motions and, therefore, are not included in the above table. ECF Nos. 11, and 15, respectively. Movants Dang Nguyen and his wife, and movant Alex Simon similarly elected not to oppose Mr. Tazaki's motion, effectively withdrawing their motions. ECF Nos. 12, and 14, respectively.

The above analysis provides the correct "financial interest" information for the Krykhtin/Kanda group, contrary to what they claimed in their opening motion papers. The Krykhtin/Kanda group claimed in their opening motion papers that they sustained a loss of approximately $1.18 million. *See* ECF No. 7-5 at 15. This figure is misleading and provides an artificially inflated representation of the group members' individual financial interests. *First*, the $1.18 million figure improperly aggregates losses incurred by no less than five individuals across 11 different trading accounts. *See id.* at 1-15 (listing separate accounts). Courts in this District have refused to aggregate group losses of individuals with no pre-existing relationship other than a perfunctory introduction through counsel. *See*, *e.g.*, *Dang v. Amarin Corp. PLC*, 2022 U.S. Dist. LEXIS 196034, *16-18 (D.N.J. Oct. 27, 2022) (denying motion for lead plaintiff filed by group of investors with no pre-existing relationship).

*Second*, with regard to Mr. Krykhtin in particular, approximately 100% of his claimed loss is attributable to shares sold *before* the end of the Class Period, meaning that the losses are potentially unrecoverable and/or subject to loss causation defenses. When properly accounting for these sales, Mr. Krykhtin's loss is virtually

7

eliminated and reduces the group's claimed $1.18 million loss to a ***gain*** of approximately $346,789.[2] *See* Apton Supp. Decl., Ex. A.

Courts rely on the allegations at hand when evaluating "financial interests" at the lead plaintiff stage. *See Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 617-619 (S.D.N.Y. 2015) (denying lead plaintiff motion where movant sold shares before end of class period and could not claim losses based on unpled "partial disclosure"). The current complaints on file define the class period as ending on "June 6, 2023, inclusive" (*see* ECF No. 1, ¶1), meaning that sales made by Mr. Krykhtin on June 6 occurred ***before*** the end of the Class Period and thus should not be considered when determining his "financial interest." *See Topping*, 95 F. Supp. 3d at 618; *accord Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 U.S. Dist. LEXIS 46082, at *12 (S.D.N.Y. Apr. 5, 2016) ("recoverable losses" determined by "facts alleged in the complaint"); *Sallustro v. CannaVest*, 93 F. Supp. 3d 265, 275 (S.D.N.Y. 2015) ("*Dura* [and its progeny] . . . require a court to make pre-discovery loss causation determinations . . . that are based on the facts alleged

---

[2] Mr. Kanda too sold shares on the last day of the Class Period, June 6, 2023, but it is unclear how many. One of Kanda's transactions listed in his certification do not match the transaction data provided in his loss chart. In the 'Denise Kanda ISA' account, his certification lists a sale of 50,000 Tingo shares on June 8, 2023 at $1.29 per share, yet this same transaction is listed on the loss chart as occurring on June 6, 2023. *Compare* ECF No. 7-4, p. 3, *with* ECF No. 7-5, p. 12. Depending on when the transaction actually occurred, the Krykhtin/Kanda group's gain would be even greater.

in the complaint"); *Foster v. Maxwell Techs.*, 2013 U.S. Dist. LEXIS 154538, at *14 (S.D. Cal. Oct. 24, 2013) ("Court is limited to considering the allegations in the pending complaints at this stage of the litigation"); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878, at *19 (E.D.N.Y. Mar. 2, 2007) ("In selecting a plaintiff to lead this litigation at this stage of the proceedings, the court can and must only consider the pleadings before it").

### 2.   Mr. Tazaki Satisfies the Typicality and Adequacy Requirements of Rule 23.

Mr. Tazaki also satisfies the typicality and adequacy requirements of Rule 23. Mr. Tazaki is "typical" of other class members because he purchased Tingo securities during the Class Period at prices artificially inflated by Defendants' misrepresentations and/or omissions that form the basis of the action. He suffered substantial losses as a result of these purchases and seeks to recover those losses under the same legal theory as the class generally. *See In re PharmaPrint, Inc. Sec. Litig.,* No. 00-cv-00061, 2002 U.S. Dist. LEXIS 19845, at *16 (D.N.J. April 17, 2002)("'The representative parties' claims are generally found to be typical if they arise from the same course of conduct that gives rise to the claims of the other class members and if the claims are based on the same legal theory.'").

Mr. Tazaki has also demonstrated his "adequacy" to serve as lead plaintiff. *First*, Mr. Tazaki has shown that his choice of counsel, Levi & Korsinsky, is qualified, experienced, and able to conduct the litigation. This will ensure his

vigorous and adequate prosecution of the class's claims. *PharmaPrint*, 2002 U.S. Dist. LEXIS 19845, at \*16-17. *Second*, Mr. Tazaki has no conflicts with other class members. *Id. Third*, not only is there no evidence of any antagonism between Mr. Tazaki's interests and those of the class, but Mr. Tazaki has a significant and compelling interest in prosecuting the Action based on the large financial losses he has suffered as a result of the wrongful conduct alleged in the Action. *Id*. *Fourth*, Mr. Tazaki has "demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel" when he interviewed and retained Levi & Korsinsky to represent him. *Cendant,* 264 F.3d at 265.

Mr. Tazaki's efforts to interview and select the best counsel possible for this case cannot be overstated. He conducted a thorough proposal process whereby he received applications from, and then interviewed, no less than five different firms specializing in the area of securities litigation. Mr. Tazaki then negotiated a competitive retainer agreement with his counsel at Levi & Korsinsky, which included a provision limiting attorneys' fees to a percentage well-below the one-third benchmark (subject to court approval).[3] His thoroughness during the retention

---

[3] *See*, *e.g.*, *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 U.S. Dist. LEXIS 101201, at \*24 (D.N.J. Sept. 10, 2009) (awarding 33% of $13.5 million settlement); *In re Schering-Plough Corp. ENHANCE ERISA Litig.*, No. 08-1432 (DMC) (JAD),

process reflects his sophistication as an educated and experienced investor. *See* ECF No. 3-1, pp. 14-15 (describing Mr. Tazaki's educational and professional background as an architect and engineer who invests in equities and real estate). Mr. Tazaki's actions to date demonstrate a shareholder with a substantial financial interest in the lawsuit who is motivated and committed to remaining involved in the action. This is what Congress intended when it enacted the PSLRA. *See Cendant*, 264 F.3d at 266-67 ("the goal of the Reform Act's lead plaintiff provision is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class" and "actively supervise the conduct of the litigation" of class actions alleging securities fraud).

### C.   The Krykhtin/Kanda Group Is Not Adequate under *Cendant* and Risks Exposing the Class to Unique Defenses.

Even if the Krykhtin/Kanda Group held the "largest financial interest" in the action (which it does not), the group is still not entitled to the presumption of "most adequate plaintiff" because it does establish its "adequacy" under Rule 23 and *Cendant*. The group is also subject to a number of "unique defenses" which stand in the way of its appointment as lead plaintiff.

---

2012 U.S. Dist. LEXIS 75213, at *17-18 (D.N.J. May 31, 2012) (awarding 33.3% of $12.25 million settlement); *Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, at 154-56 (D.N.J. Aug. 1, 2013) (awarding 33% of $10.5 million settlement).

### 1.    *The Krykhtin/Kanda Group Is Inadequate.*

In enacting the PSLRA, Congress sought "to empower investors so that they – not their lawyers – exercise primary control over private securities litigation." S. Rep. No. 104-98, at 4 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 683. Thus, while the statute expressly permits a "group of persons" to serve as lead plaintiff (15 U.S.C. §78u-4(a)(3)(B)(iii)(I)), the Third Circuit held that, a "group is not entitled to presumptive lead plaintiff status unless it 'otherwise satisfies' Rule 23, which in turn requires that it be able to 'fairly and adequately protect the interests of the class.'" *Cendant*, 264 F.3d at 266.

In this regard, the Third Circuit has held that if a "court determines that the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class." *Id*. Specifically, if "a court were to determine that the movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner." *Id*. at 267; *accord Takata v. Riot Blockchain, Inc.,* 2018 U.S. Dist. LEXIS 189585, at *12-*16 (D.N.J. Nov. 6, 2018) (denying motion by two groups of individuals with larger losses and

12

appointing single movant as lead plaintiff); *Stires,* 2018 U.S. Dist. LEXIS 25088, at *9 (same); *Chao Sun v. Han,* 2015 U.S. Dist. LEXIS 64060, at **11-14 (D.N.J. May 14, 2015) (same); *Smith v. Suprema Specialties, Inc.,* 206 F. Supp. 2d 627, 636-37 (D.N.J. 2002) (same); *In re Opnext, Inc. Sec. Litig.*, 2008 U.S. Dist. LEXIS 60678, at *8 (D.N.J. Aug. 7, 2008) (same). "The aggregation of disparate investors solely for the purpose of establishing a plaintiff group is contrary to the purposes of the PSLRA, and has been strongly disfavored by the courts." *The Ezra Charitable Tr. v. Rent-Way, Inc.,* 136 F. Supp. 2d 435, 444-45 (W.D. Pa. 2001) (citing cases).

As such, "when evaluating group plaintiffs, movants must show their cohesiveness and independence from proposed counsel, including 'how and when they were joined together, how they intend to conduct discovery or how they will coordinate litigation efforts and strategy.'" *Takata*, 2018 U.S. Dist. LEXIS 189585, at *13; *see also Nakamura v. BRF S.A.,* 2018 U.S. Dist. LEXIS 110187, at *6 (S.D.N.Y. July 2, 2018) ("A proposed plaintiff group has the burden of showing that aggregation is appropriate."); *Micholle v. Ophthotech Corp.*, 2018 U.S. Dist. LEXIS 41120, at *13 (S.D.N.Y. Mar. 13, 2018) ("Groups with unrelated members must, however, provide evidence that they will function cohesively and thus best serve the class."); *Varghese v. China Shenghuo Pharm. Holdings, Inc.,* 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (holding "a proposed group must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and

13

to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs"); *Smith,* 206 F. Supp. 2d at 635 ("[T]o sustain a group of proposed lead plaintiffs, courts have established protocols to [e]nsure that the group will be effective . . . includ[ing] requiring declarations or affidavits to demonstrate that the proposed lead plaintiffs can work effectively as a group.").

"Among the factors to consider in determining whether [a group] will 'fairly and adequately' represent the interests of the class are: (i) whether the individuals in question had a pre-existing relationship, (ii) the extent of that relationship, (iii) whether the group was created by the efforts of lawyers for the purpose of obtaining lead plaintiff status, and (iv) whether the group is too large to adequately represent the Class." *Chao Sun*, 2015 U.S. Dist. LEXIS 64060, at *10 (citing *Cendant*, 264 F.3d at 266-67). Despite the declaration they submitted with their motion (ECF No. 7-7), Messrs. Krykhtin and Kanda fail to demonstrate their ability to properly conduct this litigation.

Messrs. Krykhtin and Kanda plainly do not have any pre-existing relationship with one another. Instead, their relationship is due solely to "the efforts of lawyers hoping to ensure their eventual appointment as lead counsel." *Cendant*, 264 F.3d at 267. This strikes heavily against the "adequacy" of the group and suggests they cannot be "counted on to monitor counsel in a sufficient manner." *Id*. Even courts

14

that have taken a more permissive view on unrelated groups have nonetheless required evidence of "informed communication among the members as to forming a group [that] need only predate the motions for appointment as lead plaintiff." *Tomaszewski v. Trevena, Inc.,* 383 F. Supp. 3d 409, 416 (E.D. Pa. 2019). Messrs. Krykhtin and Kanda claim that they have satisfied this burden by citing to a single conference call that was held before their motion was filed. Their description of the conference call, however, reflects only "'vague discussions of general communication protocols and status reports hashed out over preliminary conference calls . . . [and] boilerplate plans for cooperation'" that numerous courts have held are insufficient to "establish that proposed group would work effectively and cohesively as lead plaintiff." *Tan v. NIO Inc.*, 2020 U.S. Dist. LEXIS 36623, at *15 (E.D.N.Y. Mar. 3, 2020) (collecting cases); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) ("The declaration allegations are conclusory and cursory, and indicate only that the group members . . . have exchanged a few calls and emails with each other since being introduced by their common lawyer.").

Messrs. Krykhtin and Kanda also appear to have retained two separate law firms to represent them in this action, though they provide no explanation why and fail to describe the relationship between the firms or provide the reasoning behind their decision to encumber the class with two law firms, in addition to the retention of local counsel. This suggests further that their decision to seek appointment as co-

15

lead plaintiff was in fact a decision made by counsel and not themselves. *See generally Chao Sun*, 2015 U.S. Dist. LEXIS 64060, at \*\*9-11 (noting that the declarations "fail to indicate a pre-existing relationship" or that the individuals "even know each other" and stating that the court "takes issue with" whether "the group was created by the efforts of lawyers for the purpose of obtaining lead plaintiff status").

"[T]he clear implication is that [Messrs. Krykhtin's and Kanda's two law firms], rather than the [group's members], are steering the litigation" and that the Krykhtin/Kanda group is exactly the lawyer-driven group "unbound by any allegiance to one another" that the PSLRA sought to prevent. *In re Telxon Corp. Sec. Litig*., 67 F. Supp. 2d 803, 811 (N.D. Ohio 1999); *see also Tsirekidze v. Syntax-Brillian Corp*., No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562, at \*15 (D. Ariz. Apr. 4, 2008). "[T]o allow a mélange of unrelated persons to serve as the lead plaintiff, especially if multiple law firms are to represent their interests," would be antithetical to the PSLRA because "[s]uch a 'group' would be a 'lead plaintiff' in name only; in substance, those individuals would essentially constitute a collection of lead plaintiffs, unbound by any allegiance to one another and unlikely to function as a unified whole" and the "Court would be left with little assurance that the 'group' speaks with a collective voice." *Telxon*, 67 F. Supp. 2d at 811.

### 2.    *Mr. Krykhtin Will Subject the Class to Unique Defenses Based on His Atypical Trading Activity.*

If allowed to serve as a lead plaintiff, Mr. Krykhtin will subject the class to unnecessary "unique defenses" arising from his atypical trading strategy. Mr. Krykhtin bought *and* sold thousands of shares repeatedly during the Class Period. This sort of trading activity suggests that he was not relying on the Defendants' misleading statements but instead for reasons unrelated to the allegations. Courts have routinely disqualified shareholders from serving as lead plaintiff when they will likely face "reliance" arguments at some later stage in the proceedings. *See Beck*, 457 F.3d at 301 ("A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation.").

Mr. Krykhtin's transaction history shows that he did not begin investing in Tingo until May 16, 2023, approximately two weeks before the end of the Class Period. *See* ECF No. 7-4, pp. 3-9 (transactions appended to certification). During those two weeks alone, Mr. Krykhtin purchased, sold, repurchased, resold, and repurchased **hundreds of thousands of shares** across his four brokerage accounts; indeed, the following chart summarizes Mr. Krykhtin's trading during the Class Period:

17

| Account | Trade Turnover |
|---|---|
| Money Market | From 5/17 to 5/23, Mr. Krykhtin purchased 31,520 shares. On 5/23, Mr. Krykhtin sold 31,520 shares, completely selling out.<br><br>From 5/31 to 6/5, Mr. Krykhtin purchased 57,970 shares. On 6/6, Mr. Krykhtin sold 57,970 shares, again completely selling out. |
| Roth IRA | From 5/16 to 5/18, Mr. Krykhtin purchased 80,610 shares. On 5/23, Mr. Krykhtin sold 80,610 shares, completely selling out for a profit.<br><br>On 5/26, Mr. Krykhtin purchased 107,787 shares. On the same day, 5/26, he sold 107,787 shares, again completely selling out for a profit.<br><br>From 5/31 to 6/2, Mr. Krykhtin purchased 137,018 shares. On 6/6, Mr. Krykhtin sold 137,018 shares again completely selling out. |
| Sep IRA | From 5/16 to 5/18, Mr. Krykhtin purchased 28,100 shares. On 5/23, Mr. Krykhtin sold 28,100 shares, completely selling out for a profit.<br><br>From 5/31 to 6/2, Mr. Krykhtin purchased 45,142 shares. On 6/6, Mr. Krykhtin sold 45,142 shares, again completely selling out. |
| St. Peters | From 5/16 to 5/18, Mr. Krykhtin purchased 286,660 shares. On 5/23, Mr. Krykhtin sold 286,660 shares, completely selling out for a profit.<br><br>On 5/26, Mr. Krykhtin purchased 75,908 shares. On the same day, 5/26, Mr. Krykhtin sold 75,908 shares, again completely selling out for a profit.<br><br>From 5/31 to 6/2, Mr. Krykhtin purchased 452,131 shares. On 6/6, he sold 452,131 shares again completely selling out. |

*See* Supp. Apton Decl., Ex. B.

18

The above analysis suggests Mr. Krykhtin engaged in a consistent trading pattern whereby he executed the same strategy regardless of any disclosures from Tingo. Across all accounts he purchased shares around the same period and sold out around the same period and consistently repeated this strategy throughout the last two weeks of the Class Period. Mr. Krykhtin's trading pattern suggests that he was making investment decisions based on abnormalities in the price of Tingo's stock and not any news or material information being disseminated by the company. *See Porzio v. Overseas Shipholding Grp.,* 2013 U.S. Dist. LEXIS 14463, at *16 (S.D.N.Y. Feb. 1, 2013) ("Even if the alleged losses [of in-and-out traders] could, on some theory, establish the greatest financial interest, . . . the OSG Investor Group is subject to 'unique defenses that render [them] incapable of adequately representing the class,' thus rebutting any presumptive lead plaintiff status."); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011) ("Having considered the parties' respective arguments, the Court finds that the Fund has failed to demonstrate that it will be an adequate lead plaintiff because it was a total in-and-out trader and may be unable to demonstrate loss causation."); *In re Veeco Instruments, Inc.,* 233 F.R.D. 330, 333-34 (S.D.N.Y. 2005) (investor who sold stock prior to any corrective disclosure would "at the very least, [be] subject to a unique defense").

19

In the same vein, Mr. Krykhtin's atypical trading strategy suggests that any losses he incurred when selling shares on June 6, 2023 are thus unrecoverable, as he personally did not rely on any alleged false or misleading information when purchasing his shares. *In re Opnext,* 2008 U.S. Dist. LEXIS 60678, at *10 (finding that a lead plaintiff movant group, where one member who engaged in day trading of the company's stock, did not "meet the 'typicality' requirement" and would be susceptible to unique defenses); *In re Safeguard Scientifics*, 216 F.R.D. 577, 582-83 (E.D. Pa. 2003) (day traders "'typically focus[] on technical price movements rather than price,'" which could subject such a plaintiff to a unique defense that it would have purchased the security regardless of the defendants' alleged misstatements and/or omissions.); *see also In re Snap Inc. Sec. Litig*., 2:17-cv-03679-SVW-AGR, 2019 U.S. Dist. LEXIS 88379, at *10-11 (C.D. Cal. Apr. 1, 2019) (noting "courts have held that such 'in-and-out' traders are inadequate or atypical because they are subject to the unique defense that they cannot prove loss causation" and finding it "sufficient to conclude that the issue is quite likely to be raised by Defendants to the detriment of the putative class"); *Applestein v. Medivation, Inc., C* 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255, at *9 (N.D. Cal. Sept. 20, 2010) (courts generally deny lead plaintiff motions by day traders as they "typically focus[] on technical price movements rather than price, and therefore are subject to a defense the they would have purchased the stock at issue regardless of the misstatement/omission");

20

*Eichenholtz v. Verifone Holdings, Inc.,* No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at \*36 (N.D. Cal. Aug. 22, 2008) (finding that a day trader "would not be typical of the class because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility").

The problems associated with Mr. Krykhtin's trading strategy will most likely manifest at the class certification stage. Defendants will argue that the class is not entitled to avail itself of the "fraud-on-the-market" presumption of reliance. As the *Basic* court held, "[a]ny showing that severs the link between the alleged misrepresentation and . . . [plaintiff's] decision to trade at a fair market price[] will be sufficient to rebut the presumption of reliance." *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988). Thus, Defendants will be able to easily argue that Mr. Krykhtin's in-and-out trading rebuts any showing of reliance on the alleged misstatements in this litigation because it suggests that his trading was driven by a desire to capitalize on relatively short-term fluctuations in the price of Tingo stock, *i.e.*, that he would have engaged in these transactions despite the Defendants' positive statements. *See, e.g., Galmi v. Teva Pharms. Indus.,* 302 F. Supp. 3d 485, 504 n.10 (D. Conn. 2017) ("[G]iven his status as a potential 'day trader,' he may be subject to unique defenses that make him an inappropriate lead plaintiff.").

The Southern District of New York's decision in *Rodriguez v. DraftKings Inc. et al.*, is instructive. 2021 U.S. Dist. LEXIS 219489, at \*28 (S.D.N.Y. Nov. 12,

21

2021). There, the court declined to appoint a movant who engaged in in-and-out trading, reasoning as follows:

> But while Kaintz might ultimately succeed in persuading the Court that his idiosyncrasies ought not defeat class certification or harm his claims' prospects on the merits, the interests of the class disfavor exposing it to the risk that his history will dog him. The question whether Kaintz's trading practice compromise his claims and his adequacy as a class representative is sure to arise in the litigation. That potential to distract militates against his appointment.

*Id*. at * 28.

Another equally pressing issue for Mr. Krykhtin and, in turn, the Class, is the fact that the entirety of his claimed loss comes from sales made on the last day of the Class Period, *i.e.*, June 6, 2023. Defendants will attempt to show that the decline in the price of Tingo's stock was caused by factors unrelated to the alleged fraud. This will necessitate Mr. Krykhtin to effectively "disaggregate" his loss at the class certification stage even though such evidentiary arguments are typically not relevant until much later in the litigation, *i.e.*, damages testimony at trial. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (reversing certification where damages model failed to disaggregate damages caused by factors unrelated to liability theory). Relatedly, if Mr. Krykhtin's losses from his June 6 sales are unrecoverable, he will be a "net gainer" who "profited, rather than suffered, as a result of the inflated stock prices." *See*, *e.g.*, *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D.169, 173-74 (W.D.N.Y. 2007).

If Mr. Krykhtin is appointed as lead plaintiff, Defendants will foreseeably attempt to rebut the *Basic* presumption by demonstrating that Mr. Krykhtin's unorthodox investment decisions were not made in reliance upon the Defendants' alleged misrepresentations, but rather as opportunistic trading strategy designed to capitalize on short-term price fluctuations. In the worst-case scenario, Defendants will succeed in doing so, to the obvious prejudice of the Class. And in the best-case scenario, Mr. Krykhtin will be forced to devote considerable time and energy to litigating issues that are unique to his own investment strategy at the expense of prosecuting the class's fraud claims.  There is no reason to saddle the Class in this litigation with a lead plaintiff subject to these unique defenses and risks to class certification. *Beck*, 457 F.3d at 297 ("the representative [subject to a unique defense] might devote time and effort to the defense at the expense of issues that are common and controlling for the class.").

### D.   No Proof Exists to Rebut the Strong Presumption in Favor of Appointing Mr. Tazaki.

Mr. Tazaki is entitled to the presumption of the "most adequate plaintiff" by way of possessing the largest financial interest and otherwise satisfying the typicality and adequacy requirements of Rule 23. Once the presumption is triggered, the Court must focus on the presumptive lead plaintiff alone. *See Cendant*, 264 F.3d at 267.

This presumption may only be rebutted upon actual proof by a class member that Mr. Tazaki will "not fairly and adequately protect the interests of the class" or

"is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C § 78u-4(a)(3)(B)(iii)(II). Unlike the Krykhtin/Kanda group, no proof exists that Mr. Tazaki would be inadequate or subject to unique defenses. Accordingly, Mr. Tazaki is entitled to be appointed as lead plaintiff. *See Cendant*, 264 F.3d at 268. If no class member succeeds in rebutting the presumption, then the district court should appoint the presumptive lead plaintiff as the lead plaintiff.").

## III.   CONCLUSION

Mr. Tazaki has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. As such, Mr. Tazaki respectfully requests that the Court consolidate the Actions, appoint him as Lead Plaintiff, approve his selection of counsel, and grant such other relief as the Court may deem just and proper.

Dated: August 22, 2023                    Respectfully submitted,

                                          **LEVI & KORSINSKY, LLP**

                                          */s/ Adam M. Apton*
                                          Adam M. Apton
                                          55 Broadway, 4th Floor
                                          New York, New York 10006
                                          Tel.: (212) 363-7500
                                          Fax: (212) 363-7171
                                          Email: aapton@zlk.com

                                          *Counsel for Shunsei Tazaki and*
                                          *Proposed Lead Counsel for the Class*

24

# CERTIFICATE OF SERVICE

I, Adam M. Apton, hereby certify that on August 22, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

*/s/Adam M. Apton*
Adam M. Apton