**LEVI & KORSINSKY, LLP**
Adam M. Apton
55 Broadway, 4th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Counsel for Shunsei Tazaki and*
*Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER ARBOUR, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TINGO GROUP, INC., DOZY MMOBUOSI, DARREN MERCER, and KEVIN CHEN, <br><br> Defendants. | Case No. 2:23-cv-03151-ES-MAH <br><br> **SHUNSEI TAZAKI'S MEMORANDUM OF LAW IN REPLY AND FURTHER SUPPORT OF MOTION FOR LEAD PLAINTIFF** <br><br> **MOTION DATE: September 5, 2023** |
| MARK J. BLOEDORN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TINGO GROUP INC., DARREN MERCER, HAO (KEVIN) CHEN, DOZY MMOBUOSI, <br><br> Defendants. | Case No. 2:23-cv-03153-ES-MAH |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ...............................................................................................1

II.  ARGUMENT......................................................................................................3

  A. The Third Circuit's Decision in *In re Cendant* Is Controlling Authority. ......3

  B. The Krykhtin/Kanda Group Does Not Satisfy the Heightened Adequacy
     Requirements under *In re Cendant*.................................................................3

  C. The Krykhtin/Kanda Group Also Fails to Address Its Atypical Trading
     Patterns and "Net Gainer" Unique Defenses.....................................................7

III.  CONCLUSION.................................................................................................10

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bausch & Lomb Inc. Sec. Litig.*,
  244 F.R.D.169 (W.D.N.Y. 2007) ....................................................................10

*In re Cendant Corp. Litigation*,
  264 F.3d 201 (3d Cir. 2001) ..................................................................... *passim*

*Dang v. Amarin Corp. PLC*,
  2022 U.S. Dist. LEXIS 196034 (D.N.J. Oct. 27, 2022) ..................................6, 7

*Rodriguez v. Draftkings Inc.*,
  2021 U.S. Dist. LEXIS 219489 (S.D.N.Y. Nov. 12, 2021)..............................8, 9

*Semerenko v. Cendant Corp.*,
  223 F.3d 165 (3d Cir. 2000) ............................................................................9

*In re Stitch Fix, Inc. Sec. Litig.*,
  393 F. Supp. 3d 833 (N.D. Cal. 2019)................................................................5

*Tan v. NIO Inc.*,
  2020 U.S. Dist. LEXIS 36623 (E.D.N.Y. Mar. 3, 2020)....................................5

## I.    INTRODUCTION

The opposition briefing submitted in this action confirms that movant Shunsei Tazaki's motion for lead plaintiff should be granted in its entirety. The only movant opposing Mr. Tazaki's motion is a group of unrelated investors, *i.e.*, the Krykhtin/Kanda group. While the group acknowledges that the Third Circuit's decision in *In re Cendant Corp. Litigation*, 264 F.3d 201 (3d Cir. 2001), is controlling, they fail to disclose let alone satisfy the additional "adequacy" requirements applicable to "group" movants. Instead, they simply proclaim without sufficient support that they have the largest "financial interest" in the action and satisfy the Rule 23 requirements necessary for lead plaintiff.

The facts do not support this claim. As the Third Circuit warned in *Cendant*, if a "movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, [the court] could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner." *Id*. at 267. That is precisely the issue here with the Krykhtin/Kanda group. Unquestionably, the group was formed at the suggestion of its counsel (which include not one, but two different firms in addition to a third liaison counsel). Messrs. Krykhtin and Kanda have no pre-existing relationship, articulate no basis to justify their decision to work together, live on two different continents, retained multiple attorneys without negotiating any

unified fee agreement, and to date have had barely any interaction with each other. The only support on which they rely to demonstrate their "adequacy" is a "joint declaration" that courts in this District have rejected as insufficient.

The Krykhtin/Kanda group also failed to address in their opposition brief the significant "unique defenses" Mr. Krykhtin will face due to his atypical trading strategy. Individually, he churned hundreds of thousands of shares of Tingo stock in the last two weeks of the Class Period before eliminating his entire stake on June 6, 2023 **before** the end of the Class Period. Defendants will undoubtedly seek to take advantage of Mr. Krykhtin's transaction history and use it to rebut the "fraud-on-the-market" presumption that plaintiff-classes rely upon to demonstrate "predominance" under Rule 23(b).

Mr. Tazaki, on the other hand, presents none of these issues. He is an educated and experienced investor who, unlike the Krykhtin/Kanda group, has already demonstrated a commitment to overseeing this action. Prior to retaining his lawyers at Levi & Korsinsky, LLP, Mr. Tazaki interviewed no less than five law firms and ultimately negotiated a competitive fee agreement for the benefit of the class. His actions to date exemplify those of the investor Congress had in mind for the role of lead plaintiff when it enacted the PSLRA. Given his qualifications as well as the fact he lost over $500,000 from his investment in Tingo Group, Mr. Tazaki should be appointed as the lead plaintiff in this lawsuit.

## II.    ARGUMENT

### A.    The Third Circuit's Decision in *In re Cendant* Is Controlling Authority.

The two remaining movants for lead plaintiff agree that the Third Circuit's decision in *Cendant* is controlling in the matter at hand. Mr. Tazaki cited extensively to *Cendant* in his opposition brief, explaining that it requires a heightened scrutiny for lead plaintiff motions filed by groups of unrelated investors. *See* ECF No. 16, pp. 1-2, 12-13. Likewise, the Krykhtin/Kanda group also cited *Cendant* when describing the "analysis district courts are to undertake" when selecting a lead plaintiff. *See* ECF No. 17, pp. 3-4 ("In *In re Cendant Corp. Litig.*, the Third Circuit articulated the analysis district courts are to undertake in selecting the 'presumptively most adequate plaintiff.'").

### B.    The Krykhtin/Kanda Group Does Not Satisfy the Heightened Adequacy Requirements under *In re Cendant*.

In *Cendant*, the Third Circuit held that an unrelated group must evidence its ability to "fairly and adequately protect the interests of the class" as opposed to ceding control of the litigation to its attorneys. *Cendant*, 264 F.3d at 266. Thus, "[i]f the court determines that the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class." *Id*.

3

*Cendant* provided an example to illustrate the importance of this "additional factor" that must be considered when confronted with a lead plaintiff motion from an unrelated group. The Third Circuit wrote: "If, for example, a court were to determine that the movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner." *Id*. at 267.

The Third Circuit continued, writing that "Courts must also inquire whether a movant group is too large to represent the class in an adequate manner. At some point, a group becomes too large for its members to operate effectively as a single unit. . . . When that happens, the PSLRA's goal of having an engaged lead plaintiff actively supervise the conduct of the litigation and the actions of class counsel will be impossible to achieve, and the court should conclude that such a movant does not satisfy the adequacy requirement." *Id*.

Although the Krykhtin/Kanda group acknowledges *Cendant* as controlling authority, they do not disclose or adhere to the heightened adequacy requirements described above. The Krykhtin/Kanda group was, unquestionably, formed at the suggestion of counsel in an effort to amass the "largest financial interest" in the litigation and secure the "lead plaintiff" and "lead counsel" position. This is evident given that Messrs. Krykhtin and Kanda have no pre-existing relationship, no

4

apparent need to work together, live on two different continents, retained multiple attorneys without negotiating any unified fee agreement, and to date have had barely any interaction with each other. The declaration they submitted in support of their motion is precisely the sort of deficient evidentiary showing courts have rejected in past similar circumstances. *Tan v. NIO Inc.*, 2020 U.S. Dist. LEXIS 36623, at *15 (E.D.N.Y. Mar. 3, 2020) (rejecting group where declaration failed to "establish that proposed group would work effectively and cohesively as lead plaintiff") (collecting cases); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) ("The declaration allegations are conclusory and cursory, and indicate only that the group members . . . have exchanged a few calls and emails with each other since being introduced by their common lawyer.").

The Krykhtin/Kanda group also risks being "too large to represent the class in an adequate manner," even though it formally consists of only two individuals. *Cendant*, 264 F.3d at 267. This is because one of the group members, Mr. Kanda, represents himself as well as several of his family members who assigned their claims to him. These family members possess relevant documents and information to the litigation (according to Mr. Kanda's representations, *see* ECF No. 7-7, ¶11) and, therefore, will be relevant parties as the action progresses. Accordingly, instead of the Krykhtin/Kanda group consisting of just Messrs. Krykhtin and Kanda, the group effectively includes Denise Kanda, Jai Kanda, and Uma Kanda.

The *Dang* case, cited by Mr. Tazaki in opposition, is instructive. In that case, a group failed to "establish[] a *prima facie* case of its adequacy" because it was comprised of individuals who "live[d] in different places around the United States and do not have a relationship outside of [the] litigation." *Dang v. Amarin Corp. PLC*, 2022 U.S. Dist. LEXIS 196034, *16-17 (D.N.J. Oct. 27, 2022). Citing *Chao Sun* and *Stires*, two additional cases rejecting groups consisting of unrelated individuals, the court held that the group's "'minimal' pre-existing relationship raises concerns of [its] ability to 'monitor counsel in a sufficient manner.'" *Id.* at *18. That concern should be heightened here given the fact that the Krykhtin/Kanda group retained not one, but two different law firms to represent it (not including a third firm to serve as liaison counsel).

The court in *Dang* also rejected a "joint declaration" similar to the one submitted here by the Krykhtin/Kanda group. In pertinent part, the court reasoned: "This Court joins the courts in *Takata* and *Stires* in determining that the Joint Declaration's language regarding the Amarin Group's single communication and plans to oversee the litigation does not allay the Court's concerns about the ability of this group to effectively monitor and manage the litigation, particularly if a dispute were to arise, where the members do not have a pre existing relationship and acknowledge that they met through counsel for purposes of this litigation." *Id.* at *24-25. That the Krykhtin/Kanda group contains only two individuals on its face

does not change the fact that Mr. Kanda is acting on behalf of his wife and kids, effectively increasing the size of the group to five individuals who will need to participate as parties in the litigation. This further weighs against the group's "ability to 'operate effectively as a single unit.'" *Id.* at *26 (quoting *Cendant*, 264 F.3d at 267).

The court's reasoning in *Dang* applies with equal force in the matter at bar. Indeed, "[w]hile none of the above factors alone are dispositive of the issue . . . , looking to 'the way in which [the Krykhtin/Kanda group] was formed or the manner in which it is constituted,' the 'extent of the prior relationships and/or connection between the members,' the size of the group, and 'other reasons . . . [that] could justify a court's decision that the Rule 23's adequacy of representation requirement is not satisfied,'" the Krykhtin/Kanda group "has not made a *prima facie* showing of its adequacy to represent the Class." *Dang*, 2022 U.S. Dist. LEXIS 196034, at *27 (quoting *Cendant*, 264 F.3d at 266-67).

    **C.**    **The Krykhtin/Kanda Group Also Fails to Address Its Atypical Trading Patterns and "Net Gainer" Unique Defenses.**

The Krykhtin/Kanda group proclaims to be the "ideal lead plaintiff" with no "proof of inadequacy or atypicality." ECF No. 17 at 6-7. This is not true. As Mr. Tazaki explained in opposition, Mr. Krykhtin faces significant unique defenses related to his apparent trading strategy and the timing of his purchases and sales

7

relative to the corrective disclosure alleged in the action. *See* ECF No. 16 at pp. 17-18, 22-23.[1]

The Krykhtin/Kanda group writes in opposition that Mr. Krykhtin is "typical of other Class Members" because he "suffered financial harm as a result of Defendants' public dissemination of false and misleading statements in violation of the Exchange Act." ECF No. 17 at 7. However, Mr. Krykhtin's transaction history does not resemble the vast majority of potential class members; indeed, Mr. Krykhtin bought and sold over half a million shares of Tingo stock in the last two weeks of the Class Period before once again buying the shares back and then selling them on June 6, 2023 before the Class Period ended. *See* ECF No. 16 at 17-18 (citing Supp. Apton Decl., Ex. B). Contrary to being typical of most class members, Mr. Krykhtin's transactions distinctly separate him from the class at large and give rise to a litany of unique defenses that, if appointed, will "dog" the class throughout the litigation. *Rodriguez v. Draftkings Inc.*, 2021 U.S. Dist. LEXIS 219489, at *28 (S.D.N.Y. Nov. 12, 2021).

---

[1] Whether and to what extent Mr. Kanda knows about Mr. Krykhtin's unique defenses remains unknown. Had he been told, Mr. Kanda presumably would not have elected to work with Mr. Krykhtin. Alternatively, Mr. Kanda may not understand the risks these defenses pose to the Class. In either event, the group's showing of "adequacy" is further undermined.

8

These unique defenses include arguments focused on "reliance," such as whether Mr. Krykhtin relied on Defendants' alleged misrepresentations or was trading on unrelated factors. If the latter is true, Defendants may be able to successfully rebut the "fraud-on-the-market" presumption of reliance and leave the class unable to establish "predominance" under Rule 23(b) during class certification proceedings. *See*, *e.g.*, *Semerenko v. Cendant Corp.*, 223 F.3d 165, 179 n.7 (3d Cir. 2000) ("the defendant may also rebut the presumption by showing that the investor would have purchased or sold the securities at that price even with full knowledge of the misrepresentation, that the investor traded in the securities based on an actual belief that the market price was inaccurate, or that the investor's decision to trade was based on some factor other than the market price."). Mr. Krykhtin's transaction history shows that he was purchasing, selling, repurchasing, reselling, and repurchasing, even though Defendants were not disseminating any new information. Thus, Defendants will argue that Mr. Krykhtin was not relying on any alleged false statement and, in turn, should not be able to avail himself of the "fraud-on-the-market" presumption of reliance. *See Draftkings*, 2021 U.S. Dist. LEXIS 219489, at *27 (rejecting movant because of potential reliance defenses and collecting cases holding similarly).

Mr. Krykhtin's typicality is further compromised by the fact that he held zero shares of Tingo stock at the end of the Class Period on June 6, 2023. Specifically,

9

after purchasing nearly 700,000 shares between Wednesday, May 31 and Friday, June 2, 2023, he sold them all on Wednesday, June 6, *before* the Class Period ended. *See* ECF No. 16 at 18 (citing Supp. Apton Decl., Ex. B). This makes Mr. Krykhtin especially vulnerable to "loss causation" arguments, whereby Defendants will attempt to disqualify Mr. Krykhtin by arguing that any losses he sustained as a result of these sales are unrecoverable given their timing relative to the end of the Class Period. If these losses are attributable to factors unrelated to the alleged fraud, then Mr. Krykhtin will be a "net gainer" who "profited, rather than suffered, as a result of the inflated stock prices." *See*, *e.g.*, *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D.169, 173-74 (W.D.N.Y. 2007).

## III.   CONCLUSION

The Krykhtin/Kanda group fails to establish its "adequacy" under *Cendant* and, in any event, faces "unique defenses" that weigh heavily in favor of denying its motion. Mr. Tazaki on the other hand presents none of these issues. To the contrary, he is an experienced, educated investor that has already demonstrated his commitment to overseeing this action and protecting the class exactly as Congress intended when it enacted the PSLRA in the first place. Mr. Tazaki respectfully requests that his motion be granted in its entirety.

*[Signature on following page]*

Dated: August 29, 2023

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Adam M. Apton*
Adam M. Apton
55 Broadway, 4th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Counsel for Shunsei Tazaki and [Proposed] Lead Counsel for the Class*

11

## CERTIFICATE OF SERVICE

I, Adam M. Apton, hereby certify that on August 29, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing.


/s/Adam M. Apton
Adam M. Apton

12