**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
James E. Cecchi
Kevin Cooper
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

*Proposed Liaison Counsel for the*
*Class*

[*Additional counsel on signature page*]

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER ARBOUR, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TINGO GROUP, INC., DOZY MMOBUOSI, DARREN MERCER, and KEVIN CHEN, <br><br> Defendants. | Case No. 2:23-cv-03151-ES-MAH <br><br> Hon. Esther Salas <br><br> <u>CLASS ACTION</u> <br><br> **MOTION DAY:** September 5, 2023 <br><br> ORAL ARGUMENT REQUESTED |

(*caption continued on next page*)

### MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF PAVEL KRYKHTIN AND PERDEEP KANDA FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF <u>COUNSEL, AND IN REPLY TO THE COMPETING MOTION</u>

|  |  |
| --- | --- |
| MARK J. BLOEDORN, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:23-cv-03153-ES-MAH |
|  | Hon. Esther Salas |
| Plaintiff, | CLASS ACTION |
| v. |  |
| TINGO GROUP INC., DARREN MERCER, HAO (KEVIN) CHEN, and DOZY MMOBUOSI, |  |
| Defendants. |  |

# TABLE OF CONTENTS

**Page(s)**

I.  PRELIMINARY STATEMENT ........................................................................1

II.  ARGUMENT..............................................................................................3

  A.  Krykhtin and Kanda Are The Presumptive Lead Plaintiff, And Tazaki Fails To Rebut The Presumption ...............................................................3

  1.  Krykhtin and Kanda Have The Largest Financial Interest.............................4

  2.  Krykhtin's Trading Underscores the Typicality of Kryktin and Kanda's Claims ...................................................................................................7

  3.  Krykhtin and Kanda Are An Adequate Group.................................................10

III. CONCLUSION..............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Vitamin Shoppe, Inc.*,
  2018 WL 1960444 (D.N.J. Apr. 25, 2018) ................................................ 12, 13, 15

*Bensley v. FalconStor Software, Inc.*,
  277 F.R.D. 231 (E.D.N.Y. 2011) .................................................................. 9

*Borenstein v. Finova Grp. Inc.*,
  2000 WL 34524743 (D. Ariz. Aug. 30, 2000) .............................................. 7

*Chao Sun v. Han*,
  2015 WL 2364937 & n.1 (D.N.J. May 14, 2015) ...................................... 14, 15

*Daniels Fam. 2001 Revocable Tr. v. Las Vegas Sands Corp.*,
  2021 WL 41301 (D. Nev. Jan. 5, 2021) ...................................................... 15

*Dang v. Amarin Corporation PLC*,
  2022 WL 15524944 (D.N.J. Oct. 27, 2022) ................................................ 15

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) .................................................................................... 6

*Eichenholtz v. Verifone Holdings, Inc.*,
  2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) .............................................. 9

*Garcia v. J2 Glob., Inc.*,
  2021 WL 1558331 (C.D. Cal. Mar. 5, 2021) ................................................ 10

*Gutman v. Sillerman*,
  2015 WL 13791788 (S.D.N.Y. Dec. 8, 2015) ................................................ 6

*In re BofI Holding, Inc. Sec. Litig.*,
  2021 WL 3742924 (S.D. Cal. Aug. 4, 2021) ................................................ 5

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ............................................................... 3, 11, 12

ii

*In re Veeco Instruments, Inc. Sec. Litig.*,
  235 F.R.D. 220 (S.D.N.Y. Mar. 21, 2006) ........................................................5

*In re Veeco Instruments, Inc.*,
  233 F.R.D. 330 (S.D.N.Y. 2005) .....................................................................9

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
  2017 WL 2062985 (S.D.N.Y. May 15, 2017) ...................................................8

*Kanefsky v. Honeywell Int'l Inc.*,
  2019 WL 936662 (D.N.J. Feb. 26, 2019) ........................................................6

*Lawless v. Aurora Cannabis Inc.*,
  2021 WL 2850451 (D.N.J. July 8, 2021) ................................................. 13, 14

*Maeshiro v. Yatsen Holding Ltd.*,
  2023 WL 4684106 (S.D.N.Y. July 21, 2023).................................................10

*Montesano v. Eros Int'l PLC*,
  2020 WL 1873015 (D.N.J. Apr. 14, 2020).....................................................14

*Montoya v. Mamma.com Inc.*,
  2005 WL 1278097 (S.D.N.Y. May 31, 2005) ..................................................5

*Nasin v. Hongli Clean Energy Techs. Corp.*,
  2017 WL 5598214 (D.N.J. Nov. 21, 2017) ....................................................14

*Pope v. Navient Corp.*,
  2018 WL 672640 (D.N.J. Feb. 2, 2018) .........................................................15

*Porzio v. Overseas Shipholding Grp.*,
  2013 WL 407678 (S.D.N.Y. Feb. 1, 2013) ......................................................9

*Rodriguez v. DraftKings Inc.*,
  2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)..................................................9

*Sapir v. Averback*,
  2015 WL 858283 (D.N.J. Feb. 26, 2015).........................................................4

iii

*Sklar v. Amarin Corp.PLC*,
   2014 WL 3748248 (D.N.J. July 29, 2014) .................................................. 7, 8, 10

*Smith v. Antares Pharma, Inc.*,
   2018 WL 3611067 (D.N.J. July 27, 2018) ........................................................7

*Smith v. Suprema Specialties*,
   206 F. Supp. 2d 627 (D.N.J. 2002).................................................................15

*Takata v. Riot Blockchain, Inc.*,
   2018 WL 5801379 (D.N.J. Nov. 6, 2018) ................................................... 13, 14

*The EZRA Charitable Tr. v. Rent-Way, Inc.*,
   136 F. Supp. 2d 435 (W.D. Pa. 2001).............................................................15

*Valeant Pharms. Int'l, Inc. v. AIG Ins. Co. of Canada*,
   2021 WL 7903694 (D.N.J. June 28, 2021)........................................................5

*White Pine Invs. v. CVR Refining, LP*,
   2021 WL 38155 (S.D.N.Y. Jan. 5, 2021) .........................................................15

*Wilson v. LSB Indus., Inc.*,
   2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018).....................................................8

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii).............................................................................10

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb)....................................................................3

iv

Krykhtin and Kanda respectfully submit this memorandum of law in further support of their motion for appointment as Lead Plaintiff (ECF No. 7).[1]

## I.    PRELIMINARY STATEMENT

Of the two competing movants, Krykhtin and Kanda have by a wide margin the largest financial interest in the litigation and are the presumptive "most adequate plaintiff" pursuant to the PSLRA. Krykhtin and Kanda incurred a total loss on their Class Period purchases of Tingo stock of $1.179 million under the prevailing LIFO method—a loss more than twice the $514,912 loss claimed by Tazaki, the only competing movant. Krykhtin and Kanda have established that they also satisfy Rule 23's typicality and adequacy requirements, and, as discussed herein, they are the only movant that will provide effective and vigorous representation to *all* absent Class members. Krykhtin and Kanda submitted a Joint Declaration attesting to their backgrounds, their understanding of the Lead Plaintiff's role under the PSLRA, and their strategy for overseeing the litigation. ECF No. 7-7. Krykhtin and Kanda have also chosen counsel with substantial experience successfully leading securities class actions in this District and throughout the country.

Notwithstanding the fact that Krykhtin and Kanda are the obvious most adequate Lead Plaintiff, and in a last-ditch effort to obtain leadership of this action,

---

[1] Unless otherwise noted, all capitalized but undefined terms have the meanings ascribed in Krykhtin and Kanda's opening brief (ECF No. 7-1), all emphasis is added, and internal quotations and citations are omitted.

1

Tazaki has resorted to misrepresenting indisputable and fundamental facts about this case. Specifically, as set forth in Krykhtin and Kanda's opening brief, the filed complaint in this action contains an obvious clerical error in its definition of the proposed class. Namely, the filed complaints incorrectly listed the end date of the Class Period as June 6, 2023, when the alleged corrective disclosure that marks the end of the Class Period—the publication of the Hindenburg Report—occurred ***before the market opened on June 6, 2023***. Accordingly, as a matter of law, the Class Period, *i.e.*, the period during which the value of Tingo securities was artificially inflated by the alleged fraud, cannot end on June 6 but rather must end on June 5, 2023—the last trading day before the alleged fraud was publicly revealed.

While this is an obvious and incontrovertible fact—and any attorney claiming to have expertise in securities litigation would immediately recognize this and inform the Court of this discrepancy—Tazaki attempts to ***exploit*** this error for his benefit. Specifically, and remarkably, Tazaki argues that Krykhtin and Kanda's losses attributable to sales that occurred on June 6, 2023—losses that took place ***after*** the publication of the Hindenburg report—should not be considered in evaluating their financial interest. Indeed, Tazaki goes so far as to assert that because these investors sold after the corrective disclosure in this case, they are rendered atypical because of those sales and should be disqualified from serving in a leadership capacity. This argument, if it were to be accepted by the Court, would

2

obviously eviscerate the damages that the Class could claim as a result of the alleged fraud and prevent all investors who sold shares following the publication of the Hindenburg report from claiming losses as a result of those sales.

The Court should reject Tazaki's attempt to take advantage of an obvious pleading mistake in the complaints, which would subvert the purpose of the PSLRA and the interests of the Class.  Because Tazaki does not possess the largest financial interest in this action and has failed to offer proof, as required by the PSLRA, to rebut the presumption that Krykhtin and Kanda warrant appointment, Krykhtin and Kanda should be appointed Lead Plaintiff, and all other motions should be denied.

## II.    ARGUMENT

### A.    Krykhtin and Kanda Are The Presumptive Lead Plaintiff, And Tazaki Fails To Rebut The Presumption

Krykhtin and Kanda are the "most adequate plaintiff" and presumptive Lead Plaintiff because they have demonstrated their substantial financial interest in this litigation and their ability to satisfy all the prerequisites of the PSLRA and Rule 23. *See* ECF Nos. 7 and 17.  Because no evidence has been offered by Tazaki or any other movant to rebut the presumption that Krykhtin and Kanda are the most adequate representative for the Class, they should be appointed Lead Plaintiff.  *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb); *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) ("[O]nce the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the

3

presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[ ] and adequate [ ]' job.”); *Sapir v. Averback*, 2015 WL 858283, at *2 (D.N.J. Feb. 26, 2015)  (“The presumptive lead plaintiff must be appointed unless it is proven that the movant will not satisfy the typicality and adequacy requirements of Rule 23.”).

### 1. Krykhtin and Kanda Have The Largest Financial Interest

Krykhtin and Kanda's LIFO loss is properly calculated at $1,179,932 under the widely accepted LIFO method because they both held shares *through* the alleged disclosure of fraud.  Recognizing that his claimed loss pales in comparison to that of Krykhtin and Kanda, Tazaki urges the Court to completely ignore the losses suffered by Krykhtin (and presumably the rest of the Class) when he sold his stock on June 6, 2023, because Tazaki contends that such losses were incurred before the Class Period ended.  ECF No. 16 (“Tazaki Opp.”) at 8 (arguing Krykhtin “will not be able to recover the losses he claims to have sustained in connection with sales made on [sic] *before* the end of the Class Period”) (emphasis in the original).  Tazaki's argument fails because it disregards the facts of this case.

As noted in Krykhtin and Kanda's opening brief (ECF No. 7-1, n. 5), the Hindenburg report is the corrective disclosure that marks the end of the Class Period. That report was published before the market open on June 6, and triggered a 48.2% decline in the price of Tingo's stock on June 6, 2023, from a close of $2.55 per share

on June 5, 2023, to a close of $1.32 per share on June 6, 2023. *See* Reply Decl. of Joseph E. Cecchi ("Cecchi Reply Decl.") filed herewith Ex. A (reflecting 9:06 AM EDT time stamp of the report from Bloomberg and stock drop at open of trading). As a matter of law, the Class Period must end no later than June 5, 2023—the last trading day prior to the alleged corrective disclosure. *See, e.g., Valeant Pharms. Int'l, Inc. v. AIG Ins. Co. of Canada*, 2021 WL 7903694, at *28 (D.N.J. June 28, 2021) ("Numerous courts have held that, in a securities class action based on material misrepresentations and omissions to the investing public, the class period should end when curative information is publicly announced or otherwise effectively disseminated to the market"); *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 241 (S.D.N.Y. Mar. 21, 2006) (plaintiffs and defendants agreed that class period ended the day ***before*** the revelation of internal investigation causing stock decline); *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 3742924, at *10 (S.D. Cal. Aug. 4, 2021) (agreeing that "if the corrective information is disclosed before the market opens, then investors who purchased on that day after the disclosure are not damaged" and ending class period the prior day). It was thus entirely typical that Krykhtin sold shares on June 6 following the corrective disclosure, as evidenced by the enormous volume of transactions in Tingo stock on that day. *See* Cecchi Reply Decl. Ex. B (showing extraordinary volume of 59.4 million shares); *Montoya v. Mamma.com Inc.*, 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005) (appointing

movant who sold shares after alleged corrective disclosure).  Tazaki acknowledges the share price decline took place on June 6 (ECF No. 3-1 at 5), and the *Bloedorn* complaint notes the report was released pre-market.  ECF No. 1 ¶ 3.

Accordingly, Tazaki's claimed loss of $514,912 remains less than half of Krykhtin and Kanda's recoverable loss, and over $270,000 less than Krykhtin's loss alone.  *See Gutman v. Sillerman*, 2015 WL 13791788, at *4 (S.D.N.Y. Dec. 8, 2015) (explaining that a movant's recoverable loss consists of shares held through disclosure of fraud and not "losses from shares sold prior to corrective disclosures") (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005)).  Tazaki does not dispute that a movant's claimed loss is the most important factor in determining the presumptive lead plaintiff.  *See* Tazaki Opp. at 6; *see also Kanefsky v. Honeywell Int'l Inc.*, 2019 WL 936662, at *1 (D.N.J. Feb. 26, 2019) (noting that approximate losses is "the most significant" factor in assessing the largest financial interest).[2]

Thus, the Court should give no weight to Tazaki's attempt to exploit the obvious clerical error in the end date of the Class Period in the filed complaints to diminish Krykhtin's loss by claiming an unrelated liability theory caused his loss. Indeed, Tazaki's insistence that Class members who sold shares on June 6, 2023,

---

[2] Similarly, as reflected in the Opposition Brief, ECF No. 17 at 5, Krykhtin and Kanda also purchased more total shares and expended more funds on a net basis purchasing Tingo shares than Tazaki during the Class Period.  These secondary loss factors also evince Krykhtin and Kanda's superior financial interest.

following the publication of the Hindenburg report were not damaged by the alleged revelation of fraud demonstrates that it is ***Tazaki*** who would be an inadequate Lead Plaintiff as his interests diverge from Class members. *See Smith v. Antares Pharma, Inc.*, 2018 WL 3611067, at *3 (D.N.J. July 27, 2018) (noting that, to be adequate, a movant's interests must be "aligned with and not antagonistic to the putative class's interests"); *Borenstein v. Finova Grp. Inc.*, 2000 WL 34524743, at *8 (D. Ariz. Aug. 30, 2000) (rejecting movants who sought to exclude securities from the class because their appointment "would pose a significant risk that the complete interests of all class members would not be fairly and adequately protected").

### 2. Krykhtin's Trading Underscores the Typicality of Kryktin and Kanda's Claims

Tazaki's argument that Krykhtin is barred from appointment as an in-and-out trader necessarily fails based on the facts set forth above. Like many other Class members, Krykhtin held shares ***through*** the disclosure of fraud and sold them in reaction to the disclosure. Under the standard established in *Sklar v. Amarin Corp. PLC*, "[i]n-and-out traders are those who both purchase and sell all of their shares ***prior to*** a corrective disclosure; if the purchaser sells shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." 2014 WL 3748248, at *9 n.8 (D.N.J. July 29, 2014). There, in rejecting the argument that the presumptive lead plaintiff was an unacceptable in-and-out trader, former Chief Judge Wolfson determined that the movant was, in fact, not an in-and-out

trader: "[A]lthough [he] completely divested his interest in Amarin ADRs twice in the first quarter of 2011, [he] subsequently ***reinvested, and continued to invest***, in Amarin, and had 685,000 ADRs at the end of the class period, at the time of Amarin's corrective disclosures." *Id.*

Like the appointed lead plaintiff in *Sklar*, while Krykhtin sold shares earlier in the Class Period, he "subsequently reinvested, and continued to invest, in [Tingo]," and held 692,261 shares at the time the Hindenburg report was released, removing the artificial inflation from Tingo's stock.[3] *See* Cecchi Reply Decl. Ex. C (showing calculation of Kryktin and Kanda's net shares held at the time of the disclosure as compared to Tazaki's smaller position of 160,015 shares); *see also In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2017 WL 2062985, at *3 (S.D.N.Y. May 15, 2017) (rejecting argument that lead plaintiff who sold out of stock position was atypical because "it held over thirty thousand shares through [a] corrective disclosure, which subjects it to the same wrongful acts as the remainder of the class"); *Wilson v. LSB Indus., Inc.*, No. 15-GV-7614 (RA) (GWG), 2018 WL 3913115, at *6 (S.D.N.Y. Aug. 13, 2018) (explaining that a lead plaintiff who sold out of his position but then established a "net positive position" held through corrective disclosures would be able to prove loss causation).

---

[3] Indeed, even after selling some shares for a profit, Krykhtin alone still incurred a loss 52.9% larger than that of Tazaki on shares held through the disclosure alleged to have revealed the fraud in the filed complaints.

Tazaki's authorities (Tazaki Opp. at 25-28) are inapposite because those cases involved movants who sold out of their entire position well *before* any disclosure *and* did not hold shares *through* an alleged revelation of fraud as Krykhtin and Kanda did here. For example, in *Porzio v. Overseas Shipholding Grp.*, a movant "sold their stock almost a year before the alleged fraud was discovered." 2013 WL 407678, at *3 (S.D.N.Y. Feb. 1, 2013); *see also Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 233 (E.D.N.Y. 2011) (finding movant was a "complete in-and-out trader" where it "sold all of its shares prior to the . . . disclosure of fraud"); *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 333 (S.D.N.Y. 2005) (same). Tazaki's claims that Krykhtin, who sold out of his position twice during the Class Period, engaged in day trading similarly are false. *See Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *5 (S.D.N.Y. Nov. 12, 2021) (rejecting movant who engaged in short selling and was "a serial 'in-and-out' trader, trading in and out *64 times* during . . . seven-month period"); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *10 (N.D. Cal. Aug. 22, 2008) (declining to appoint a movant who "made an average of nineteen trades a day . . . for the entirety on the nine months).

Furthermore, Tazaki has not demonstrated that Krykhtin is subject to a unique defense for relying on news not disseminated by the Company. As an initial matter, a disclosure of fraud need *not* come exclusively from the corporate defendant. *See, e.g., Garcia v. J2 Glob., Inc.*, 2021 WL 1558331, at *6 (C.D. Cal. Mar. 5, 2021)

9

(finding the issuance of a Hindenburg report constitutes a corrective disclosure that established loss causation). Tazaki does not claim there is any disclosure other than the Hindenburg report. ECF No. 3-1 at 4-5. Like the appointed movant in *Sklar*, Krykhtin asserts that he "focused on publicly available information in deciding to purchase defendant's stock." 2014 WL 3748248, at *8; *see* ECF No. 7-7, ¶ 4. Tazaki has presented no rationale for the Court to question Krykhtin's assertion. At bottom, Tazaki has presented zero proof that Krykhtin and Kanda are subject to unique defenses regarding their trading.[4]

### 3. Krykhtin and Kanda Are An Adequate Group

The PSLRA unambiguously states that a "group of persons" is eligible to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). The Third Circuit equally makes clear that "[t]he PSLRA explicitly permits 'a group of persons'" to serve as lead plaintiff." *Cendant*, 264 F.3d at 266. Tazaki argues that the absence of a "pre-existing relationship" between Krykhtin and Kanda "strikes heavily against" adequacy (Tazaki Opp. at 20), but *Cendant* rejects the line of cases that preclude "unrelated individuals" from serving together as lead plaintiff. 264 F.3d at 266

---

[4] Tazaki notes that Kanda's certification and loss chart contain inconsistent dates for a sale transaction in the Denise Kanda ISA account. The discrepancy is a clerical error that mistakenly listed the settle date instead of the transaction date on the certification. Krykhtin and Kanda's loss calculation remains unchanged. *See Maeshiro v. Yatsen Holding Ltd.*, 2023 WL 4684106, at *9 (S.D.N.Y. July 21, 2023) ("Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties.").

("The statute contains no requirement mandating that the members of a proper group be 'related' in some manner").  Under *Cendant*, the sole calculus is "whether that group would 'fairly and adequately protect the interests of the class.'"  *Id.* at 266-67 ("[I]t is this test, not one of relatedness, with which courts should be concerned").

*Cendant* cites two concerns that do not apply here: where groups are "cobbled together" by lawyers such that the members of the group "could not be counted on to monitor counsel in a sufficient manner[;]" and where "a movant group is too large to represent the class in an adequate manner."  *Id.* at 267.  Tazaki invokes the lawyer-generated group concern (Tazaki Opp. at 7-8, 14-16), arguing that Krykhtin and Kanda "fail to explain why they are seeking appointment together or why they need" three law firms including liaison counsel.  *Id.* at 1.  This is a red herring, as Krykhtin and Kanda seek the appointment of a single law firm as Lead Counsel, and have proposed the appointment of one of the most respected firms in New Jersey, Carella Byrne, as Liaison Counsel, which only benefits the interests of the proposed Class.  Tazaki thus improperly attempts to shift the burden of offering "proof" of Krykhtin and Kanda's inadequacy and fails to rebut the presumption of their adequacy.[5]

---

[5] Despite the uncontested and valid assignment of claims by Kanda's wife and children, Tazaki argues that the movant group "consists of five individuals" that lacks any pre-existing relationship "[a]side from Mr. Kanda's family."  Tazaki Opp. at 1.  This is another red herring, as the *Cendant* "large group" concern implicates groups that are "too large for its members to operate effectively as a single unit[,]"

(*footnote continued on next page*)

11

Krykhtin and Kanda have each signed a sworn declaration stating that they both: "expressed interest to [their] counsel in partnering with another like-minded investor to prosecute this litigation[;]" understand their ongoing fiduciary obligations to the Class, "including that it is [their] duty to monitor and oversee counsel" by, among other things, "regularly communicat[ing] and coordinat[ing] with our counsel[;]" "considered the benefits and potential drawbacks of proceeding individually or jointly as Lead Plaintiff" and "agree that [their] partnership . . . will further the interests of the Class[;]" and have already taken steps in furtherance of their fiduciary obligations, including by reviewing the *Bloedorn* complaint, "discussing the lawsuit on several occasions telephonically with our counsel at Saxena White and the Schall Law Firm[,]" and "conven[ing] a conference call to discuss our commitment to jointly prosecuting this litigation." ECF No. 7-7 at ¶¶ 5, 7, 8, 14-17. Krykhtin and Kanda's sworn declaration allays any concerns about their adequacy and ability to act independently and oversee counsel. *See Lawless v. Aurora Cannabis Inc.*, 2021 WL 2850451, at *5 (D.N.J. July 8, 2021) (finding adequacy of group who submitted a joint declaration "signed before and filed

---

264 F.3d at 267, not groups of two individuals. The assignment gives Kanda "standing to pursue PSLRA claims against defendants." *See Aguilar v. Vitamin Shoppe, Inc.*, 2018 WL 1960444, at *8 (D.N.J. Apr. 25, 2018). In *Aguilar*, one of a group of three was assigned claims, and the court did not treat the assignor as a fourth member in its consideration of group size. *Id.* at *11. Here, only Krykhtin and Kanda seek appointment—a smaller group than was found adequate in *Aguilar*.

simultaneously with its Motion"); *Aguilar*, 2018 WL 1960444, at *10 (finding "insufficient evidence" that group was "'cobbled together'" where joint declaration provides details on how they will coordinate).

Moreover, Krykhtin and Kanda are adequate even under Tazaki's strained reading of his authorities. For example, the court in *Takata v. Riot Blockchain, Inc.* (Tazaki Opp. at 19) notes groups must show their cohesiveness and independence, including "how and when they were joined together, how they intend to conduct discovery or how they will coordinate litigation efforts and strategy." 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018). Here, Krykhtin and Kanda have sworn that they each: decided to contact counsel and seek appointment as Lead Plaintiff, expressed interest in partnering with another like-minded investor, and convened a conference call to discuss their joint commitment to prosecuting this action "[p]rior to seeking appointment as Lead Plaintiff[;]" have taken steps to preserve relevant documents related to their investments (including by coordinating with family members for whom Kanda has received an assignment of claims); and have discussed strategy for prosecuting this action, their desire to achieve the best result for the Class by ensuring efficient and zealous prosecution of the action, and their agreement to regularly communicate and engage in joint decision-making, with Krykhtin having "ultimate authority" (given his larger financial interest) if consensus cannot be reached. ECF No. 7-7 at ¶¶ 5, 7, 11, 14-15, 17-19. Unlike in

13

*Takata*, Krykhtin and Kanda's joint declaration is uncontested and is entitled to great weight, especially because they submitted their declaration together with their motion for appointment and opening brief—not as a belated "supplemental joint declaration as part of [their] opposition brief." 2018 WL 5801379, at *5.[6]

Nevertheless, Tazaki argues that Krykhtin and Kanda "improperly" aggregate their losses because they lack a preexisting relationship. Courts in this District have consistently found that a preexisting relationship between group members is not required. *See, e.g.*, *Lawless*, 2021 WL 2850451, at *5 (appointing group of three unrelated individuals that submitted a joint declaration as lead plaintiff); *Montesano v. Eros Int'l PLC*, 2020 WL 1873015, at *12 (D.N.J. Apr. 14, 2020) (appointing group of two unrelated entities); *Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214, at *4 (D.N.J. Nov. 21, 2017) (appointing group of five unrelated individuals). Further, Krykhtin's loss, "standing alone," is greater than Tazaki's, which "eases concerns about plaintiffs coming together solely to aggregate losses." *Aguilar*, 2018 WL 1960444, at *11.[7] The fact that Krykhtin and Kanda are a pair of

---

[6] Tazaki's other authorities, Tazaki Opp. at 14-16, are similarly inapposite. *See*, *e.g.*, *Chao Sun v. Han*, 2015 WL 2364937, at *4 & n.1 (D.N.J. May 14, 2015) (disqualifying movants Aerts and Xi whose declaration "does not mention any contact" between them and whose "only pre-existing relationship" prior to their lead plaintiff motion is "the fact that they invested in the same . . . securities").

[7] For this reason, Tazaki's reliance on cases rejecting the aggregation of losses is inapplicable. Indeed, Krykhtin alone has the largest loss. The court in *Dang v.*

(*footnote continued on next page*)

14

two individuals also gives assurance about their ability to "work effectively." *Id.* (finding a group of three "too small to raise such concerns").[8]

## III.   CONCLUSION

Because Krykhtin and Kanda have the largest financial interest in the relief sought by the Class and otherwise qualify as the most adequate Lead Plaintiff under the PSLRA, their motion should be granted, and all other motions should be denied.

---

*Amarin Corp.*, for example, focused on "the fact that the individual financial losses of the Amarin Group's members are significantly lower than those of the other individual movants," 2022 WL 15524944, at *7 (D.N.J. Oct. 27, 2022), and distinguished the case from *Aguilar* and *Lawless*, where the groups were composed of three members: "too small to raise such concerns." *Id.* at *9. *See also Chao Sun*, 2015 WL 2364937, at *4 ("Of primary concern to this Court is the fact that without aggregation of [the group members'] losses, [the individual movant] would have suffered less losses . . . and would be removed from qualification as the presumptive lead plaintiff."); *Smith v. Suprema Specialties*, 206 F. Supp. 2d 627, 642 (D.N.J. 2002) (disallowing aggregation of five-member group whose greatest individual member loss was hundreds of thousands of dollars below the largest individual movant loss); *The EZRA Charitable Tr. v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 441 (W.D. Pa. 2001) (rejecting proposal of group with "the smallest financial loss of the proposed lead plaintiffs" to be appointed co-lead plaintiff).

[8] Underscoring the fact that his group argument is not proof of inadequacy, Tazaki's counsel have repeatedly represented similar groups of individuals who were appointed lead plaintiff in this District and around the country, often working together with other multiple counsel. *See, e.g., Pope v. Navient Corp.*, 2018 WL 672640, at *5 (D.N.J. Feb. 2, 2018) (appointing pair of investors as lead plaintiff and Levi & Korsinsky as lead counsel); *Daniels Fam. 2001 Revocable Tr. v. Las Vegas Sands Corp.*, 2021 WL 41301, at *3 (D. Nev. Jan. 5, 2021) (appointing pair of investors who submitted joint declaration as lead plaintiff and Levi & Korsinsky as lead counsel with another firm as liaison counsel); *White Pine Invs. v. CVR Refining, LP*, 2021 WL 38155, at *4 (S.D.N.Y. Jan. 5, 2021) (appointing pair of investors who filed joint declaration as lead plaintiff and Levi & Korsinsky as lead counsel).

Dated: August 29, 2023

Respectfully submitted,

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**

By: */s/ James E. Cecchi*
James E. Cecchi
Kevin Cooper
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

*Proposed Liaison Counsel for the Class*

**SAXENA WHITE P.A.**
Lester R. Hooker (*pro hac vice* forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
lhooker@saxenawhite.com

-and-

Marco A. Dueñas (*pro hac vice* forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 216-2220
mduenas@saxenawhite.com

*Counsel for Proposed Lead Plaintiff Pavel Krykhtin and Perdeep Kanda, and Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac vice* forthcoming)
2049 Century Park East, Suite 2460

16

Los Angeles, CA 90067
Tel.: (310) 301-3335
brian@schallfirm.com

*Additional Counsel for Proposed Lead*
*Plaintiff Pavel Krykhtin and Perdeep Kanda*

17

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 29, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

*/s/ James E. Cecchi*
James E. Cecchi
