**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
James E. Cecchi
Kevin Cooper
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

*Proposed Liaison Counsel for the*
*Class*

[*Additional counsel on signature page*]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER ARBOUR, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TINGO GROUP, INC., DOZY MMOBUOSI, DARREN MERCER, and KEVIN CHEN, <br><br> Defendants. | Case No. 2:23-cv-03151-ES-MAH <br><br> (Consolidated with No. 2:23-cv-03153-ES-MAH) <br><br> Hon. Esther Salas <br><br> <u>CLASS ACTION</u> <br><br> ORAL ARGUMENT REQUESTED |

## MEMORANDUM OF LAW IN SUPPORT OF THE RENEWED MOTION OF PAVEL KRYKHTIN AND PERDEEP KANDA FOR APPOINTMENT AS LEAD PLAINTIFF AND <u>APPROVAL OF SELECTION OF COUNSEL</u>

## **TABLE OF CONTENTS**

**Page(s)**

I.      PRELIMINARY STATEMENT ...................................................................1

II.     FACTUAL BACKGROUND........................................................................5

III.    ARGUMENT...............................................................................................6

    A.     Krykhtin and Kanda Should Be Appointed Lead Plaintiff ..................6

        1.   The PSLRA's Standard for Appointing Lead Plaintiff..............6

        2.   Krykhtin and Kanda Are the "Most Adequate Plaintiff"...........7

            a.   Krykhtin and Kanda's Motion Is Timely ........................7

            b.   Krykhtin and Kanda Have the Largest Financial
               Interest in the Relief Sought by the Class ........................8

            c.   Krykhtin and Kanda Satisfy Rule 23's Typicality
               and Adequacy Requirements ..........................................10

               i.   Krykhtin and Kanda's Claims Are Typical
                   of Those of the Class............................................11

                ii.   Krykhtin and Kanda Will Fairly and
                   Adequately Protect the Interests of the Class.......14

    B.     The Court Should Approve Krykhtin and Kanda's Selection of
       Counsel ...............................................................................................19

IV.     THE COMPETING MOTION SHOULD BE DENIED...............................21

    A.     Krykhtin and Kanda Are the Only Movants Who Will Represent the
       Interests of the Entire Class................................................................21

V.      CONCLUSION...........................................................................................23

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aguilar v. Vitamin Shoppe, Inc.*,
  2018 WL 1960444 (D.N.J. Apr. 25, 2018)................................................ 15, 18, 19

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)..........................................................................................22

*In re BofI Holding, Inc. Sec. Litig.*,
  2021 WL 3742924 (S.D. Cal. Aug. 4, 2021)........................................................23

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ......................................................................... *passim*

*In re Gildan Activewear Inc. Sec. Litig.*,
  2010 WL 11746218 (S.D.N.Y. Sept. 20, 2010) ...................................................20

*In re Spero Therapeutics, Inc. Sec. Litig.*,
  2022 WL 4329471 (E.D.N.Y. Sept. 19, 2022) .......................................................2

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)................................................. 10, 22

*In re Veeco Instruments, Inc. Sec. Litig.*,
  235 F.R.D. 220 (S.D.N.Y. 2006) .........................................................................23

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
  2017 WL 2062985 (S.D.N.Y. May 15, 2017) .......................................................13

*Kanefsky v. Honeywell Int'l Inc.*,
  2019 WL 936662 (D.N.J. Feb. 26, 2019) ...............................................................8

*Karimi v. Deutsche Bank Aktiengesellschaft*,
  2020 WL 13158187 (D.N.J. Dec. 28, 2020)............................................. 11, 12, 14

*Lawless v. Aurora Cannabis Inc.*,
2021 WL 2850451 (D.N.J. July 8, 2021) ............................................................18

*Maeshiro v. Yatsen Holding Ltd.*,
2023 WL 4684106 (S.D.N.Y. July 21, 2023) ........................................................3

*Montesano v. Eros Int'l PLC*,
2020 WL 1873015 (D.N.J. Apr. 14, 2020) ..........................................................18

*Nasin v. Hongli Clean Energy Techs. Corp.*,
2017 WL 5598214 (D.N.J. Nov. 21, 2017) ..........................................................18

*Pope v. Navient Corp.*,
2018 WL 672640 (D.N.J. Feb. 2, 2018) ........................................... 11, 14, 15, 19

*Sklar v. Amarin Corp. PLC*,
2014 WL 3748248 (D.N.J. July 29, 2014) .................................................. 12, 13

*Valeant Pharms. Int'l, Inc. v. AIG Ins. Co. of Canada*,
2021 WL 7903694 (D.N.J. June 28, 2021) ..........................................................23

*Wilson v. LSB Indus., Inc.*,
2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) ......................................................13

**Statutes**

15 U.S.C. § 78u-4(a) ..................................................................................... *passim*
15 U.S.C. § 78j(b) ..............................................................................................1
15 U.S.C. § 78t(a) ..............................................................................................1

**Rules**

Fed. R. Civ. P. 23 ............................................................... 2, 10, 11, 12, 14

**Regulations**

17 C.F.R. § 240.10b-5 ........................................................................................1

Proposed Lead Plaintiff Pavel Krykhtin and Perdeep Kanda ("Krykhtin and Kanda") respectfully renew their motion to this Court for entry of an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): (1) appointing Krykhtin and Kanda as Lead Plaintiff; (2) approving their selection of Saxena White P.A. ("Saxena White") to serve as Lead Counsel for the Class and Carella, Byrne, Cecchi, Brody & Agnello, P.C. ("Carella Byrne") to serve as Liaison Counsel for the Class; and (3) granting any such other and further relief as the Court may deem just and proper.

## I.   **PRELIMINARY STATEMENT**

Presently pending before this Court is the above-captioned consolidated securities class action brought on behalf of investors who purchased or otherwise acquired securities of Tingo Group, Inc. ("Tingo" or the "Company") seeking to pursue remedies under Sections 10(b) and 20(a) of the Exchange Act, as amended by the PSLRA, 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against the Company and certain of its executives ("Defendants").[1]  Krykhtin and

---

[1] On August 7, 2023, the statutory deadline under the PSLRA, Krykhtin and Kanda timely filed their original motion seeking appointment as lead plaintiff.  ECF No. 7. In addition to Krykhtin and Kanda, competing motions were filed by Shunsei Tazaki

(*footnote continued on next page*)

Kanda respectfully submit that they are the "most adequate plaintiff" under the PSLRA, readily satisfy the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and should be appointed Lead Plaintiff on behalf of a class of all persons and entities (the "Class") who purchased or otherwise acquired Tingo securities between December 1, 2022 and June 6, 2023, inclusive (the "Class Period").[2]

---

("Tazaki") (ECF No. 3), and other movants who have since either filed notices of non-opposition or withdrawn their motions. ECF Nos. 11, 12, 14, 15. Only Krykhtin and Kanda and Tazaki filed briefs in Opposition to the competing motions, and Replies. ECF Nos. 16, 17, 19, 20. On September 29, 2023, the Court terminated the pending motions and ordered counsel for the movants to meet and confer to resolve the lead plaintiff and lead/liaison counsel dispute, and either file a consent order indicating their agreement or file renewed motions for appointment of lead plaintiff and lead/liaison counsel. ECF No. 26. After meeting and conferring, counsel for Krykhtin and Kanda and Tazaki filed a letter to the Court informing it that they were unable to resolve their dispute, and proposed to file an opening brief on October 16, 2023, and opposition brief on October 24, 2023, which the Court "so ordered" on October 11, 2023. ECF Nos. 27, 28.

[2] As noted in our initial brief, ECF No. 7-1 at 1 n.1, the end date of the pleaded class period is incorrect and should have ended on June 5, 2023, as the alleged fraud was disclosed prior to the market open on June 6, 2023, so artificial inflation was already removed from Tingo's stock price when trading opened that day. The first-filed action alleges a class period from March 31, 2023 through June 6, 2023, on behalf of investors who purchased Tingo securities. *See Arbour v. Tingo Grp., Inc.*, No. 2:23-cv-03151 (D.N.J. filed June 8, 2023) ("*Arbour* action"). The second-filed action alleges a class period from December 1, 2022 through June 6, 2023, on behalf of investors who purchased Tingo common stock. *See Bloedorn v. Tingo Grp. Inc.*, No. 2:23-cv-03153 (D.N.J. filed June 8, 2023) ("*Bloedorn* action"). On September 29, 2023, the Court consolidated the *Arbour* and *Bloedorn* actions. ECF No. 25. For purposes of determining a lead plaintiff movant's financial interest under the PSLRA, the longest filed and publicly noticed class period applies. *See, e.g., In re*

(*footnote continued on next page*)

Krykhtin and Kanda incurred a loss of more than $1.17 million on their Class Period transactions in Tingo securities held through the only alleged disclosure of fraud in the consolidated action under the prevailing last-in, first-out ("LIFO") accounting method—a loss more than twice that claimed by Tazaki.[3]   Krykhtin and Kanda also purchased more shares and expended greater net funds than Tazaki on investments in Tingo stock.[4]   Krykhtin and Kanda's claims are typical of the Class's claims because they suffered a loss on their Class Period investments in Tingo securities as a result of Defendants' allegedly false and misleading statements. Krykhtin and Kanda have no conflicts with the Class and will adequately protect the

---

*Spero Therapeutics, Inc. Sec. Litig.*, 2022 WL 4329471, at *5 (E.D.N.Y. Sept. 19, 2022) (finding that utilizing the more inclusive class period "is appropriate, given that it will . . . avoid excluding any potential class members") (citation and quotation marks omitted).

[3] Krykhtin's and Kanda's respective Class Period transactions in Tingo securities are set forth in their certifications attached as Exhibit A to the Declaration of James E. Cecchi in Support of the Renewed Motion of Pavel Krykhtin and Perdeep Kanda for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Cecchi Decl."). Charts setting forth Krykhtin and Kanda's losses are attached as Exhibit B to the Cecchi Decl. Kanda's certification and loss chart contain inconsistent dates for a sale transaction in the Denise Kanda ISA account. The discrepancy is a clerical error that mistakenly listed the settle date instead of the transaction date on the certification. Krykhtin and Kanda's loss calculation remains unchanged. *See Maeshiro v. Yatsen Holding Ltd.*, 2023 WL 4684106, at *9 (S.D.N.Y. July 21, 2023) ("Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties.").

[4] Mr. Kanda received a valid assignment of claims from his wife and children that transfers all rights and title to prosecute all causes of action relating to their transactions in Tingo securities. *See* Cecchi Decl., Exs. A, C, and D ¶ 6.

Class's interests given their significant financial stake in the claims.  In addition, as set forth in greater detail in their Joint Declaration submitted herewith, Krykhtin and Kanda fully understand and are willing and able to undertake the Lead Plaintiff's responsibilities and obligations to the Class under the PSLRA to ensure the vigorous prosecution of this action.  *See* Joint Decl. in Support of the Mot. of Pavel Krykhtin and Perdeep Kanda for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Joint Declaration"), Cecchi Decl., Ex. D.

To date, Krykhtin and Kanda have demonstrated their ability to oversee this litigation and their commitment to working cohesively to efficiently prosecute this litigation by conferring before their original motion was filed to establish a coordinated strategy for overseeing the prosecution of this matter, and filing a motion, additional briefing, and this renewed motion pursuant to the process governed by the PSLRA and this Court's Order.  Additionally, prior to seeking a role as Lead Plaintiff, Krykhtin and Kanda held a conference call to discuss, among other things, the merits of the claims against Defendants as well as their common goals in the litigation.  *See* Cecchi Decl., Ex. D ¶¶ 17-18.  Krykhtin and Kanda have further demonstrated their adequacy through their selection of Saxena White to serve as Lead Counsel and Carella Byrne to serve as Liaison Counsel.  *Id.* ¶¶ 9, 14, 17. Saxena White and Carella Byrne have substantial experience and success prosecuting securities class actions in this District and throughout the nation.  *Id.*

¶¶ 21-22.   Accordingly, Krykhtin and Kanda respectfully request that the Court appoint them as Lead Plaintiff and otherwise grant their motion.

## II.   **FACTUAL BACKGROUND**

Tingo[5] is a holding company that operates in the areas of financial technology and agri-fintech through its subsidiaries and entities throughout Africa, Southeast Asia, and the Middle East.  ¶ 2.[6]  Throughout the Class Period, Defendants touted the profitability and business prospects of certain of Tingo's acquired companies' subscriber base, contractual relationships, and plans to construct a food processing facility.  ¶¶ 23-24, 30-31, 33-34.  The action alleges that, during the Class Period, Tingo made false and misleading statements regarding the legitimacy of its business operations.  ¶ 6.

***Before trading opened on June 6, 2023***, Hindenburg Research published a report titled, "Tingo Group: Fake Farmers, Phones, and Financials—The Nigerian Empire That Isn't."[7] ¶ 3.  The Hindenburg report alleged that Tingo was a "worthless and brazen fraud," with no legitimate business operations and that Tingo's purported plans to construct billion-dollar facilities, contracts with customers and suppliers,

---

[5] Tingo is headquartered in Montvale, New Jersey.  The Company's shares trade on the Nasdaq Capital Market under the ticker symbol "TIO."

[6] Citations to "¶ __" are to paragraphs of the *Bloedorn* action.  Much of this factual summary is condensed from the original opening lead plaintiff brief.  *See also* ECF 7-1 at 4-6.

and hundreds of millions of dollars in cash reserves did not exist.  ¶ 4.  On this news, the price of Tingo common stock declined $1.23 per share, or more than 48%, from a close of $2.55 per share on June 5, 2023, to a close of $1.32 per share on June 6, 2023.  ¶ 5.  Defendants' material misrepresentations and omissions and the revelations thereof have caused Krykhtin and Kanda, and the Class, to incur substantial losses.  Importantly, it is not in dispute that June 5, 2023 was the last trading day before the Hindenburg report was released prior to the market open on June 6, 2023, and Tingo common stock declined to a $1.35 per share opening price on June 6, 2023.  *See* Cecchi Decl., Exs. H, I.  Tazaki acknowledges the share price decline took place on June 6 (ECF No. 3-1 at 5), and the *Bloedorn* complaint notes the report was released pre-market.  *Bloedorn* action, ECF No. 1 ¶ 3.

## III.   ARGUMENT

### A.   Krykhtin and Kanda Should Be Appointed Lead Plaintiff

#### 1.   The PSLRA's Standard for Appointing Lead Plaintiff

Krykhtin and Kanda respectfully submit that they should be appointed Lead Plaintiff because they are the movant that is "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) filed a complaint or filed a motion to serve as lead plaintiff; (2) has the largest financial interest in the

relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). As set forth below, Krykhtin and Kanda are the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

### 2. Krykhtin and Kanda Are the "Most Adequate Plaintiff"

Krykhtin and Kanda respectfully submit that they should be appointed Lead Plaintiff because they (1) filed a timely motion for appointment as Lead Plaintiff; (2) hold the largest financial interest of any movant; and (3) satisfy Rule 23's typicality and adequacy requirements.

### a. Krykhtin and Kanda's Motion Is Timely

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). On June 8, 2023, the plaintiff who filed the first complaint in the *Arbour* action published a notice on *Business Wire*, alerting investors to the pendency of the action and informing them of the 60-day deadline to seek appointment as Lead Plaintiff, which was August 7, 2023. *See* Cecchi Decl., Ex. E. On that date, Krykhtin and

Kanda filed their original motion.  ECF No. 7.  Pursuant to the Court's Order, Krykhtin and Kanda filed a renewed motion on October 16, 2023.  ECF Nos. 26, 28. As such, Krykhtin and Kanda have filed their initial motion and renewed motions within the required timeframes.

### b. Krykhtin and Kanda Have the Largest Financial Interest in the Relief Sought by the Class

Krykhtin and Kanda should be appointed Lead Plaintiff because they have the "largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  The PSLRA instructs courts to adopt the presumption that "the most adequate plaintiff" is the "person or group of persons that . . . has the largest financial interest in the relief sought by the class" so long as that movant meets the requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  In determining the "largest financial interest" for purposes of lead plaintiff appointment, courts in the Third Circuit consider: (1) the number of shares that the movants purchased during the putative class period; (2) the total net funds expended by the plaintiff during the class period; and (3) the approximate losses suffered by the plaintiff.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *Kanefsky v. Honeywell Int'l Inc.*, 2019 WL 936662, at *1 (D.N.J. Feb. 26, 2019) (reciting these factors and noting that "[t]he third factor, the approximate losses suffered, is considered the most significant").

Krykhtin and Kanda purchased a total of over 1.6 million Tingo shares, expended more than $2.5 million in net funds, and sustained a loss of approximately $1,179,931 on a LIFO basis on their Class Period transactions in Tingo securities. *See* Cecchi Decl., Exs. A, B.  As set forth in the chart below, Krykhtin and Kanda have a substantially greater financial interest than the only competing movant ***under all three factors***.

| MOVANT | TOTAL SHARES PURCHASED | NET FUNDS EXPENDED | CLAIMED LOSS |
|---|---|---|---|
| **Krykhtin & Kanda** | 1,632,463 | $2,521,385 | $1,179,931 |
| **Krykhtin** | 1,302,846 | $1,700,920 | $787,135 |
| **Kanda** | 329,617 | $820,465 | $392,796 |
| **Tazaki** | 170,015 | $750,826 | $514,912 |

*See* Cecchi Decl., Ex. B; ECF No. 3-4.

Krykhtin and Kanda's LIFO loss is properly calculated at $1,179,931 under the widely accepted LIFO method because they both held shares ***through*** the alleged disclosure of fraud that took place before the opening of trading on June 6, 2023. Following this disclosure, on June 6, 2023, Krykhtin and Kanda sold 1,004,954 shares at prices ranging from $1.11 per share to $1.32 per share – prices to which the stock fell after the alleged disclosure – and suffered losses on those sales, as presumably much of the Class did, considering the high volume of trading in Tingo on that day at share prices that were already significantly declined the moment the

market opened.  *See* Cecchi Decl., Ex. I.  As a result, Krykhtin and Kanda's loss calculation notes the following regarding their June 6, 2023 sales: "Although the pleaded Class Period ends on June 6, 2023, this sale was made following the alleged disclosure of fraud and, accordingly, is treated as a post-Class Period sale."  *See* Cecchi Decl., Ex. B.  This approach is in accord with how Courts treat the calculation of damages in this exact situation.  *See*, *e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *13 (S.D.N.Y. Nov. 7, 2007); *see also infra*, IV.A.

Accordingly, under any relevant calculation, Krykhtin and Kanda have "the largest financial interest in the relief sought by the class," and must be appointed Lead Plaintiff as they "otherwise satisf[y] the requirements of Rule 23."  *Cendant*, 264 F.3d at 263.

### c.  Krykhtin and Kanda Satisfy Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the litigation, Krykhtin and Kanda satisfy the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a party may serve as a class representative if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23.  At this stage of the proceedings, a lead

plaintiff movant is only required to make a "preliminary showing" that they satisfy the typicality and adequacy requirements of Rule 23. *Karimi v. Deutsche Bank Aktiengesellschaft*, 2020 WL 13158187, at \*2 (D.N.J. Dec. 28, 2020); *see also Pope v. Navient Corp.*, 2018 WL 672640, at \*3 (D.N.J. Feb. 2, 2018) (explaining that the "inquiry . . . should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy.") (citing *Cendant*, 264 F.3d at 263).

### i.   Krykhtin and Kanda's Claims Are Typical of Those of the Class

Typicality under Rule 23(a)(3) is satisfied "when the named plaintiff has (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants, and (3) their claims are based on the same legal issues." *Pope*, 2018 WL 672640, at \*4 (finding typicality satisfied when "the parties are affected by the same event; the crux of th[e] case will be Defendants' alleged misrepresentations to the public at large").  Typicality does not require that there be no factual differences between the class representatives and the class members; rather, it is the generalized nature of the claims asserted that determines whether the class representatives are typical.  *See Cendant*, 264 F.3d at 265 (explaining that to determine whether typicality is satisfied courts should "consider whether the circumstances of the movant . . . are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims

of other class members will perforce be based") (citation and quotation marks omitted).

Here, Krykhtin and Kanda satisfy the typicality requirement.  Like all other Class members, Krykhtin and Kanda transacted in Tingo securities during the Class Period at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions, and were damaged thereby.  *See Karimi*, 2020 WL 13158187, at \*2 (discussing typicality).  Krykhtin and Kanda's shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy typicality under Rule 23(a)(3).

Tazaki's argument, from the opposition and reply in support of his original motion (*see* ECF 16 at 8, 25-26 and ECF 19 at 12), that Krykhtin is barred from appointment as an in-and-out trader necessarily fails based on the facts set forth above.  Like many other Class members, Krykhtin held shares ***through*** the disclosure of fraud and sold them in reaction to the disclosure.  Under the standard established in *Sklar v. Amarin Corp. PLC*, "[i]n-and-out traders are those who both purchase and sell all of their shares ***prior to*** a corrective disclosure; if the purchaser sells shares quickly ***before*** the relevant truth begins to leak out, the misrepresentation will not have led to any loss."  2014 WL 3748248, at \*9 n.8 (D.N.J. July 29, 2014).  There, in rejecting the argument that the presumptive lead plaintiff was an unacceptable in-and-out trader, former Chief Judge Wolfson determined that the

movant was, in fact, not an in-and-out trader: "[A]lthough [he] completely divested his interest in Amarin ADRs twice in the first quarter of 2011, [he] subsequently *reinvested, and continued to invest*, in Amarin, and had 685,000 ADRs at the end of the class period, at the time of Amarin's corrective disclosures." *Id.*

Like the appointed lead plaintiff in *Sklar*, while Krykhtin sold shares earlier in the Class Period, he "subsequently reinvested, and continued to invest, in [Tingo]," and held 692,261 shares at the time the Hindenburg report was released, which removed the artificial inflation from Tingo's stock. *See* Cecchi Decl., Ex. J (showing calculation of Kryktin and Kanda's net shares held at the time of the disclosure as compared to Tazaki's smaller position of 160,015 shares); *see also In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2017 WL 2062985, at *3 (S.D.N.Y. May 15, 2017) (rejecting argument that lead plaintiff who sold out of stock position was atypical because "it held over thirty thousand shares through [a] corrective disclosure, which subjects it to the same wrongful acts as the remainder of the class"); *Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *6 (S.D.N.Y. Aug. 13, 2018) (explaining that a lead plaintiff who sold out of his position but then established a "net positive position" held through corrective disclosures would be able to prove loss causation).

### ii.     Krykhtin and Kanda Will Fairly and Adequately Protect the Interests of the Class

Krykhtin and Kanda likewise satisfy the adequacy requirement of Rule 23(a)(4), pursuant to which the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For a class's interests to be fairly and adequately represented, movants must show that "there is no conflict between the proposed lead plaintiff and members of the class, and the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Karimi*, 2020 WL 13158187, at *2 (finding adequacy satisfied where movant "has a sufficient interest in the outcome of this case," "retained competent counsel to represent him, and nothing in the record suggests that there is any conflict between [movant's] claims and those of the other members of the putative class").

Krykhtin and Kanda's interests are perfectly aligned with those of other Class members and are not antagonistic in any way. Krykhtin and Kanda incurred substantial financial harm due to Defendants' misrepresentations and omissions during the Class Period and have a sufficient interest in the outcome of the litigation to ensure vigorous prosecution of the litigation. *See Pope*, 2018 WL 672640, at *5 (noting that movant group with largest loss had the "incentive to represent the purported class vigorously"). There are no facts to suggest an actual or potential conflict of interest between Krykhtin and Kanda and the other Class members exists.

As set forth below, Krykhtin and Kanda have provided information about their backgrounds and affirmed their commitment to fulfilling the fiduciary role of Lead Plaintiff. *See* Cecchi Decl., Ex. D ¶¶ 4, 6, 8-20, 23.  Krykhtin and Kanda have further demonstrated their adequacy by selecting Saxena White as proposed Lead Counsel for the Class.  Saxena White is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to effectively collaborate in prosecuting complex securities class actions and other forms of shareholder litigation. *See* Cecchi Decl., Ex. F.

Moreover, the PSLRA expressly states that a "group of persons" is eligible to serve as Lead Plaintiff, 15 U.S.C. § 78u-4(a)(3)(B)(iii).  The Third Circuit equally makes clear that "[t]he PSLRA explicitly permits 'a group of persons'" to serve as lead plaintiff." *Cendant*, 264 F.3d at 266.  Under *Cendant*, there is "no requirement mandating that the members of a proper group be 'related' in some manner" and the sole calculus is "whether that group would 'fairly and adequately protect the interests of the class.'" *Id.* at 266-67 ("[I]t is this test, not one of relatedness, with which courts should be concerned").  Courts in this District have routinely appointed as lead plaintiff small groups of investors that have a substantial financial stake in the litigation and have demonstrated cohesion, such as Krykhtin and Kanda. *See*, *e.g.*, *Pope*, 2018 WL 672640, at *5  (appointing a pair of individuals as lead plaintiff); *Aguilar v. Vitamin Shoppe, Inc.*, 2018 WL 1960444, at *11-12 (D.N.J. Apr. 25,

2018) (appointing three individuals as lead plaintiff where one member's loss "standing alone" is the single largest of all movants, which "eases concerns about plaintiffs coming together solely to aggregate losses.").

Krykhtin and Kanda comprise a small, cohesive group of experienced investors who determined to jointly seek appointment as Lead Plaintiff and prosecute this action independently of counsel and in the best interests of all Class members. *See* Cecchi Decl., Ex. D ¶¶ 5, 7, 14-15. Specifically, before seeking Lead Plaintiff appointment, Krykhtin and Kanda considered the merits of the claims, their losses caused by Defendants' alleged fraud, and their proposed litigation strategy. *See id.* ¶¶ 9, 17. Through these deliberations, Krykhtin and Kanda each expressed an interest in seeking to cooperate with like-minded investors in seeking appointment as Lead Plaintiff. *See id.* ¶¶ 5, 7. Based on Krykhtin and Kanda's understanding that working together would allow for the sharing of experiences and resources, they believed that partnering would add substantial value to the prosecution of this litigation and would benefit the Class. *See id.* ¶¶ 14, 18.

Krykhtin and Kanda have also demonstrated their commitment to working cohesively as a group in the prosecution of this litigation. *See id.* ¶ 15. Their Joint Declaration details the steps that Krykhtin and Kanda have already taken (and will continue to take) to ensure the vigorous prosecution of this action and to oversee counsel. *See id.* Specifically, before seeking appointment as Lead Plaintiff,

16

Krykhtin and Kanda participated in a conference call and discussed, among other things, the strength of the claims against Defendants and their ability and incentive to vigorously represent the claims of the Class.  *See id.* ¶ 17.  Krykhtin and Kanda also discussed their understanding of the duties of a Lead Plaintiff pursuant to the PSLRA and their common goals and strategy for joint prosecution of this litigation. *See id.*  Krykhtin and Kanda's collaboration follows their shared goals and interests in protecting and maximizing their assets and those of the Class and ensuring the transparency of statements by public companies.  *See id.* ¶ 13.  Krykhtin and Kanda are committed to cooperating in the prosecution of this case.  *See id.* ¶¶ 15-20.

Contrary to Tazaki's opposition and reply arguments in support of his original motion (*see* ECF No. 16 at 18-22 and ECF No. 19 at 6-10), Krykhtin and Kanda meet and exceed the standard for adequacy under *Cendant*.  Krykhtin and Kanda have each signed a sworn declaration stating that they both: "expressed interest to [their] counsel in partnering with another like-minded investor to prosecute this litigation[;]" understand their ongoing fiduciary obligations to the Class, "including that it is [their] duty to monitor and oversee counsel" by, among other things, "regularly communicat[ing] and coordinat[ing] with our counsel[;]" "considered the benefits and potential drawbacks of proceeding individually or jointly as Lead Plaintiff" and "agree that [their] partnership . . . will further the interests of the Class[;]" and have already taken steps in furtherance of their fiduciary obligations,

including by reviewing the *Bloedorn* complaint, "discussing the lawsuit on several occasions telephonically with our counsel at Saxena White and the Schall Law Firm[,]" and "conven[ing] a conference call to discuss our commitment to jointly prosecuting this litigation."  Cecchi Decl., Ex. D ¶¶ 5, 7, 8, 14-17.  Krykhtin and Kanda's sworn declaration allays any concerns about their adequacy and ability to act independently and oversee counsel.  *See Lawless v. Aurora Cannabis Inc.*, 2021 WL 2850451, at *5 (D.N.J. July 8, 2021) (finding adequacy of group who submitted a joint declaration "signed before and filed simultaneously with its Motion"); *Aguilar*, 2018 WL 1960444, at *10 (finding "insufficient evidence" that group was "'cobbled together'" where joint declaration provides details on how they will coordinate).

Moreover, courts in this District have consistently found that a preexisting relationship between group members is not required.  *See, e.g., Lawless*, 2021 WL 2850451, at *5 (appointing group of three unrelated individuals that submitted a joint declaration as lead plaintiff); *Montesano v. Eros Int'l PLC*, 2020 WL 1873015, at *12 (D.N.J. Apr. 14, 2020) (appointing group of two unrelated entities); *Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214, at *4 (D.N.J. Nov. 21, 2017) (appointing group of five unrelated individuals).  Further, Krykhtin's loss, "standing alone," is greater than Tazaki's, which "eases concerns about plaintiffs coming together solely to aggregate losses."  *Aguilar*, 2018 WL 1960444, at *11.  The fact

18

that Krykhtin and Kanda are two individuals gives assurance about their ability to "work effectively." *Id.* (finding a group of three "too small to raise such concerns").

In sum, Krykhtin and Kanda have demonstrated their willingness and commitment to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the Class. Thus, Krykhtin and Kanda are precisely the type of investors that Congress sought to empower as Lead Plaintiff.

**B.    The Court Should Approve Krykhtin and Kanda's Selection of Counsel**

Pursuant to the PSLRA, the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should not disturb the plaintiff's choice of counsel "unless the Court finds it necessary to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Pope*, 2018 WL 672640, at *5 ("There is a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quoting *Cendant*, 264 F.3d at 276). Krykhtin and Kanda respectfully submit that their selection of Saxena White as Lead Counsel and Carella Byrne as Liaison Counsel should be approved.

Saxena White has secured more than $1 billion in recoveries as lead or co-lead counsel in securities class actions in this District and throughout the country,

including with Carella Byrne serving as Liaison Counsel.[8]  *See* Cecchi Decl., Ex. F.

By approving Krykhtin and Kanda's choice of Lead Counsel, this Court will also

advance the important goal of increasing diversity among class counsel.  *See In re*

*Gildan Activewear Inc. Sec. Litig.*, 2010 WL 11746218, at *1 (S.D.N.Y. Sept. 20,

2010) (noting that because the "proposed class includes thousands of participants,

both male and female, arguably from diverse backgrounds, . . . it is therefore

important to all concerned that there is evidence of diversity, in terms of race and

gender, in the class counsel I appoint"); *see also* ECF 7-1 at 21.  In addition,

proposed Liaison Counsel, Carella Byrne, maintains an office in this District, has

substantial experience litigating class actions, and is well qualified to represent the

class as Liaison Counsel.[9]  *See* Cecchi Decl., Ex. G.

Accordingly, the Court should approve Krykhtin and Kanda's selection of

Saxena White as Lead Counsel for the Class and Carella Byrne as Liaison Counsel

for the Class.

---

[8] Saxena White's experience is further detailed in Krykhtin and Kanda's initial lead plaintiff brief.  *See* ECF 7-1 at 20-21.

[9] Carella Byrne's experience is further detailed in Krykhtin and Kanda's initial lead plaintiff brief.  *See* ECF 7-1 at 21-22.

IV.   **THE COMPETING MOTION SHOULD BE DENIED**

A.   **Krykhtin and Kanda Are the Only Movants Who Will Represent the Interests of the Entire Class**

Because Krykhtin and Kanda are the presumptive Lead Plaintiff, Krykhtin and Kanda meet all the statutory requirements for appointment, and there is no evidence—much less proof—that Krykhtin and Kanda will not fairly and adequately protect Class interests, the Court need not consider the competing motion. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (explaining that the statutory presumption may be rebutted "only upon ***proof*** . . . that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class"); *see also Cendant*, 264 F.3d at 268 ("If no class member succeeds in rebutting the presumption, then the district court should appoint the presumptive lead plaintiff as the lead plaintiff"). The only competing movant claims a significantly smaller financial interest than Krykhtin and Kanda in the relief sought by the Class—the threshold consideration for courts in assessing lead plaintiff movants. *See id.* at 262 ("In appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status."). That movant also advances a proposed class definition that would undercut the interests of most class members. Krykhtin and Kanda, in contrast, seek to represent the entire damaged class, including those who sold their shares at the first opportunity following the only alleged disclosure.

In the opposition and reply in support of his original motion (*see* ECF No. 16 at 14-15, 26-27 and ECF No. 19 at 5, 11-13), Tazaki self-servingly proposed that because the as-pled Class Period ends on June 6, 2023, class members such as Krykhtin and Kanda who held Tingo shares **through** the pre-market corrective disclosure and sold shares on that date were somehow not actually damaged, and therefore their losses should not be considered for purposes of determining their greater financial interest.  But this argument ignores the simple fact that selling on the trading day *after* a pre-market disclosure is entirely typical of the Class, and consistent with the manner in which Courts approach the question of damages.  *In re Veeco Instruments Inc. Sec. Litig.* also alleged a pre-market corrective disclosure: "Defendants' disclosure of the truth before the market opened on the morning of February 11, 2005 caused the price of Veeco stock to fall, thereby damaging Plaintiff and the other Class Members."  2007 WL 4115809, at *8.  Explaining damages in its final settlement approval order, the *Veeco* Court held:

> The plan of allocation follows the Supreme Court's decision in *Dura Pharmaceuticals*, and requires that the claimant must have purchased the security during the Class Period and held it on the day of corrective disclosure, recognizing that Class Members suffered an economic loss only if they bought shares during the Class Period and sold them after the Class Period ended on February 10, 2005.

*Id.* at *13 (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005)).  Earlier at class certification in the same action, plaintiffs and defendants agreed that the class

period should end the day before the final corrective disclosure that caused a stock decline. *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 241 (S.D.N.Y. 2006). Other courts agree. *Valeant Pharms. Int'l, Inc. v. AIG Ins. Co. of Canada*, 2021 WL 7903694, at *28 (D.N.J. June 28, 2021) ("Numerous courts have held that, in a securities class action based on material misrepresentations and omissions to the investing public, the class period should end when curative information is publicly announced or otherwise effectively disseminated to the market"); *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 3742924, at *10 (S.D. Cal. Aug. 4, 2021) (agreeing that "if the corrective information is disclosed before the market opens, then investors who purchased on that day after the disclosure are not damaged" and ending class period the prior day). Tazaki's efforts to exploit the obvious clerical error ending the class period on June 6, 2023, rather than June 5, 2023, the day before the pre-market publication Hindenburg report, should not be considered in evaluating Tazaki's smaller financial interest in the litigation.

## V.   <u>CONCLUSION</u>

For the reasons discussed above, Krykhtin and Kanda respectfully request that the Court: (1) appoint them to serve as Lead Plaintiff for the Class; (2) approve their selection of Saxena White as Lead Counsel for the Class and Carella Byrne as Liaison Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

Dated: October 16, 2023

Respectfully submitted,

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**

By: */s/ James E. Cecchi*
James E. Cecchi
Kevin Cooper
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

*Proposed Liaison Counsel for the Class*

**SAXENA WHITE P.A.**
Lester R. Hooker (*pro hac vice* forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
lhooker@saxenawhite.com

-and-

Marco A. Dueñas (*pro hac vice* forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 216-2220
mduenas@saxenawhite.com

*Counsel for Proposed Lead Plaintiff Pavel Krykhtin and Perdeep Kanda, and Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac vice* forthcoming)
2049 Century Park East, Suite 2460

24

Los Angeles, CA 90067
Tel.: (310) 301-3335
brian@schallfirm.com

*Additional Counsel for Proposed Lead
Plaintiff Pavel Krykhtin and Perdeep Kanda*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 16, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

*/s/ James E. Cecchi*
James E. Cecchi
