**LEVI & KORSINSKY, LLP**
Adam M. Apton
33 Whitehall Street, 17th Floor
New York, New York 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Counsel for Shunsei Tazaki and*
*Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER ARBOUR, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TINGO GROUP, INC., DOZY MMOBUOSI, DARREN MERCER, and KEVIN CHEN,<br><br>Defendants. | Case No. 2:23-cv-03151-ES-MAH<br><br>**SHUNSEI TAZAKI'S MEMORANDUM OF LAW IN OPPOSITION TO COMEPTING RENEWED LEAD PLAINTFF MOTION AND IN FURTHER SUPPORT OF HIS RENEWED MOTION FOR LEAD PLAINTIFF**<br><br>**MOTION DATE: NOV 20, 2023**<br><br>(Consolidated with Case No. 2:23-cv-03153-ES-MAH) |

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................1

II.   ARGUMENT........................................................................................3

      A. Mr. Tazaki is the "Most Adequate Plaintiff" to Serve as Lead Plaintiff.........3

      B. The Krykhtin/Kanda Group's Supplemental Briefing Confirms the
         Argument that the Group Is Inadequate under *Cendant*................................5

      C. Mr. Krykhtin Remains Subject to "Unique Defenses" Due to His Status as
         an "In-and-Out" Trader.................................................................7

      D. The Court Should Reject the Krykhtin/Kanda Group's Belated Argument
         that the Complaints Contained a "Clerical Error" in the Class Period............9

III.  CONCLUSION....................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bensley v. FalconStor Software, Inc.*,
   277 F.R.D. 231 (E.D.N.Y. 2011) ..................................................................... 8

*In re Cendant Corp. Litigation*,
   264 F.3d 201 (3d Cir. 2001) ............................................................... *passim*

*Chao Sun v. Han,*
   Civil Action No. 15-703, 2015 U.S. Dist. LEXIS 64060 (D.N.J. May 14,
   2015) ............................................................................................................. 7

*Dang v. Amarin Corp. PLC*,
   Nos. 21-19212 (GC) (TJB), et al., 2022 U.S. Dist. LEXIS 196034 (D.N.J.
   Oct. 27, 2022) .............................................................................................. 5

*Deering v. Galena Biopharma, Inc.*,
   No. 3:14-cv-00367-SI, 2014 U.S. Dist. LEXIS 140766 (D. Or. Oct. 3,
   2014) ........................................................................................................... 11

*Eichenholtz v. Verifone Holdings, Inc.*,
   No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22,
   2008) ........................................................................................................... 11

*Galmi v. Teva Pharms. Indus.,*
   302 F. Supp. 3d 485 (D. Conn. 2017) ........................................................... 9

*Gutman v. Sillerman*,
   No. 15-cv-7192 (CM), 2015 U.S. Dist. LEXIS 179553 (S.D.N.Y. Dec. 8,
   2015) ........................................................................................................... 10

*MabVax Therapeutics Holdings*,
   Nos. 18-cv-01160-BAS-NLS, et al., 2018 U.S. Dist. LEXIS 152226 (S.D.
   Cal. Sept. 6, 2018) ...................................................................................... 11

*Maliarov v. Eros Int'l PLC*,
   No. 15-CV-8956 (AJN), 2016 U.S. Dist. LEXIS 46082 (S.D.N.Y. Apr. 5,
   2016) ........................................................................................................... 10

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.,*
No.: 13–CV–05368–LHK, 2014 U.S. Dist. LEXIS 80141 (N.D. Cal. June 10, 2014) .................................................................................... 11

*In re Opnext, Inc. Secs. Litig.,*
No. 08-920 (JAP), 2008 U.S. Dist. LEXIS 60678 (D.N.J. Aug. 6, 2008) ..... 8

*Plaut v. The Goldman Sachs Grp., Inc.,*
No. 18-CV-12084 (VSB), 2019 U.S. Dist. LEXIS 160255 (S.D.N.Y. Sep. 19, 2019) .................................................................................... 10

*Porzio v. Overseas Shipholding Grp.,*
12 Civ. 7948, et al., 2013 U.S. Dist. LEXIS 14463 (S.D.N.Y. Feb. 1, 2013) 7

*In re Razorfish, Inc. Sec. Litig.,*
143 F. Supp. 2d 304 (S.D.N.Y. 2001) ............................................. 6

*Stires v. Eco Science Solutions, Inc.,*
Nos. 17-3707(RMB/KMW), et al., 2018 U.S. Dist. LEXIS 25088 (D.N.J. Feb. 14, 2018) .......................................................................... 7

*In re Stitch Fix, Inc. Sec. Litig.,*
393 F. Supp. 3d 833 (N.D. Cal. 2019)............................................. 6

*Tan v. NIO Inc.,*
19-CV-1424 (NGG) (VMS), et al., 2020 U.S. Dist. LEXIS 36623 (E.D.N.Y. Mar. 3, 2020)................................................................ 6

*Topping v. Deloitte Touche Tohmatsu CPA,*
95 F. Supp. 3d 607& n.16 (S.D.N.Y. 2015) ............................... 2, 10

*In re Veeco Instruments, Inc.,*
233 F.R.D. 330 (S.D.N.Y. 2005)................................................... 8

## I.      INTRODUCTION

The parties' supplemental briefing confirms that movant Shunsei Tazaki's motion for lead plaintiff should be granted in its entirety. The Third Circuit warned in *Cendant* that movant-groups are subject to heightened scrutiny to protect against lawyer-driven litigation. Despite being placed on notice of that warning over two months ago when Mr. Tazaki raised the argument in his opposition brief (Dkt. No. 16, pp. 12-16), the Krykhtin/Kanda group continues to rely on the same insufficient "joint declaration" submitted with their initial motion papers. Nothing has changed. Messrs. Krykhtin and Kanda still live in different countries, have no pre-litigation relationship other than being introduced through counsel, and fail to specify a cohesive plan for coordinating the litigation and supervising their various attorneys at different law firms. The Krykhtin/Kanda group's supplemental filings still fail to demonstrate its "adequacy" under Federal Rule of Civil Procedure 23.

The Krykhtin/Kanda group also faces the same "unique defenses" it faced originally. Mr. Krykhtin's transaction history demonstrates a lack of "reliance" on Defendants' public statements. He began purchasing Tingo stock two weeks before the Class Period ended and in that short time churned hundreds of thousands of Tingo shares, primarily for a profit, until selling out on June 6, 2023 before the end of the Class Period. As Dr. Adam Werner explained (Dkt. No. 29-9), Mr. Krykhtin traded Tingo stock repeatedly at extremely heavy volumes in the absence of any new

information from the company. This trading strategy is referred to as "in-and-out" trading. Courts routinely disqualify "in-and-out" traders from serving as lead plaintiffs because it prevents shareholder classes from utilizing the "fraud-on-the-market" presumption of reliance under *Basic v. Levinson* during class certification proceedings and/or trial.

The only new information to come from the Krykhtin/Kanda group is their argument concerning a "clerical error ending the class period on June 6, 2023, rather than June 5, 2023." Dkt. No. 31-2, p. 23. They claim that if the complaints on file asserted class periods ending on June 5 instead of June 6, then Mr. Krykhtin would have a "claimed loss" of $787,135. This argument squarely contradicts numerous court opinions around the country holding that "financial interest" must be evaluated under the allegations currently before the court. *See Topping v. Deloitte Touche Tohmatsu CPA,* 95 F. Supp. 3d 607, 618-21 & n.16 (S.D.N.Y. 2015). In any event, this argument does nothing to change the fact that Mr. Krykhtin is an "in-and-out" trader who is atypical relative to other class members and subject to "unique defenses" that preclude him from serving as the lead plaintiff.

For all these reasons, Mr. Tazaki renews his request to be appointed as the lead plaintiff in this action. He presents none of the issues associated with the Krykhtin/Kanda group. Further, he is an educated and experienced investor who has already demonstrated a commitment to overseeing this action by, among other

2

things, interviewing six different law firms, negotiating a competitive retainer agreement, and affirmatively motioning the Court to continue Defendants' deadline to respond to the complaint to avoid prejudice to the Class. *See* Declaration of Shunsei Tazaki (filed herewith as Exhibit A to the Supplemental Declaration of Adam M. Apton),), ¶¶3, 5; *see also* Dkt. No. 23. Mr. Tazaki is exctly the type of investor Congress had in mind for the role of lead plaintiff when it enacted the PSLRA.

## II.    ARGUMENT

### A.    Mr. Tazaki is the "Most Adequate Plaintiff" to Serve as Lead Plaintiff.

To date, the Krykhtin/Kanda group has not provided any proof showing that Mr. Tazaki cannot adequately represent the class or is otherwise subject to a unique defense. To the contrary, Mr. Tazaki is the exact type of engaged shareholder that Congress intended to be appointed as lead plaintiff when it enacted the PSLRA. *See In re Cendant Corp. Litigation*, 264 F.3d 201, 266-67 (3d Cir. 2001) ("the goal of the Reform Act's lead plaintiff provision is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class" and "actively supervise the conduct of the litigation" of class actions alleging securities fraud).

Since moving for lead plaintiff initially, Mr. Tazaki has consistently proven himself qualified to oversee this litigation. He is exceptionally qualified given his

3

professional and educational background. Mr. Tazaki resides in Nagayo-Chou, Nishisonogi-Gun, Nagasaki Prefecture, Japan and is retired. Prior to retirement, he was employed as an engineer in mechanical equipment planning, detailed implementation design, commissioning, and technical management, as well as architectural design and civil engineering construction management. Mr. Tazaki also has a bachelor's degree in mechanical engineering, and is a certified first-class architect and a second-class civil engineering construction management engineer. *See* Declaration of Shunsei Tazaki at ¶2.

Moreover, Mr. Tazaki has already taken steps to protect and further the Class's interests. Mr. Tazaki "demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel" when he interviewed six different firms before ultimately choosing Levi & Korsinsky. *Cendant,* 264 F.3d at 265. He then negotiated a competitive fee agreement that maximizes the recovery for the Class by capping attorneys' fees to a certain percentage, inclusive of costs and expenses. *See* Declaration of Shunsei Tazaki at ¶¶3, 5. It is worth noting that the Krykhtin/Kanda group's "joint declaration" makes no reference to any negotiation of a retainer agreement with any of the three different lawfirms they retained to represent them.

**B.    The Krykhtin/Kanda Group's Supplemental Briefing Confirms the Argument that the Group Is Inadequate under *Cendant*.**

The Krykhtin/Kanda group continues to tout that it is the "most adequate plaintiff" with "no evidence – much less proof—that [it] will not fairly and adequately protect Class interests." Dkt. No. 31-2 at 7, 21. Yet the Krykhtin/Kanda group fails to acknowledge that it is required to first provide proof of its adequacy both under Rule 23 and *Cendant* before the presumption is triggered in its favor.

Notwithstanding the extenisve arguments Mr. Tazaki has already briefed regarding the Krykhtin/Kanda group being lawyer-driven, the group still relies on the same insufficient "joint declaration" dated August 5, 2023 that it filed with its original opening motion. *See* Dkt. No. 7-7. Their supplemental brief mentions no further communication between the group members nor additional plans for overseeing the litigation and their various attorneys. Thus, their submissions to date fall short of the "adequacy" standard required under *Cendant*. *See Cendant*, 264 F.3d at 266 (holding that unrelated group must evidence ability to "fairly and adequately protect the interests of the class" instead of ceding control of litigation to attorneys). Indeed, their "joint declaration" contains the language substantially similar to the boilerplate language rejected by numerous courts around the country. *See, e.g., Dang v. Amarin Corp. PLC*, Nos. 21-19212 (GC) (TJB), et al., 2022 U.S. Dist. LEXIS 196034, *24-25 (D.N.J. Oct. 27, 2022) ("This Court joins the courts in *Takata* and *Stires* in determining that the Joint Declaration's language regarding the

5

Amarin Group's single communication and plans to oversee the litigation does not allay the Court's concerns about the ability of this group to effectively monitor and manage the litigation, particularly if a dispute were to arise, where the members do not have a pre-existing relationship and acknowledge that they met through counsel for purposes of this litigation."); *Tan v. NIO Inc.*, 19-CV-1424 (NGG) (VMS), et al., 2020 U.S. Dist. LEXIS 36623, at *15 (E.D.N.Y. Mar. 3, 2020) (rejecting group where declaration failed to "establish that proposed group would work effectively and cohesively as lead plaintiff") (collecting cases); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) ("The declaration allegations are conclusory and cursory, and indicate only that the group members . . . have exchanged a few calls and emails with each other since being introduced by their common lawyer.").

The Krykhtin/Kanda group was formed at the suggestion of counsel in an effort to amass the "largest financial interest" in the litigation and secure the "lead plaintiff" and "lead counsel" position. This is evident given that Messrs. Krykhtin and Kanda have no pre-existing relationship, no apparent need to work together, live on two different continents, retained multiple attorneys without negotiating any unified fee agreement, and to date have had barely any interaction with each other. Unquestionably, the group "ha[s] been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel" and therefore "could not be

6

counted on to monitor counsel in a sufficient manner." *Cendant*, 264 F.3d at 267 (citing *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304 (S.D.N.Y. 2001)); *see also Stires v. Eco Science Solutions, Inc.*, Nos. 17-3707(RMB/KMW), et al., 2018 U.S. Dist. LEXIS 25088, at *13 (D.N.J. Feb. 14, 2018) ("It appears to the Court that the Eco Science Investor Group is precisely the type of lawyer-created group the Third Circuit cautioned about in [*Cendant*]"); *Chao Sun v. Han,* Civil Action No. 15-703, 2015 U.S. Dist. LEXIS 64060, at *9 (D.N.J. May 14, 2015) (explaining that "the Third Circuit disapproves of groups that are created by counsel in an effort to satisfy the largest financial loss requirement").

### C.   Mr. Krykhtin Remains Subject to "Unique Defenses" Due to His Status as an "In-and-Out" Trader.

Mr. Krykhtin has produced no explanation for his "in-and-out" trades that, as previously explained by Dr. Werner (Dkt. No. 29-9), he made in the absence of any news from Tingo. Over a short two-week period, right before the Class Period ended, Mr. Krykhtin purchased, sold, repurchased, resold, and repurchased ***hundreds of thousands of Tingo shares*** across his four brokerage accounts. *See* Dkt. No. 29-8. Mr. Krykhtin's trading pattern shows that he was making investment decisions based on abnormalities in the price of Tingo's stock and not any news or material information being disseminated by the company. *See Porzio v. Overseas Shipholding Grp.*, 12 Civ. 7948, et al., 2013 U.S. Dist. LEXIS 14463, at *16 (S.D.N.Y. Feb. 1, 2013) ("Even if the alleged losses [of in-and-out traders] could,

7

on some theory, establish the greatest financial interest, . . . the OSG Investor Group is subject to 'unique defenses that render [them] incapable of adequately representing the class,' thus rebutting any presumptive lead plaintiff status."); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011) ("Having considered the parties' respective arguments, the Court finds that the Fund has failed to demonstrate that it will be an adequate lead plaintiff because it was a total in-and-out trader and may be unable to demonstrate loss causation."); *In re Veeco Instruments, Inc.,* 233 F.R.D. 330, 333-34 (S.D.N.Y. 2005) (investor who sold stock prior to any corrective disclosure would "at the very least, [be] subject to a unique defense").

Relatedly, Mr. Krykhtin's atypical trading strategy suggests that any losses he incurred when selling shares on June 6, 2023 are thus unrecoverable, as he personally did not rely on any alleged false or misleading information when purchasing his shares. *In re Opnext, Inc. Secs. Litig.*, No. 08-920 (JAP), 2008 U.S. Dist. LEXIS 60678, at *10 (D.N.J. Aug. 6, 2008) (finding that a lead plaintiff movant group, where one member who engaged in day trading of the company's stock, did not "meet the 'typicality' requirement" and would be susceptible to unique defenses). The Krykhtin/Kanda group spills considerable ink in an attempt to justify Mr. Krykhtin's sales on June 6, 2023, and to shorten the Class Period to June 5, 2023, but neither of these arguments cure Mr. Krykhtin's lack of reliance

8

on Tingo's statements when he invested in the stock. Defendants will argue that Mr. Krykhtin's in-and-out trading rebuts any showing of reliance on the alleged misstatements in this litigation because it suggests that his trading was driven by a desire to capitalize on relatively short-term fluctuations in the price of Tingo stock, *i.e.*, that he would have engaged in these transactions despite the Defendants' positive statements. *See, e.g., Galmi v. Teva Pharms. Indus.,* 302 F. Supp. 3d 485, 504 n.10 (D. Conn. 2017) ("[G]iven his status as a potential 'day trader,' he may be subject to unique defenses that make him an inappropriate lead plaintiff.").

**D.    The Court Should Reject the Krykhtin/Kanda Group's Belated Argument that the Complaints Contained a "Clerical Error" in the Class Period.**

Both Christopher Arbour and Mark J. Bloedorn commenced actions against the Defendants on June 8, 2023. Their complaints allege a class period ending on "June 6, 2023, inclusive." *See Arbour* Complaint, Dkt. No. 1 ("purchased or otherwise acquired Tingo securities between March 31, 2023 and ***June 6, 2023, inclusive***) (emphasis added); *Bloedorn* Complaint, Dkt. No. 1 ("purchased or otherwise acquired Defendant Tingo Group, Inc. . . . common stock between December 1, 2022 and ***June 6, 2023***, ***inclusive***") (emphasis added). Despite being on notice of the class period end-date for well over four months at this point, the Krykhtin/Kanda group did not seek to amend it at any point prior to now.

9

Referring to the end-date as a "clerical error" (Dkt. No. 31-2 at 23), the Krykhtin/Kanda group attempt to amend the pleadings vis-à-vis their renewed motion for lead plaintiff. This tack, however, is not allowed under the law. Courts to have considered manuevers such as this have rejected them as "gamesmanship." *Topping*, 95 F. Supp. 3d at 618-21 (rejecting effort to rely on additional "corrective disclosure" not pleaded in complaint); *Plaut v. The Goldman Sachs Grp., Inc.,* No. 18-CV-12084 (VSB), 2019 U.S. Dist. LEXIS 160255, at *14-15 (S.D.N.Y. Sep. 19, 2019) (refusing to credit "corrective disclosure" not included in "original complaint"); *Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 U.S. Dist. LEXIS 46082, at *12 (S.D.N.Y. Apr. 5, 2016) ("The Court is hesitant to encourage lead plaintiff movants to file complaints with additional disclosure allegations in the eleventh hour . . . ."); *Gutman v. Sillerman*, No. 15-cv-7192 (CM), 2015 U.S. Dist. LEXIS 179553, at *9 (S.D.N.Y. Dec. 8, 2015) (rejecting movant's attempt to update complaint as "gamesmanship").

Had the Krykhtin/Kanda group been actively monitoring the litigation (as a lead plaintiff should), they could have filed an amended pleading prior to the expiration of the PSLRA's 60-day deadline to correct the "clerical error" their lawyers claim to have identified. No such attempt at amending was made however. To the contrary, the Krykhtin/Kanda group's attorneys have been issuing press releases containing the June 6, 2023 end-date consistently since the commencement

10

of these actions, even after both Messrs. Krykhtin and Kanda signed their certifications and the "joint declaration."[1] Thus, the Court should not allow the Krykhtin/Kanda group to change the class period now, after the 60-day deadline has elapsed (at the potential expense of other class members presently included under the broader class definition).[2]

## III.   CONCLUSION

The Krykhtin/Kanda group fails to establish its "adequacy" under *Cendant* and, in any event, faces "unique defenses" that weigh heavily in favor of denying its

---

[1] Filed herewith is the Supplemental Declaration of Adam M. Apton dated October 24, 2023. Attached as Exhibit B to the Supplemental Declaration is a list identifying the press releases issued by the Krykhtin/Kanda group's counsel containing the June 6, 2023 end-date.

[2] Even if, *arguendo*, one of the lead plaintiff movants had filed a complaint to "correct" the "clerical error," using the most inclusive Class Period at this stage in the proceedings is appropriate. *See MabVax Therapeutics Holdings*, Nos. 18-cv-01160-BAS-NLS, et al., 2018 U.S. Dist. LEXIS 152226, at *12-13 (S.D. Cal. Sept. 6, 2018) ("As a general matter, 'courts usually . . . use the most inclusive class period and select as lead plaintiff the movant with the largest financial interest ***under that period***.") (emphasis added); *see also Miami Police Relief & Pension Fund v. Fusion-io, Inc.,* No.: 13–CV–05368–LHK, 2014 U.S. Dist. LEXIS 80141, at *7 n.3 (N.D. Cal. June 10, 2014) ("For purposes of appointing a lead plaintiff, the longest class period governs."). The Court here should be "'wary of arguments advocating a shorter class period instead of the longest potential class period because it would have the effect of reducing the class size and limiting the potential amount of damages' and [is] likely only advocated because 'it [is] in the best interest of [Krykhtin/Kanda group] only.'" *Deering v. Galena Biopharma, Inc.*, No. 3:14-cv-00367-SI, 2014 U.S. Dist. LEXIS 140766, at *31-32 (D. Or. Oct. 3, 2014) (quoting *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *6 (N.D. Cal. Aug. 22, 2008)).

motion. Mr. Tazaki presents none of these issues. Mr. Tazaki has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. Mr. Tazaki respectfully requests that his motion be granted in its entirety.

Dated: October 24, 2023

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Adam M. Apton*
Adam M. Apton
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Counsel for Shunsei Tazaki and [Proposed] Lead Counsel for the Class*

12