**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
James E. Cecchi
Kevin Cooper
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

*Proposed Liaison Counsel for the*
*Class*

[*Additional counsel on signature page*]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER ARBOUR, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:23-cv-03151-ES-MAH |
| Plaintiff, | (Consolidated with No. 2:23-cv-03151-ES-MAH) |
| v. | Hon. Esther Salas |
| TINGO GROUP, INC., DOZY MMOBUOSI, DARREN MERCER, and KEVIN CHEN, | CLASS ACTION |
| Defendants. | ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE RENEWED MOTION**
**OF PAVEL KRYKHTIN AND PERDEEP KANDA FOR APPOINTMENT AS**
**LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL,**
**AND IN OPPOSITION TO THE COMPETING MOTION**

# TABLE OF CONTENTS

**Page(s)**

I.  PRELIMINARY STATEMENT ................................................................1

II.  ARGUMENT......................................................................................3

 A. Tazaki Fails to Demonstrate That Krykhtin and Kanda Lack the Largest Financial Interest in the Relief Sought by the Class ..................................3

 B. Krykhtin and Kanda Are Not Subject to Unique Defenses.......................9

 C. Krykhtin and Kanda Are Adequate Under *Cendant* ................................12

III.  CONCLUSION ..................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Vitamin Shoppe, Inc.*,
   2018 WL 1960444 (D.N.J. Apr. 25, 2018).......................................................8, 14

*Borenstein v. Finova Grp. Inc.*,
   2000 WL 34524743 (D. Ariz. Aug. 30, 2000) ....................................................2

*Church v. Glencore PLC*,
   2018 WL 6567704 (D.N.J. Dec. 13, 2018)..........................................................2

*Dang v. Amarin Corp. PLC*,
   2022 U.S. Dist. LEXIS 196034 (D.N.J. Oct. 27, 2022) ...................................8, 13

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)..........................................................................................4

*Galmi v. Teva Pharms. Indus. Ltd.*,
   302 F. Supp. 3d 485 (D. Conn. 2017)................................................................12

*Garcia v. J2 Glob., Inc.*,
   2021 WL 1558331 (C.D. Cal. Mar. 5, 2021).......................................................10

*Goines v. Celsius Network, LLC*,
   2023 WL 2945897 (D.N.J. Apr. 14, 2023)..........................................................13

*Gutman v. Sillerman*,
   2015 WL 13791788 (S.D.N.Y. Dec. 8, 2015)......................................................5

*In re Bausch & Lomb Inc. Sec. Litig.*,
   244 F.R.D. 169 (W.D.N.Y. 2007) ......................................................................6

*In re Comverse Tech, Inc. Sec. Litig.*,
   2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007)......................................6

*In re Nuvelo, Inc. Sec. Litig.*,
  2011 WL 13152868 (N.D. Cal. Mar. 24, 2011) ......................................................4

*In re Opnext, Inc.*,
  2008 U.S. Dist. LEXIS 60678 (D.N.J. Aug. 6, 2008) ............................................7

*In re Safeguard,*
  *Scis.*, 216 F.R.D. 577 (E.D. Pa. 2003) ..................................................................6

*In re Snap Inc. Sec. Litig.*,
  2019 U.S. Dist. LEXIS 88379 (C.D. Cal. Apr. 1, 2019) .......................................6

*In re Stitch Fix, Inc. Sec. Litig.,*
  393 F. Supp. 3d 833 (N.D. Cal. 2019)....................................................................15

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)...........................................................5

*In re Veeco Instruments, Inc. Sec. Litig.*,
  235 F.R.D. 220 (S.D.N.Y. Mar. 21, 2006) .............................................................4

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
  2017 WL 2062985 (S.D.N.Y. May 15, 2017) .......................................................10

*Kanefsky v. Honeywell Int'l Inc.*,
  2019 WL 936662 (D.N.J. Feb. 26, 2019) ...............................................................3

*Lawless v. Aurora Cannabis Inc.*,
  2021 WL 2850451 (D.N.J. July 8, 2021) ................................................................7

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
  762 F.3d 1248 (11th Cir. 2014) ..............................................................................5

*Maeshiro v. Yatsen Holding Ltd.*,
  2023 WL 4684106 (S.D.N.Y. July 21, 2023)..........................................................9

*Maliarov v. Eros Int'l PLC*,
  2016 U.S. Dist. LEXIS 46082 (S.D.N.Y. Apr. 5, 2016) ........................................6

iii

*Montesano v. Eros Int'l PLC*,
2020 WL 1873015 (D.N.J. Apr. 14, 2020)...............................................................8

*Nasin v. Hongli Clean Energy Techs. Corp.*,
2017 WL 5598214 (D.N.J. Nov. 21, 2017) ...........................................................8

*Pope v. Navient Corp.*,
2018 WL 672640 (D.N.J. Feb. 2, 2018) ................................................................9

*Rodriguez v. Draftkings Inc.*,
2021 U.S. Dist. LEXIS 219489 (S.D.N.Y. Nov. 12, 2021)...................................12

*Rubenstahl v. Philip Morris Int'l, Inc.*,
2019 U.S. Dist. LEXIS 23309 (D.N.J. Feb. 13, 2019) ..........................................7

*Sapir v. Averback*,
2015 WL 858283 (D.N.J. Feb. 26, 2015) .............................................................2

*Sklar v. Amarin Corp.*,
2014 WL 3748248 (D.N.J. July 29, 2014) .......................................................6, 9

*Takata v. Riot Blockchain, Inc.*,
2018 WL 5801379 (D.N.J. Nov. 6, 2018) ...........................................................15

*Tan v. NIO Inc.*,
2020 U.S. Dist. LEXIS 36623 (E.D.N.Y. Mar. 3, 2020)......................................15

*Topping v. Deloitte Touche Tohmatsu CPA*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015) ....................................................................6

*Valeant Pharm. Int'l, Inc. v. AIG Ins. Co. of Canada*,
2021 WL 7903694 (D.N.J. June 28, 2021)............................................................4

*Wilson v LSB Indus., Inc.*,
2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018).......................................................9

**Statutes**

15 U.S.C. § 78u4(a)(3).................................................................................2, 12

Krykhtin and Kanda respectfully submit this memorandum of law in further support of their renewed motion for appointment as Lead Plaintiff (ECF No. 31).[1]

## I.   <u>PRELIMINARY STATEMENT</u>

Krykhtin and Kanda should be appointed as Lead Plaintiff because they have established that they have the largest financial interest in this action and that they satisfy the typicality and adequacy requirements of Rule 23. Krykhtin and Kanda have the largest financial interest under all three factors articulated by the Third Circuit in *In re Cendant Corp. Litig.* Their combined $1.179 million LIFO loss—and even Krykhtin's $787,135 LIFO loss standing alone—dwarfs the $514,912 LIFO loss claimed by the only remaining movant, Tazaki, and they also purchased more total shares and expended more net funds on both a collective and, for Krykhtin, individual basis than Tazaki. *See* ECF 31-2 at 13. Moreover, Krykhtin and Kanda's submissions demonstrate that they are a proper group dedicated to vigorously prosecuting the action on behalf of all Class members.

Faced with the reality that the PSLRA mandates Krykhtin and Kanda's appointment, Tazaki does not provide proof of Krykhtin and Kanda's purported atypicality or inadequacy, as required by *Cendant.* 264 F.3d 201, 268 (3d Cir. 2001). To the contrary, Tazaki resorts to exploiting an undisputed pleading error (that ends

---

[1] Unless otherwise noted, all capitalized but undefined terms have the meanings ascribed in Krykhtin and Kanda's opening brief (ECF No. 31-2), all emphasis is added, and internal quotations and citations are omitted.

the Class Period on June 6 instead of June 5, 2023)[2] to argue that Krykhtin and Kanda "artificially inflated" their combined loss, ignores *Cendant* and urges the Court to adopt an unprecedented "rule" requiring a preexisting relationship to aggregate individuals' losses, and speculates that Krykhtin's trading may expose him to a unique reliance defense and that his losses from his June 6 sales following the disclosure at the end of the Class Period may be "unrecoverable."

These arguments do not constitute the "***proof***" required by the PSLRA to rebut the presumption in favor of Krykhtin and Kanda.   15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb); *see also Sapir v. Averback*, 2015 WL 858283, at *2 (D.N.J. Feb. 26, 2015)  ("The presumptive lead plaintiff must be appointed unless it is proven that the movant will not satisfy the typicality and adequacy requirements of Rule 23"); *Church v. Glencore PLC*, 2018 WL 6567704, at *3 (D.N.J. Dec. 13, 2018) (same). Rather than undercutting Krykhtin and Kanda, these baseless arguments reveal it is ***Tazaki*** who should be disqualified because he is unwilling to represent the interests of ***all*** Class members, including those like Krykhtin who sold their shares following the premarket publication of the Hindenburg Report on June 6, 2023.[3]

---

[2] Krykhtin and Kanda noted this error in their original motion and reply, as well as their renewed motion.  *See, e.g.*, ECF Nos. 7-1 at 10 n.5, 20 at 8-13, 31-2 at 6 n.2.

[3] *See, e.g.*, *Borenstein v. Finova Grp. Inc.*, 2000 WL 34524743, at *8 (D. Ariz. Aug. 30, 2000) (rejecting movants who sought to exclude securities from the class because their appointment "would pose a significant risk that the complete interests of all class members would not be fairly and adequately protected").

2

## II.   ARGUMENT

### A.   Tazaki Fails to Demonstrate That Krykhtin and Kanda Lack the Largest Financial Interest in the Relief Sought by the Class

Krykhtin and Kanda have the largest financial interest in the relief sought by the Class: a recovery for losses suffered by Class members (purchasers and acquirers of Tingo securities at artificially inflated prices) when the price of Tingo securities declined after Tingo's alleged misrepresentations were revealed in the Hindenburg Report published "at approximately 9:00 AM E[D]T on June 6, 2023" (*Bloedorn* complaint, ECF No. 1 ¶¶ 55-56), *i.e.*, **before** the Nasdaq Capital Market opened at 9:30 AM Eastern Time.[4]   Tazaki does not dispute that the only alleged corrective disclosure, the Hindenburg Report, occurred in the premarket, before trading opened on June 6, 2023.  *See* ECF No. 31-11 at 2 (reflecting June 6, 2023, 9:06:37 AM EDT time stamp on Bloomberg news report about the Hindenburg Report prompting "[s]hares of Tingo Group [to] fall 26% in **premarket trading**").  Tazaki also does not dispute that a movant's claimed loss is the most important factor in determining the presumptive lead plaintiff, *Kanefsky v. Honeywell Int'l Inc.*, 2019 WL 936662, at *1 (D.N.J. Feb. 26, 2019), nor that Krykhtin and Kanda's $1.179 million claimed loss is more than double Tazaki's $514,912 claimed loss.  Rather, Tazaki seizes on a pleading error to contend that Krykhtin and Kanda have a gain, not a loss, because

---

[4] *See Trading Hours for Nasdaq*, NASDAQ, https://www.nasdaq.com/stock-market-trading-hours-for-nasdaq (last visited Oct. 24, 2023).

the pled class period ends on June 6, not June 5.  ECF No. 29-1 ("Tazaki Mot.") at 15-18.  This is pure nonsense, untethered from fact or law.

Class periods end when curative information enters the market, when artificial inflation is removed from the stock price, damaging investors.  *Valeant Pharm. Int'l, Inc. v. AIG Ins. Co. of Canada*, 2021 WL 7903694, at *28 (D.N.J. June 28, 2021) ("[T]he class period should end when curative information is publicly announced or otherwise effectively disseminated to the market"); *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 241 (S.D.N.Y. Mar. 21, 2006) (explaining that the class period ends the day before the revelation that caused stock decline).  After a corrective disclosure reveals a fraud, the relevant security is no longer artificially inflated by misrepresentations.  Under *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), class members recover damages for losses incurred on shares bought during a class period and ***held through*** corrective disclosures.  *See In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 13152868, at *8 (N.D. Cal. Mar. 24, 2011) (explaining that only shares purchased during the class period and "held at the time of the corrective disclosure have suffered [recoverable] damages" because "only those losses were proximately caused by corrective disclosures relating to. . ." the misrepresentations).

Here, the only corrective disclosure is the premarket publication of the Hindenburg Report, which triggered a massive decline in Tingo's stock price, with the stock trading down at the open of trading on June 6, 2023.  *See* ECF No. 31-11

4

at 3.  Tingo's stock closed down more than 48% that day, falling from a close of $2.55 per share on June 5 to a close of $1.32 per share on June 6.  *See* ECF No. 31-12 at 2.  As a matter of law, the Class Period must end no later than June 5, 2023, the last trading day prior to the corrective disclosure, ***irrespective of the error in the initial complaint***.  *See Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1261 (11th Cir. 2014) (vacating certified class period end date of January 20, 2009 "because [the] corrective disclosure on January 20 was made ***before the market opened*** for trading"), 2014 WL 6661918, at *10 (N.D. Ala. Nov. 19, 2014) (on remand, certifying a class period ending on January 19, the last trading day before the corrective disclosure); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *8, 13 (S.D.N.Y. Nov. 7, 2007) (finding when corrective disclosure took place in the premarket on February 11, 2005, *Dura* permits recovery for investors "***only if they bought shares during the Class Period and sold them after the Class Period ended on February 10, 2005***").

The relevant question is not whether the "complaints on file define the Class Period as ending on 'June 6, 2023, inclusive[,]'" Tazaki Mot. at 17-18, but rather whether Krykhtin and Kanda or Tazaki have a greater loss based on shares ***held through*** the premarket corrective disclosure.  *See Gutman v. Sillerman*, 2015 WL 13791788, at *4 (S.D.N.Y. Dec. 8, 2015) (explaining that a movant's recoverable loss consists of shares held through disclosure of fraud).  Tazaki does not dispute

that Krykhtin and Kanda held Tingo securities through the solitary corrective disclosure—arguing only that Krykhtin did not hold through the balance of the pleaded Class Period.[5]  However, even Tazaki's authorities, Tazaki Mot. at 15-18, reflect that movants like Krykhtin and Kanda, who sell their shares following a corrective disclosure, are damaged by such a disclosure and properly calculate their loss by including shares held through it, even if the shares are subsequently sold. *See Sklar v. Amarin Corp.*, 2014 WL 3748248, at \*9 n.8 (D.N.J. July 29, 2014) (appointing movant who "completely divested his interest . . . twice[,]" reinvested, and held shares at the time of corrective disclosures).[6]

---

[5] As there is no dispute that Krykhtin and Kanda held shares through the disclosure, Tazaki's argument that Krykhtin held zero shares at the end of the Class Period is moot, and Tazaki's authorities, Tazaki Mot. at 32-33, are inapt.  *See*, *e.g.*, *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173-74 (W.D.N.Y. 2007) (rejecting movant that profited from bond transactions that offset stock losses); *In re Snap Inc. Sec. Litig.*, 2019 U.S. Dist. LEXIS 88379, at \*10 (C.D. Cal. Apr. 1, 2019) (rejecting movant that "sold all of its stock prior to" corrective disclosure); *In re Safeguard Scis.*, 216 F.R.D. 577, 582 (E.D. Pa. 2003) (declining to appoint day trader as class representative because he "increased his holdings" after disclosure of fraud).

[6] *See also Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 618 (S.D.N.Y. 2015) (denying lead plaintiff motion because movant "did not own any shares . . . during or after the initial . . . disclosure" and suffered no losses attributable to the fraud); *Maliarov v. Eros Int'l PLC*, 2016 U.S. Dist. LEXIS 46082, at \*9 (S.D.N.Y. Apr. 5, 2016) (denying motion of movant who "sold all of his . . . shares . . . ten days before" disclosure of the fraud); *In re Comverse Tech, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at \*22 & n.9 (E.D.N.Y. Mar. 2, 2007) (finding that movant's loss is limited to its recoverable losses, "*i.e.*, losses it sustained from selling . . . shares at reduced prices after . . . the earliest corrective disclosures").

Although Krykhtin and Kanda did not need to aggregate their losses for Krykhtin to claim the largest loss, Tazaki argues that the "rule" barring aggregation of "group losses of individuals with no pre-existing relationship other than a perfunctory introduction through counsel . . . applies with force." Tazaki Mot. at 16. There is no such rule. *Cendant* cautioned against groups that "could not be counted on to monitor counsel in a sufficient manner" but explicitly precluded a rule barring aggregation of unrelated individuals' losses. 264 F.3d at 266 ("[W]e disagree with those courts that have held that the statute invariably precludes a group of 'unrelated individuals' from serving as a lead plaintiff. . . . The statute contains no requirement mandating that the members of a proper group be 'related' in some manner").[7]

Since *Cendant*, courts in this District have routinely appointed small groups of unrelated individuals, including pairs like Krykhtin and Kanda, under circumstances where, like here: (1) they submit joint declarations attesting to their ability and desire to act as fiduciaries for the Class; (2) there is no proof of inadequacy; and (3) group members' losses are comparable to or larger than competing movants' losses. *See, e.g., Lawless v. Aurora Cannabis Inc.*, 2021 WL

---

[7] Tazaki's other authorities on financial interest, Tazaki Mot. at 15-16, are either inapposite or support Krykhtin and Kanda's motion. *See In re Opnext, Inc.*, 2008 U.S. Dist. LEXIS 60678, at *7 (D.N.J. Aug. 6, 2008) ("the PSLRA permits a 'group of persons' to serve as Lead Plaintiff, and there is no limitation that the group include 'related individuals'"); *Rubenstahl v. Philip Morris Int'l, Inc.*, 2019 U.S. Dist. LEXIS 23309, at *11 (D.N.J. Feb. 13, 2019) (appointing unchallenged movant).

2850451, at *5 (D.N.J. July 8, 2021) (appointing "relatively small" group of three unrelated individuals, finding joint declaration showed the group "does not appear to fit the mold of the 'lawyer-driven group' that the [*Cendant*] Court cautioned against"); *Montesano v. Eros Int'l PLC*, 2020 WL 1873015, at *10 (D.N.J. Apr. 14, 2020) (appointing group of two unrelated entities where "the only opposing movant . . . has provided no proof [of inadequacy]'"); *Aguilar v. Vitamin Shoppe, Inc.*, 2018 WL 1960444, at *11 (D.N.J. Apr. 25, 2018) (appointing group of three unrelated individuals where one individual "standing alone" had a larger loss than the competing movant, which "eases concerns about plaintiffs coming together solely to aggregate losses"); *Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214, at *4 (D.N.J. Nov. 21, 2017) (appointing group of five unrelated individuals).[8]   For all of these reasons, the Court should give no weight to Tazaki's attempts to diminish the financial interest of Krykhtin and Kanda.[9]

---

[8] Tazaki's only authority on this point, Tazaki Mot. at 16, is distinguishable and supports Krykhtin and Kanda's appointment because Krykhtin's claimed loss alone well exceeds that of Tazaki.  *See Dang v. Amarin Corp. PLC*, 2022 U.S. Dist. LEXIS 196034, at *19-20 (D.N.J. Oct. 27, 2022) (explaining that concerns about aggregation of losses are eased when "one of the individuals in [a] movant group 'standing alone' ha[s] a larger financial loss that the competing movant").

[9] Tazaki cites no precedent supporting his concern about inconsistent dates in Kanda's certification and loss chart for a sale in the Denise Kanda ISA account. Tazaki Mot. at 17 n.2.  As explained in Kryhtin and Kanda's original Reply (ECF No. 20 at 16 n.4) and Renewed Motion (ECF No. 31-2 at 7 n.3), the discrepancy is

(*footnote continued on next page*)

### B.  Krykhtin and Kanda Are Not Subject to Unique Defenses

Tazaki does not dispute that Krykhtin and Kanda acquired Tingo shares at artificially inflated prices during the Class Period and held shares **through** the premarket publication of the Hindenburg Report on June 6, 2023, the only corrective disclosure, which prompted a dramatic decline in the price of Tingo securities. Krykhtin and Kanda satisfy Rule 23's typicality requirement because they suffered the same injuries as a result of the same course of conduct by Defendants, and their claims are based on the same legal issues as the rest of the Class. *See Pope v. Navient Corp.*, 2018 WL 672640, at \*4 (D.N.J. Feb. 2, 2018).  Still, Tazaki speculates that Krykhtin is atypical as an "in-and-out trader" exposed to the unique defense of reliance.  Tazaki Mot. at 26.  This is another argument lacking basis in fact or law.

By definition, Krykhtin is not an in-and-out trader because he held Tingo shares through the premarket corrective disclosure on June 6, 2023, whereas "in-and-out traders are those who both purchase and **sell all of their shares prior to a corrective disclosure**." *Sklar*, 2014 WL 3748248, at \*9 n.8; *see also Wilson v LSB Indus., Inc.*, 2018 WL 3913115, at \*6 (S.D.N.Y. Aug. 13, 2018) (same).  Since Krykhtin held shares through the only corrective disclosure, there is no concern that

---

a clerical error that mistakenly listed the settle date instead of the transaction date on the certification—and does not change the loss calculation.  "Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties." *Maeshiro v. Yatsen Holding Ltd.*, 2023 WL 4684106, at \*9 (S.D.N.Y. July 21, 2023).

Krykhtin's trading was "divorced from any disclosures by Tingo[,]" Tazaki Mot. at 29,[10] because Krykhtin is presumed to have relied on the same misrepresentations as the rest of the Class. *See In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2017 WL 2062985, at \*3 (S.D.N.Y. May 15, 2017) (rejecting argument that lead plaintiff that sold out completely was atypical because "it held . . . shares through [a] corrective disclosure, which subjects it to the same wrongful acts as the remainder of the class"). The fact that Krykhtin bought and sold throughout the Class Period is of no moment whatsoever, as "buying and selling shares throughout the class period is not atypical in a class that contains . . . numerous sophisticated investors." *Id.*[11]

---

[10] Similarly, Krykhtin is not subject to a unique defense for selling Tingo shares after publication of the Hindenburg Report—as opposed to a Tingo disclosure—because it is well-established that short-seller reports, including from Hindenburg Research, may constitute corrective disclosures that establish loss causation. *See Garcia v. J2 Glob., Inc.*, 2021 WL 1558331, at \*6 (C.D. Cal. Mar. 5, 2021).

[11] Dr. Werner's declaration, Tazaki Mot. at 29, does not serve as "proof" of anything about Krykhtin's typicality. The declaration contains no opinion, based on accepted models of financial analysis or otherwise. The declaration merely states: "[O]ther than [an] article on May 17, 2023, I did not identify any new information that was disseminated [from May 16, 2023 through June 5, 2023] that would also satisfy all conditions of being Tingo-specific, valuation-relevant, and economically material." *See* ECF No. 29-9 ¶ 13. Dr. Werner did not analyze: (i) all information disseminated during the Class Period, including from December 1, 2022 through May 15, 2023; (ii) the alleged misrepresentations upon which Krykhtin and Kanda are presumed to have relied; or (iii) the Hindenburg Report published June 6. As such, Dr. Werner's declaration does not support Tazaki's speculation that Krykhtin traded "based on abnormalities in the price of Tingo's stock and not any news or material information" issued by Tingo, Tazaki Mot. at 29, as it is typical for sophisticated investors to buy and sell shares throughout the Class Period. *Virtus*, 2017 WL 2062985, at \*3.

10

The authorities cited by Tazaki, Tazaki Mot. at 29, are readily distinguishable because Krykhtin is ***not*** an in-and-out trader. *Porzio v. Overseas Shipholding Grp.* held that two members of a movant group were "'in and out' traders," subject to unique defenses because they sold shares "before the corrective disclosure" and did not hold shares through the disclosure. 2013 U.S. Dist. LEXIS 14463, at *15-16 (S.D.N.Y. Feb. 1, 2013). *Bensley v. FalconStor Software, Inc.* disqualified a movant fund that "sold all of its shares and incurred all of its losses during the Class Period, but before the [final] revelation of fraud." 277 F.R.D. 231, 240-41 (E.D.N.Y. 2011). *In re Veeco Instruments, Inc.* disqualified a movant fund that "sold all its stock . . . prior to the issuance of the curative disclosure." 233 F.R.D. 300, 333-34 (S.D.N.Y.). The holdings in *Basic*[12] and *Semerenko*,[13] Tazaki Mot. at 30, do not implicate Defendants' ability to rebut the fraud-on-the-market presumption, because there is no alleged curative disclosure other than the Hindenburg Report. Nor is there any evidence of any information otherwise disseminated to the market that implicates

---

[12] *Basic Inc. v. Levinson* offers several inapplicable examples of when defendants may "sever[] the link" between misrepresentations and the price paid or received by plaintiffs or their "decision to trade at a fair market price," including if "market makers were privy to the truth[,]" the truth "entered the market and dissipated the effects of the misstatements," or plaintiff believed the statements were false "but sold his shares because of other unrelated concerns." 485 U.S. 224, 248-49 (1988).

[13] *Semerenko v. Cendant Corp.* explains that the fraud on the market presumption may be rebutted if the "plaintiff did not actually rely on the market price when making his or her investment decision." 223 F.3d 165, 179 (3d Cir. 2000).

Krykhtin's reliance on the integrity of the market price for Tingo securities at the time of his pre-corrective disclosure purchases or post-corrective disclosure sales.[14]

## C.   Krykhtin and Kanda Are Adequate Under *Cendant*

The PSLRA unambiguously states that a "group of persons" can serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  The Third Circuit equally makes clear that "[t]he PSLRA explicitly permits 'a group of persons'" to serve as lead plaintiff." *Cendant*, 264 F.3d at 266.  Yet, Tazaki argues Krykhtin and Kanda are not adequate under *Cendant* because the two investors comprise "too large" of a group to adequately represent the Class and their joint declaration is deficient.  Tazaki Mot. at 23-25.  This last-ditch attack is also divorced from fact and law.

Tazaki's argument fails because he presents no challenge to the validity of the assignment of claims from Mr. Kanda's wife and two children to Mr. Kanda.  *See* ECF No. 31-6.  Mr. Kanda is "authorized to seek recovery of investment losses incurred" by his wife and children, and he and his family based their decisions to invest in Tingo on Mr. Kanda's "own research of publicly available information, including news and research reports, as well as Tingo's promise of improvements in

---

[14] Tazaki's other authorities, Tazaki Mot. at 30-31, are distinguishable because Tazaki does not argue, nor is there evidence to suggest, that Krykhtin is a day trader. *See Rodriguez v. Draftkings Inc.*, 2021 U.S. Dist. LEXIS 219489, at *28-30 (S.D.N.Y. Nov. 12, 2021) (rejecting movant in part because he was a self-admitted short-seller and day trader); *Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 504 n.10 (D. Conn. 2017) (declining to exercise discretion to consider movant that "did not individually move to be appointed" because he was a day trader).

12

African technological progress." *See* ECF No. 31-7 ¶ 6.  Tazaki's concern about Mr. Kanda's family's possession of "relevant documents and information[,]" Tazaki Mot. at 24, is unfounded, as Tazaki does not dispute that Mr. Kanda's wife and children have transferred all rights and title to prosecute all causes of action relating to their transactions in Tingo securities.  *See* ECF No. 31-2 at 7 n.4.

Thus, Krykhtin and Kanda remain a group of two, not five as Tazaki implies. But even if they comprised a group of five, *Cendant* and its progeny support their appointment.  *See Cendant*, 264 F.3d at 267 ("courts should generally presume that groups with **more than five** members are too large to work effectively"); *Goines v. Celsius Network, LLC*, 2023 WL 2945897, at *6 (D.N.J. Apr. 14, 2023) (finding no concern where group "comprises just five members").  *Dang*, Tazaki's sole authority, is inapposite.  Tazaki Mot. at 24-25.[15]  *Dang* focused on "the fact that the individual financial losses" of a group of five "are significantly lower than those of the other individual movants[, which] suggests that the group was formed to aggregate individual financial losses."  2022 U.S. Dist. LEXIS 196034, at *18-19. *Dang* also distinguished the rejected group from those in *Aguilar* and *Lawless,* whose groups comprised three members, "too small to raise such concerns."  *Id.* at

---

[15] Tazaki also argues *Dang* supports rejection of groups with "minimal" preexisting relationships.  Tazaki Mot. at 24.  As discussed, *see supra* II.A, there is no rule requiring a preexisting relationship between movant group members, and courts in this District regularly appoint groups whose members lack a preexisting relationship.

13

*25.  Tazaki ignores that Krykhtin's $787,135 claimed loss alone dwarfs Tazaki's $514,912 claimed loss, and Krykhtin and Kanda comprise just two members.[16]

Tazaki also argues, Tazaki Mot. at 23, that Krykhtin and Kanda's joint declaration is deficient, they do not "adhere" to *Cendant*, and they were formed at the suggestion of counsel "to amass the 'largest financial interest.'"  Under *Cendant*, however, the sole calculus is whether Krykhtin and Kanda "would fairly and adequately protect" Class interests.  264 F.3d at 266-67.  Krykhtin has the largest individual loss, which "eases concerns about plaintiffs coming together solely to aggregate losses." *Aguillar*, 2018 WL 1960444, at *11.  Krykhtin and Kanda have sworn that they "independently determined" to maximize the Class's recovery, by seeking appointment as Lead Plaintiff, through their "ability to share and combine resources."  *See* ECF No. 31-7 ¶ 14.  Krykhtin and Kanda have also sworn they were both aware of each other's interest in leading the case, considered the benefits and drawbacks of proceeding alone or together, and after weighing their options with counsel and each other, decided to file a joint motion.  *Id.* ¶ 15.

---

[16] Neither *Chao Sun* nor *Stires* (cited in *Dang*, Tazaki Mot. at 24) are on point.  *Chao Sun v. Han* disqualified a movant whose members' declaration "does not mention any contact" between them.  2015 U.S. Dist. LEXIS 64060, at *10 n.1, 13 (D.N.J. May 14, 2015).  Krykhtin and Kanda convened a conference call before moving for appointment to discuss, among other things, their ability, incentive, and dedication to representing Class interests through mutual oversight of proposed lead counsel.  ECF No. 31-7 ¶ 17.  *Stires v. Eco Sci. Sols., Inc.* disqualified a movant whose five members did not meet or hold a conference call until over a week ***after*** moving for appointment.  2018 U.S. Dist. LEXIS 25088, at *15 (D.N.J. Feb. 13, 2018).

14

Indeed, movants must "show their cohesiveness and independence from proposed counsel, including" by detailing "how and when they were joined together, how they intend to conduct discovery or how they will coordinate litigation efforts and strategy." *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379, at \*5 (D.N.J. Nov. 6, 2018). Krykhtin and Kanda have done so, including by taking steps "to preserve documents related to [their] investments" and affirming their intent to share their perspectives, experiences, and resources to "direct this litigation[,]" their commitment "to reach consensus" and to fulfill their "fiduciary obligation to the Class[,]" and their agreement that Krykhtin, given his larger financial interest, has "ultimate authority" if consensus is not reached. *See* ECF No. 31-7 ¶ 11, 18-19.[17]

## III.  CONCLUSION

Because Krykhtin and Kanda have the largest financial interest in the relief sought by the Class and otherwise qualify as the most adequate Lead Plaintiff under the PSLRA, their motion should be granted, and Tazaki's motion should be denied.

---

[17] Neither of Tazaki's authorities, Tazaki Mot. at 23-24, support his argument that Krykhtin and Kanda are inadequate given that they "independently determined" to group together to maximize the Class's recovery. *See* ECF No. 31-7 ¶¶ 14-15; *see also Tan v. NIO Inc.*, 2020 U.S. Dist. LEXIS 36623, at \*12 (E.D.N.Y. Mar. 3, 2020) (rejecting movant group with five members who "concede[d] that" another movant had the largest individual loss); *In re Stitch Fix, Inc. Sec. Litig.,* 393 F. Supp. 3d 833, 835 (N.D. Cal. 2019) (holding that unrelated investors cannot aggregate their losses where their "relationship and group status were forged only by a lawyer").

15

Dated: October 24, 2023　　　　Respectfully submitted,

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**

By: */s/ James E. Cecchi*
James E. Cecchi
Kevin Cooper
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

*Proposed Liaison Counsel for the Class*

**SAXENA WHITE P.A.**
Lester R. Hooker (*pro hac vice* forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
lhooker@saxenawhite.com

-and-

Marco A. Dueñas (*pro hac vice* forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 216-2220
mduenas@saxenawhite.com

*Counsel for Proposed Lead Plaintiff Pavel Krykhtin and Perdeep Kanda, and Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac vice* forthcoming)
2049 Century Park East, Suite 2460

16

Los Angeles, CA 90067
Tel.: (310) 301-3335
brian@schallfirm.com

*Additional Counsel for Proposed Lead*
*Plaintiff Pavel Krykhtin and Perdeep Kanda*

17

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 24, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

*/s/ James E. Cecchi*
James E. Cecchi
