UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **CHRISTOPHER ARBOUR**, *Individually and on Behalf of All Others Similarly Situated*, | : : : : | Civil Action No. 23-3151 (ES) (MAH) |
| Plaintiff, | : : | |
| v. | : : : | |
| **TINGO GROUP, INC.**, et al., | : : | |
| Defendants. | : : : | |
| **MARK J. BLOEDORN**, *Individually and on behalf of All Others Similarly Situated*, | : : : : | Civil Action No. 23-3153 (ES) (MAH) |
| Plaintiff, | : : | |
| v. | : : : | **OPINION** |
| **TINGO GROUP, INC.**, et al., | : : | |
| Defendants. | : : : | |

**I.  INTRODUCTION**

This matter comes before the Court on the competing motions of Plaintiff Shunsei Tazaki ("Tazaki") and Plaintiffs Perdeep Kanda & Pavel Krykhtin ("Kanda & Krykhtin") to appoint lead plaintiff and lead counsel. *See generally* Mot. to Appoint Tazaki as Lead Pl., D.E. 29; Mot. to Appoint Kanda & Krykhtin as Lead Pl., D.E. 31. On October 24, 2023, the movants opposed the respective motions. *See generally* Tazaki Opp'n, D.E. 35; Kanda & Krykhtin Opp'n, D.E. 37. Pursuant to 28 U.S.C. § 636 and Local Civil Rule 73.1, the parties have consented to the Undersigned's jurisdiction to rule on the motions. *See* Consent to Magistrate Jurisdiction, Nov. 7,

2023, D.E. 46. The Undersigned has considered the briefs submitted in support of, and in opposition to, the motions without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons set forth below, Kanda's & Krykhtin's motion, D.E. 31, is **granted**, and Tazaki's motion, D.E. 29, is **denied.**

## II. BACKGROUND

This consolidated class action arises out of Defendants Tingo Group, Inc.'s ("Tingo"), and certain Tingo officers' alleged violations of the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1] Plaintiffs allege that Tingo, a fintech and agri-fintech holding company, made material misrepresentations to its investors during the relevant class periods of December 1, 2022 to June 6, 2023 and March 31, 2023 to June 6, 2023. Compl., D.E. 1, at ¶¶ 2-4. These alleged misrepresentations included false operating margins, fake projected quarterly reports, and fraudulent point of sale systems. *Id.* at ¶¶ 4,7. Tingo's purported misstatements came to light on June 6, 2023, before trading opened, by a Hindenburg Research report titled "Tingo Group: Fake Farmers, Phones, and Financials—The Nigerian Empire That Isn't." *Id.* at ¶¶ 3-5. Following release of the report, Tingo's stock price fell approximately forty-eight percent between June 5, 2023 and the close of June 6, 2023. Plaintiffs allege the fall in stock price caused them to suffer significant losses and damages. *Id.* at ¶¶ 6, 8.

On August 7, 2023, movants timely filed their initial motions for lead plaintiff and lead counsel. The Court directed them to meet and confer in an effort to amicably resolve selection.

---

[1] On September 28, 2023, *Bloedorn v. Tingo Group, Inc., et al.*, Civ. No. 23-3153 was consolidated with this action. *See* Order on Consolidation, D.E. 25. The class period in *Bloedorn* is December 1, 2022 to June 6, 2023. 23-3153, Compl., D.E. 1, at ¶ 1. The class period listed in the *Arbour v. Tingo Group, Inc., et al.*, Civ. No. 23-3151 ("the Arbour Action") is March 31, 2023 to June 6, 2023. 23-3151, Compl., D.E. 1, at ¶ 1. Any references to docketed items throughout this Opinion is to the Arbour Action unless explicitly stated.

*See* Order, Sept. 29, 2023, D.E. 26. However, the movants were unsuccessful. *See* Joint Ltr., Oct. 10, 2023, D.E. 27. Accordingly, the Court ordered a briefing schedule to determine the instant motions. *See* Order, Oct. 11, 2023, D.E. 28. On October 16, 2023, both movants filed the instant renewed dueling motions for appointment of lead plaintiff and counsel. *See generally* Mot. to Appoint Tazaki as Lead Pl., D.E. 29; Mot. to Appoint Kanda & Krykhtin as Lead Pl., D.E. 31. On October 24, 2023, the movants filed their opposition to each other's respective motions. *See generally* Tazaki Opp'n, D.E. 35; Kanda & Krykhtin Opp'n, D.E. 37. No reply briefs were submitted, as agreed to by the movants. Joint Ltr., Oct. 10, 2023, D.E. 27, at 1. Both movants argue they can best serve the class as lead plaintiff and possess the largest financial interest in the matter.

### III. ANALYSIS[2]

#### A. Lead Plaintiff

The PSLRA governs the appointment of the lead plaintiff in "each private action arising

---

[2] Before a court determines a motion to appoint lead plaintiff "it has an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff, the plaintiff with the largest financial stake in the outcome of the litigation, to come forward and take control of the litigation." *Lewis v. Lipocine Inc.*, No. 16-4009, 2016 WL 7042075, at *3 (D.N.J. Dec. 2, 2016) (quoting *Lifestyle Investments, LLC v. Amicus Therapeutics, Inc.*, No. 15-7448, 2016 WL 3032684, at *4 (D.N.J. May 26, 2016)). The PSLRA requires that, "[n]o more than 20 days after the complaint is filed, notice must be published in a national business publication or wire service; it must describe the members of the purported class, pendency of the action, claims asserted, and class period." *Biondolillo v. Roche Holding AG*, No. 17-04056, 2017 WL 4220332, at *2 (D.N.J. Sept. 22, 2017) (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)). "Notice should also 'inform putative class members that they have the right to move the district court to serve as lead plaintiff in the class action.'" *Id.* (quoting *Lewis*, 2016 WL 7042075, at *3). Here, notice was published on June 8, 2023 in the Business Wire, the same day the Complaint was filed. *See* Published Notice, Ex. C, D.E. 29-1; *See* Published Notice, Ex. E, D.E. 31-8. The notice informed putative class members of the pendency of the action, the claims asserted, the time period of the action, and their right to move the court to serve as lead plaintiff. No movant contests the sufficiency of the notice. Accordingly, the Court finds that the published notice satisfies the requirements of the PSLRA.

under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). The PSLRA directs courts to adopt a rebuttable presumption that "the most adequate plaintiff is the person or group of persons that has (1) either filed the complaint or made a motion in response to the notice to the class; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23." *Lewis*, 2016 WL 7042075, at *4.

Rule 23 requires that the parties seeking to represent a class (1) have claims or defenses that are typical of the claims or defenses of the class, (the "typicality requirement") and (2) be able to fairly and adequately protect the interests of the class, (the "adequacy requirement"). *See* Fed. R. Civ. P. 23(a); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262-63 (3d Cir. 2001), *cert. denied sub nom.*, 535 U.S. 929 (2002); *Lewis*, 2016 WL 7042075, at *4. A more thorough analysis later occurs at the class certification stage.

"Once a presumptive lead plaintiff is located, the court should then turn to the question [of] whether the presumption has been rebutted." *In re Cendant*, 264 F.3d at 268. The presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, the analysis does not turn on "whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff." *In re Cendant*, 264 F.3d at 268 (citation omitted; alterations in original). Rather the question turns on whether "anyone can prove that the presumptive lead plaintiff will not do a 'fair[ ] and adequate[ ]' job." *Id.*

4

### i. Largest Financial Requirement

Each movant contends that they possess the largest financial interest in the relief sought by this class. Tazaki contends that he purchased 160,015 Tingo shares; expended $750,826 in funds; and has a claims loss of $514,913. Memo. In Supp. of Mot. to Appoint Tazaki as Lead Pl., D.E. 29-1, at 11. According to Tazaki, he has a larger financial interest than Kanda and Krykhtin, who purchased 61,924 Tingo shares; expended $1,346,508 in funds; and received a $346,789 gain. *Id.* at 11. Tazaki concedes his calculations for Kanda and Krykhtin are not an aggregation of the losses between the two movants because they are unrelated and live in separate countries. *Id.* at 11-12. Tazaki also contends that in actuality the Kanda & Krykhtin group consists of five members, because Kanda's family members assigned their rights to him. *Id.* at 19. Tazaki argues that even if the Court accepted aggregation, Kanda's and Krykhtin's losses are improperly calculated because all of Krykhtin's claimed losses are attributable to shares sold before the end of the class period. *Id.* at 12. Therefore, Tazaki argues the Kanda and Krykhtin group actually possesses a gain of $346,789. D.E. 29-1, at 12. Further, Tazaki contends that this Court should reject any argument that the Complaint contains a clerical error, of the class period end date, and should rather view the argument as an attempt of gamesmanship. *Id.* at 13; D.E. 29-1, at 13; Tazaki Opp'n, D.E. 35, at 9.

Kanda & Krykhtin also contend that their aggregated claims demonstrate the largest financial interest in the action. According to Kanda and Krykhtin, collectively they have purchased a total of 1,632,463 shares; expended $2,51,385 in funds; and have a claimed loss of $1,179,931. Memo. In Supp. of Mot. to Appoint Kanda & Krykhtin as Lead Pl., D.E. 31-2, at 9. Kanda and Krykhtin argue that aggregation of their shares, expended funds, and losses is appropriate, because there is no per se rule barring aggregation for unrelated individuals in this Circuit. Kanda &

Krykhtin Opp'n, D.E. 37, at 7. Further, Kanda and Krykhtin contend they have established the largest financial loss, the most important factor to consider when appointing lead plaintiff. Memo. In Supp. of Mot. to Appoint Kanda & Krykhtin as Lead Pl., D.E. 31-2, at 9. According to Kanda and Krykhtin, Tazaki's argument that Krykhtin sold all of his shares prior to the class end date is inaccurate because he sold his shares following the disclosure, and therefore still suffered losses. *Id*. Kanda and Krykhtin argue that the class period end date listed in the Complaint, June 6, 2023, is a clerical error, and that they so informed the Court in their initial motion. Kanda & Krykhtin Opp'n, D.E. 37, at 5. Kanda and Krykhtin argue the correct class end date should be June 5, 2023 because the curative disclosure, here the Hindenburg Report, was published before trading took place on June 6, 2023. *Id.* Because a class period is meant to end when curative information enters the market, the Court should accept the June 5, 2023 end date. *Id.* Kanda and Krykhtin contend that under the proper end date, they possess the greater claimed loss based on shares held through the premarket corrective disclosure, and therefore are the presumptive lead plaintiffs. *Id.* Moreover, Kanda and Krykhtin argue that Tazaki's arguments regarding the class period actually will hinder the class members because those class members who sold shares on the date of disclosure would be characterized as not damaged when they in fact were. Memo. In Supp. of Mot. to Appoint Kanda & Krykhtin as Lead Pl., D.E. 31-2, at 21.

With regard to determining which plaintiff has the "largest financial interest," the Third Circuit has held that "district courts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *In re Cendant*, 264 F.3d at 262. District courts in this Circuit have accorded the "largest financial loss" element the most weight in the analysis for appointment of a lead plaintiff. *See In re Vonage Initial*

*Pub. Offering Secs. Litig.*, No. 7-177, 2007 WL 2683636, at *4 (D.N.J. Sept. 6, 2007) (citing cases). The PSLRA allows for the appointment of "the person or group of persons that . . . has the largest financial interest in the relief sought by the class" as the lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

As a preliminary matter, this Court finds that Krykhtin's losses are properly computed in Kanda's and Krykhtin's offered calculated losses. It is undisputed by the movants that the Hindenburg Report was published before the market opened on June 6, 2023. It is also undisputed that only one relevant disclosure, the Hindenburg Report, prompted the dramatic decrease in Tingo's stock value. Accordingly, it logically follows that after the disclosure was published before the market opened on June 6, 2023, Kanda's and Krykhtin's shares were no longer at their inflated price. Indeed, when Kanda and Krykhtin sold Tingo stocks on June 6, 2023, they did so at the decreased price. *See* Ex. B, Kanda's & Krykhtin's Loss Charts, 31-5, at 6. Therefore, Kanda and Krykhtin incurred significant losses from that day, as it was after the relevant disclosure was made. *See* Ex. I, Tingo Stock and Price Volume Chart from June 5, 2023 to June 6, 2023. D.E. 31-2. This finding is consistent with the general principle that a class period's end occurs when the curative information is disclosed and causes the alleged losses. *See In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 241 (S.D.N.Y. 2006) (concluding a class period end date occurred the date prior to the disclosure). Nor does this Court find that Kanda's and Krykhtin's argument that the June 6, 2023 date is a clerical error to be evidence of gamesmanship to obtain lead Plaintiff. Kanda and Krykhtin have fairly alleged that they suffered significant losses as a result of Tingo's alleged misstatements. Further, their initial motion for appointment of lead plaintiff specifically noted the date of the report and its effect on the inflated price of Tingo shares. *See* Kanda's & Krykhtin's Initial Mot. for Lead Pl., D.E. 7-1, at 5 n.5 ("Although the actions alleged

7

that the Class Period extends through June 6, 2023, the Hindenburg report was released prior to the market open that day, as reflected in the decline in the opening price of $1.35 per share."). Accordingly, the Court concludes that Kanda's and Krykhtin's arguments regarding the class period are not indicative of any type of manipulation, but rather seek to identify the specifics of the timeline of the disclosure and its effect on their clients' shares and associated losses.

The Court declines to adopt Tazaki's argument that Kanda's and Krykhtin's calculations regarding shares purchases, expended funds, losses cannot be aggregated because they are an unrelated group. Courts within this District have declined to accept a per se rule that a group seeking appointment of lead plaintiff must be related in some way. *See In re Opnext, Inc. Sec. Litig.*, No. 08-920, 2008 WL 3285732, at *2 (D.N.J. Aug. 7, 2008) ("Indeed, the PSLRA permits a 'group of persons' to serve as Lead Plaintiff, and there is no limitation that the group include 'related' individuals.") (internal citations omitted).

As relatedness is not a requisite requirement, the Court finds aggregation is appropriate here.[3] Based on aggregation, the Court finds Kanda and Krykhtin possess the largest financial interest in the matter. Kanda and Krykhtin have a total of 1,632,463 shares purchased, expended $2,521,385 in funds, and have total loss of $1,179,931. Ex. B, Kanda & Krykhtin Analysis, D.E. 31-5. By contrast, Tazaki purchased 170,015 shares, expended $791,826 of funds, and sustained a total loss of $514,912. Ex. B, Tazaki Analysis, D.E. 29-4. Therefore, Kanda's and Krykhtin's aggregated totals exceed Tazaki's share purchases, expended funds and losses by a considerable margin. As such, this Court finds that Kanda and Krykhtin possess the greatest financial interest in this action.

---

[3] This Court addresses Tazaki's arguments regarding the aggregation of Kanda & Krykhtin infra III.A.iii.

### ii. Rule 23 Requirements –Typicality & Adequacy

Once the court identifies the movant with the largest financial interest in the relief sought by the class, "it should then turn to the question whether that movant 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure,' and is thus the presumptively most adequate plaintiff." *In re Cendent*, 264 F.3d at 263-64 (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) (cc)). The movant must demonstrate "a prima facie showing of typicality and adequacy." *Id.* Kanda and Krykhtin contend they satisfy the requirements for typicality because like all other class members, they traded in Tingo securities at allegedly inflated prices due to Tingo's misrepresentations. Memo. In Supp. of Mot. to Appoint Kanda & Krykhtin as Lead Pl., D.E. 31-2, at 12-13. Further, Kanda and Krykhtin claim their interests are "perfectly aligned" with other class members and therefore will adequately and fairly protect the interests of the class. *Id.* at 14. Kanda and Krykhtin also argue that their selection of Saxena White as proposed lead counsel illustrates their commitment to protecting the interest of the class, as the firm is highly qualified in securities class action litigation. *Id.* at 15. According to Kanda and Krykhtin, their substantial financial stake in the litigation coupled with their committed cohesion as a group establish they should be appointed lead plaintiff. *Id.*

"Typicality is established when 'the claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if it is based on the same legal theory.'" *See Kanefsky v. Honeywell Int'l Inc.*, No. 18-15536, 2019 WL 936662, at *2 (D.N.J. Feb. 26, 2019) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)). A proposed plaintiff demonstrates adequacy when he or she: (1) "has the ability and incentive to represent the claims of the class vigorously"; (2) "has obtained adequate counsel"; and (3) poses no conflict between his claims and the members of the class. *See Kanefsky*, 2019 WL 936662, at *2 (quoting *In re*

*Cendant*, 264 F.3d at 265). When evaluating the adequacy of lead plaintiff that consists of a group, the Court should consider if the movant group is too large to properly represents the class, as well as any other considerations regarding the satisfaction of the adequacy and typicality elements. *In re Cendant*, 264 F.3d at 268.

This Court finds that Kanda and Krykhtin have made a prima facie showing of typicality and adequacy. As to typicality, like all putative class members, Kanda and Krykhtin claim to have been injured by purchasing Tingo securities at prices that were artificially inflated by Tingo's misrepresentations, falsehoods, and omissions. *See Dang v. Amarin Corp. PLC*, No. 21-19212, 2022 WL 15524944, at *4 (D.N.J. Oct. 27, 2022) (finding typicality where there was no indication the movants' legal theory was "markedly different" from those of the rest of the class). Similarly, the Court finds sufficient adequacy. *See Aguilar v. Vitamin Shoppe, Inc.*, No. 17-6454, 2018 WL 1960444, at *9 (D.N.J. Apr. 25, 2018) (finding adequacy where there were "no known conflicts between the . . . plaintiffs and the members of the class, and the lead plaintiffs appear to have a sufficient interest in the outcome of the case to ensure vigorous advocacy"). Based on the record, including but not limited to their investments in Tingo and alleged losses, Kanda and Krykhtin both possess considerable interest in the outcome of this case. Further, both possess past investment experience, affording them some degree of knowledge and sophistication to properly lead this litigation. *See* Kanda & Krykhtin Joint Decl., D.E. 31-7, at ¶¶ 4,6. *Id.* at ¶¶ 5,7. There is nothing in the record before the Court to demonstrate any atypicality of Kanda and Krykhtin. Indeed, Kanda and Krykhtin have retained competent counsel. A review of the firms' resumes details lead counsel's and liaison counsel's extensive experience in securities class action litigations. *See* Ex. F., Firm Resume of Saxena White P.A., D.E. 31-9; Ex. G, Firm Resume of Carella Byrne Cecchi Olstein Brody & Agnello, PC, D.E. 31-10. Nor has there been any evidence

that Kanda's or Krykhtin's claims conflict in any way with the putative class's claims. *See Aguilar*, 2018 WL 1960444, at *9. Indeed, Kanda's and Krykhtin's claims appear to fairly represent those of the putative class. Accordingly, this Court concludes Kanda and Krykhtin have presented a prima facie showing of typicality and adequacy, and therefore are the presumptive lead plaintiffs.

### iii.      Rebuttable Presumption

Tazaki contends that Kanda and Krykhtin are inappropriate as lead plaintiffs because they are subject to unique defenses and are otherwise inadequate representatives. Memo. In Supp. of Mot. to Appoint Tazaki as Lead Pl., D.E. 29-1, at 16. Tazaki reiterates that because Kanda and Krykhtin are unrelated to one another, and live in separate countries, they are inadequate to represent the class. *Id.* at 17. Further, he claims that they should be characterized as a group of five because Kanda's family members assigned their rights to him. *Id.* at 17, 19. Tazaki also argues Kanda and Krykhtin are improper lead plaintiffs because the group is susceptible to unique defenses that will manifest themselves in class certification motion practice, as class certification, such as Tazaki's status as an in-and-out trader. *Id.* at 21. Further, Tazaki contends that Krykhtin's trading strategy was atypical, as he bought and sold large shares throughout the class period. Relying on an expert in finance and econometrics, Tazaki also contends Krykhtin's trading strategy was atypical because it was unrelated to any news or information about the company. *Id.* at 23.

Kanda and Krykhtin counter that they are not susceptible to unique defenses and will adequately represent the interests of the class. Kanda & Krykhtin Opp'n, D.E. 37, at 9. They contend that Krykhtin cannot be characterized as an in-an-out trader because he maintained Tingo shares through the premarket corrective disclosure. *Id.* Further, Krykhtin's practice of buying and selling shares throughout the class period is not unusual or atypical, and instead illustrates Krykhtin's skill and sophistication as an investor. *Id.* They also contend that Tazaki's expert is

11

unreliable because the analysis is not premised on "accepted models of financial analysis" and fails to analyze all information disseminated in the class period, as well as the information relied upon prior to the Hindenburg Report. *Id.* at 10. Kanda and Krykhtin also argue that their group will adequately represent the class, as they remain a small cohesive group of two, dedicated to the maximization of the class's recovery. *Id.* at 14. Kanda & Krykhtin maintain that their joint declaration appropriately details how they plan to oversee the litigation and its related strategy. *Id.* at 15.

"Once a presumptive lead plaintiff is located, the court should then turn to the question [of] whether the presumption has been rebutted." *Lewis*, 2016 WL 7042075, at *3 (internal quotations omitted) (citing *In re Cendant*, 264 F.3d at 268). Notably, when the presumptive plaintiff is determined, "the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[ ] and adequate [ ]' job." *Montesano v. Eros Int'l PLC*, No. 19-14125, 2020 WL 1873015, at *10 (D.N.J. Apr. 14, 2020) (quoting *In re Cendant*, 264 F.3d at 268). Under the PSLRA, the presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff [(1)] will not fairly and adequately protect the interests of the class; or [(2)] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The PSLRA allows for the appointment of "the person or group of persons that . . . has the largest financial interest in the relief sought by the class" as the lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). The Third Circuit has explicitly declined to require members of such a group be related in some manner; rather the group must "fairly and adequately protect the interests of the

class." *In re Cendant*, 264 F.3d at 266. Accordingly, while relatedness remains relevant to the inquiry, it is not dispositive in determining if a group will fairly and adequately protect the interests of the class. *Id.* at 266-67. For example, the Third Circuit has instructed that a group that has been created by attorneys to ensure that those attorneys are appointed lead counsel, could justify a finding that the members of that group cannot sufficiently monitor counsel. *Id.* at 267. Moreover, the Court may also consider the size of the group, as it may become too large to represent the class in an adequate manner. *Id.* Although the Third Circuit has not established a hardline rule, it has stated that "courts should generally presume that groups with more than five members are too large to work effectively." *Id.*

Further, a group may be found to be inadequate if it "lacked legal experience or sophistication, intended to select as lead counsel a firm that was plainly incapable of undertaking the representation, or had negotiated a clearly unreasonable fee agreement with its chosen counsel." *Roby v. Ocean Power Techs., Inc.*, No. 14-3799, 2015 WL 1334320, at *6 (D.N.J. Mar. 17, 2015) (quoting *In re Cendant*, 264 F.3d at 265-66). At this stage of the litigation, this Court is not required to approve of the movant's

> choice of counsel or the terms of its retainer agreement or whether another movant may have chosen better lawyers or negotiated a better fee agreement; rather, the question is whether the choices made by the movant with the largest losses are so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class, thus disqualifying it from serving as lead plaintiff at all.

*Lifestyle Invs.,* 2016 WL 3032684, at *7 (D.N.J. May 26, 2016) (internal citations omitted).

This Court finds that Tazaki has failed to offer sufficient proof to rebut the presumption of Kanda and Krykhtin serving as lead plaintiff. First, this Court rejects Tazaki's arguments that Krykhtin is an in-and-out trader. An in-and-out trader is an individual who purchases and sells all of his or her shares prior to the corrective disclosure. *Sklar v. Amarin Corp. PLC*, No. 13-6663,

2014 WL 3748248, at *9 n.8 (D.N.J. July 29, 2014).  When an in-and-out trader sells all of their shares "before the relevant truth begins to leak out," the company's alleged misrepresentations will not be linked to any losses.  *Id.*  As discussed above, Krykhtin maintained his shares through the publication of the Hindenburg Report.  As the Hindenburg Report hit prior to the market opening, Tingo's alleged misrepresentations may very well be linked to the losses that Kanda and Krykhtin sustained.  The Court is similarly unpersuaded by Tazaki's expert report.   Tazaki's expert report fails to discuss, or even mention, the plainly relevant the Hindenburg Report, even as the report purports to have analyzed the relevant news.  D.E. 29-3.

      Nor does this Court find that Kanda's and Krykhtin's group status renders it unable to fairly and adequately protect the interests of the class.  As previously noted, the Third Circuit has rejected a bright-line rule requiring a group seeking to be lead plaintiff to be related.  *See In re Opnext, Inc. Sec. Litig.*, 2008 WL 3285732, at *2 ("Indeed, the PSLRA permits a 'group of persons' to serve as Lead Plaintiff, and there is no limitation that the group include 'related' individuals.")  This Court similarly rejects such a determination and rather conducts a fact specific analysis for the matter presently before it.  Here, the group joined for lead plaintiff are two individual investors, though unrelated.  However, this Court follows other courts within this District that have found unrelated entities to fairly and adequately represents the interests of the class. *See Aguilar*, 2018 WL 1960444, at *11; *Lawless v. Aurora Cannabis Inc.*, No. 20-13819, 2021 WL 2850451, at * (D.N.J. July 8, 2021) at *4.  Further, this group does not contain large entities whose leadership varies across large groups of people, rather it is simply two people.[4] *Lifestyle Invs.*, 2016 WL 3032684, at *6 (D.N.J. May 26, 2016) (finding a group would be an inadequate lead plaintiff where it comprised of four

---

[4] It is of no import that Kanda's family members have assigned their rights to him, as there is no evidence in the record that those family members would influence his role as lead plaintiff.  Nor does Tazaki offer any arguments regarding the invalidity of those assignments.

14

entities which would require several governing bodies to agree on the decisions in the litigation). Further, as Kanda and Krykhtin have the greatest financial interest in the litigation, it is reasonable to expect them to properly monitor the matter as necessary. In their declaration, Kanda and Krykhtin pledge that they will "regularly communicate and coordinate with our counsel . . . receive status updates regarding the litigation, review pleadings and motion papers, discuss fees and expenses, and independently direct their activities, including with regard to any settlement negotiations" and also will participate in joint decision-making. Kanda & Krykhtin Joint Decl., D.E. 31-7, at ¶¶ 8, 18. At bottom, Tazaki has failed to offer "proof that the presumptively most adequate plaintiff is 'subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *See Grodko v. Cent European Distribution Corp.,* No. 12-5530, 2012 WL 6595931, at *3 (D.N.J. Dec. 17, 2012) (internal citations omitted). Accordingly, the presumption that Kanda & Krykhtin will serve as lead plaintiff has not been rebutted.

### B. Appointment of Lead & Liaison Counsel

Finally, with respect to the selection of lead and liaison counsel, the PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v); *see also In re Cendant*, 264 F.3d at 222-23. Here, Kanda and Krykhtin have selected and retained Saxena White P.A. to serve as lead counsel, and Carella Byrne Cecchi Olstein Brody & Agnello, PC to serve as liaison counsel for the class. *See* Ex. F., Firm Resume of Saxena White P.A., D.E. 31-9; Ex. G, Firm Resume of Carella Byrne Cecchi Olstein Brody & Agnello, PC, D.E. 31-10. It is apparent from the firms' resumes that both possess significant experience litigating securities fraud class actions and are thus "competent to fulfill the duties of lead counsel and liaison counsel." *Lewis*, 2016 WL 7042075, at *5. Accordingly, the Court finds the firms suitable to serve as lead and liaison counsel.

## IV. CONCLUSION

For the foregoing reasons, Kanda's & Krykhtin's motion, D.E. 31, is **granted**, and Tazaki's motion, D.E. 29, is **denied**. An appropriate Order accompanies this Opinion.

Date: February 14, 2024

*s/ Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**
